THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
REBECCA PETERSON-FISHER (SBN 255359)
MARISA HERNANDEZ-STERN (SBN 272477)
Traber & Voorhees
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com
rpf@tvlegal.com
mhs@tvlegal.com


Attorneys for Plaintiffs Franklin Quezada, *et al.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| FRANKLIN QUEZADA, et al., | Case No. CV 12-2188 CAS (DTBx) |
| Plaintiffs, | |
| v. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN ORDER LIMITING DEFENSE COMMUNICATIONS WITH CLASS MEMBERS AND OTHER RELIEF UNDER FED. R. CIV. P. 23(d)** |
| SCHNEIDER LOGISTICS TRANSLOADING & DISTRIBUTION, INC., et al., | |
| Defendants. | Date:      March 25, 2013 |
| | Time:      10:00 a.m. |
| | Judge:     Hon. Christina A. Snyder |

Pl. Mtn for Relief Under Rule 23;
Case No. CV 12-2188 CAS (DTBx)

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 25, 2013 at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 5 of this Court located at 312 North Spring Street, Los Angeles, California 90012, plaintiffs Franklin Quezada, *et al.*, will and hereby do move under Fed. R. Civ. Proc. 23 and the Court's inherent authority for an order limiting defendant Schneider Logistics Transloading and Distribution, Inc. from further communicating with its employees regarding this lawsuit, and for other relief detailed herein relating to Schneider's unethical and coercive tactics in obtaining 106 declarations from its employees in the weeks after plaintiffs filed this lawsuit.

This class action lawsuit, filed in March 2012, seeks to recover the stolen wages of employees who work in three warehouses that Schneider operates in Mira Loma, California.  In the weeks following the filing of the complaint, Schneider's lawyers engaged in a coordinated blitz to gather 106 declarations from potential class members – its own employees – during one-on-one meetings held during working hours in a manager's office in the warehouses.  Schneider concealed these declarations, failing to list them in its initial disclosures and failing to alert the Court or plaintiffs in the Rule 26 conference that it was withholding the declarations under the attorney work product doctrine.

Plaintiffs only learned about these declarations through Schneider's interrogatory responses, although Schneider refuses to produce them, to list them on a privilege log, or even to identify the attorney(s) who supposedly drafted them. During the meet and confer process, plaintiffs' counsel raised concerns about whether Schneider had obtained the declarations through coercive and unethical means.  Schneider refused to provide even basic information about the manner in which the declarations were collected – not even to identify the individuals who

were present in the room, or to state whether the declarations were translated into Spanish for the 80% or so of the workforce that does not speak fluent English.

We now know from our own investigation that Schneider's lawyers did not translate the declarations into Spanish before asking the employees to sign them, even though a translator was present in the meetings.  As set forth in the accompanying declarations of employees Eleonso Bucio, Walter Downing, and Joel Alvarado, the attorneys did not tell the employees about the specifics of the lawsuit, or that they were being asked to sign a declaration under penalty of perjury that Schneider could submit to the Court to undermine their rights in this litigation. Instead, the attorneys lied to the employees, telling them that they were collecting information about Schneider's labor practices for "internal research" purposes. These lies caused the employees to believe that the information provided would be kept inside the company, and that the interview was informal.

The lies did not stop there.  The attorneys also told the employees that the document they were signing – which was in English – was a "consent form," and the only way to obtain a copy was to sign it.  But the document was not a consent form, but a declaration under penalty of perjury.  And, Schneider never provided copies to the employees, and still refuses to produce them to plaintiffs' counsel.

The lawyers did not disclose to the employees that they represented only Schneider, and did not represent the interests of the employees.  They did not explain that signing the piece of paper, or answering the attorneys' questions, could later be used to preclude the employees from claiming overtime compensation or other relief sought in this lawsuit.

When plaintiffs' counsel asked Schneider's attorneys to answer some questions to ensure that they had properly obtained the declarations, Schneider refused to meet and confer.  Instead, continuing its campaign of coercive tactics, Schneider immediately served deposition notices for six of the declarants, and

intends to serve them at work during working hours with deposition subpoenas. Schneider refuses to disclose how it picked these six declarants from the 106 who signed declarations.  Schneider also refuses to produce even these six declarations, even though they will be the sole subject of the depositions.  To date, Schneider's attorneys have refused to provide *any* information about how they gathered the declarations, not even to confirm whether they were translated into Spanish, or to identify the attorneys who drafted them.

Plaintiffs now respectfully request that the Court: (1) limit further communication between Schneider and potential class members regarding this lawsuit; (2) enter a ruling that the 106 declarations will be disregarded by the Court should Schneider attempt to use them for any reason; (3) issue a curative notice from the Court to potential class members explaining that any declarations they signed will not be considered by the Court, and that Schneider cannot retaliate against them for cooperating with plaintiffs' counsel or otherwise participating in this lawsuit; (4) require Schneider to produce the 106 declarations to plaintiffs' counsel, and to provide the contact information for those declarants; (5) preclude Schneider from deposing any of the 106 unrepresented declarants regarding the manner in which the declarations were obtained; and (6) enter any other relief that is warranted under the circumstances.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which began on January 28, 2013.  The meet and confer letters, which memorialize numerous telephonic conferences between counsel, are attached to the Declaration of Lauren Teukolsky as Exhibits A to J.  Schneider's counsel is located in Nevada, so the parties were unable to meet and confer in person.

Plaintiffs' motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the accompanying Declarations of Eleonso Bucio, Walter Downing, Joel Alvarado and Lauren Teukolsky (with exhibits), the

proposed order submitted herewith, the pleadings, declarations and papers on file with the Court, and any further briefing and arguments of counsel.

Dated:  February 25, 2013                    Respectfully submitted,

                                             TRABER & VOORHEES

                                By:    /s/ Lauren Teukolsky
                                       Lauren Teukolsky
                                       Attorneys for Plaintiffs

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . 1

I.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A.  A Summary of the Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B.  Schneider Failed to Disclose the Declarations in Its Initial Disclosures
and Refuses to Produce Them. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

C.  Schneider Responds to Plaintiffs' Meet and Confer Efforts By Refusing
to Provide Information and Threatening to Depose the Declarants. . . . . . . . . 6

D.  Schneider Gathered Declarations From 106 Employees Using Coercive
and Unethical Tactics. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.  SUMMARY OF RELIEF SOUGHT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.  LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

A.  Legal Standards Governing This Motion. . . . . . . . . . . . . . . . . . . . . . . . . . 12

B.  Schneider Used Misleading and Coercive Tactics to Gather the
Declarations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

C.  Schneider's Attorneys Violated Cal. Rule of Prof. Conduct 3-600(D). . . . . 18

D.  Schneider's Unethical and Coercive Conduct Warrants the Relief
Sought. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

E.  The Attorney Work Product Doctrine Does Not Protect the Declarations
from Disclosure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Admiral Insurance Co. v. United States District Court,*
    881 F.2d 1486 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Belt v. Emcare Inc.,*
    299 F. Supp. 2d 664 (E.D. Tex. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bublitz v. E.I. duPont de Nemours & Co.,*
    196 F.R.D. 545 (S.D. Iowa 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17

*EEOC v. Morgan Stanley & Co.,*
    206 F. Supp. 2d 559 (S.D.N.Y. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gulf Oil Co. v. Bernard,*
    452 U.S. 89 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20

*Longcrier v. HL-A Co., Inc.,*
    595 F. Supp. 2d 1218 (S.D. Ala. 2008). . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Maddock v. KB Homes, Inc.,*
    248 F.R.D. 229 (C.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mevorah v. Wells Fargo Home Mortg., Inc.,*
    2005 U.S. Dist. LEXIS 28615 (N.D. Cal. Nov. 17, 2005). . . . . . . . 7, 13, 14, 19

*Sjoblom v. Charter Communs., LLC,*
    2007 U.S. Dist. LEXIS 94829 (W.D. Wis. Dec. 26, 2007). . . . . . . . . 15, 16, 20

*Tierno v. Rite Aid Corp.,*
    2008 U.S. Dist. LEXIS 112461 (N.D. Cal. July 8, 2008). . . . . . . . . . . . . . . . 22

*Villa v. United Site Services of Cal., Inc.,*
    2012 U.S. Dist. LEXIS 162922 (N.D. Cal. Nov. 13, 2012). . . . . . . . . 14, 17, 20

## FEDERAL STATUTES

Fed. R. Civ. Proc. 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 26(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 26(g)(a)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 26(f)(3)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 26(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## STATE STATUTES

Cal. Labor Code § 511(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Rule of Prof. Conduct 3-600. . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

IWC Wage Order 9-2001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## TREATISES

Simmons Wage and Hour Manual for California Employers § 9.7 (14th Ed.). . . . 4-5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

By this motion, plaintiffs request that the Court enter an order limiting further communications between defendant Schneider Logistics Transloading & Distribution, Inc. ("Schneider") and its employees regarding this lawsuit, issue a curative letter to the class, and enter other relief related to defense counsel's unethical and coercive tactics in gathering 106 declarations from unrepresented class members in the weeks following the filing of this lawsuit.

This class action lawsuit seeks to recover the stolen wages of employees who work in three warehouses that Schneider operates in Mira Loma, California.  In the weeks following the filing of the complaint in March 2012, Schneider's lawyers engaged in a coordinated blitz to gather 106 declarations from potential class members – its own employees – during one-on-one meetings held during working hours in a manager's office in the warehouses.  Schneider summoned each worker into these mandatory meetings by announcing over a warehouse loudspeaker that they were to report to the manager's office, or by having supervisors escort them to the meetings.  Declaration of Walter Downing ¶2, Declaration of Joel Alvarado ¶2; Declaration of Eleonso Bucio ¶2.

Once the employees were alone in the room with Schneider's lawyers, the lawyers told them that the interviews were informal, and that the information was being gathered solely for Schneider's own "internal research" purposes.  Downing Decl. ¶6, Alvarado Decl. ¶5; Bucio Decl. ¶4.  But this was a lie.  The true purpose of the meetings was to gather formal declarations signed under penalty of perjury that Schneider could later use to harm the employees' interests in this lawsuit.  We only know this because Schneider admitted in written discovery that it gathered 106 declarations from its own employees in April 2012, Exh. K,[1] although it failed to

---

[1]All exhibits are attached to the Declaration of Lauren Teukolsky.

disclose the declarations in its initial disclosures, Exh. M at 2, and refuses to produce the declarations or provide any information about the process through which it obtained the declarations.  Exhs. A-J (meet and confer letters).

We now know from our own investigation – performed without the benefit of class member contact information, which Schneider has refused to provide[2] – that during these meetings Schneider's lawyers never told the employees that their rights to overtime pay and other compensation were at issue in this lawsuit.  They never told the employees that their interests might be adverse to Schneider's interests. They never said that the employees could obtain their own counsel.  Downing Decl. ¶6, Alvarado Decl. ¶5; Bucio Decl. ¶6.   The failure to provide these disclosures violates Cal. Rule of Professional Conduct 3-600(D).  Exh. R.

To make matters worse, the lawyers duped the employees into signing the declarations using various coercive and misleading tactics.  Many of the employees whom Schneider interviewed are Spanish speakers, and do not speak fluent English. Bucio Decl. ¶3 (about 80% of the workforce speaks Spanish).  Schneider's lawyers presented these employees with a typed document in English and, even though a translator was present, did not translate the document into Spanish before asking the employees to sign it.  Alvarado Decl. ¶6; Bucio Decl. ¶7.  The employees had no idea that they were signing a declaration, but instead were led to believe that they were simply signing a "consent form" agreeing to be interviewed.  Alvarado Decl. ¶6; Bucio Decl. ¶8.  Schneider's lawyers never explained that the document they signed might be submitted to the Court in this lawsuit to support Schneider. Downing Decl. ¶8, Alvarado Decl. ¶¶8-9; Bucio Decl. ¶¶8-9.

Schneider's lawyers pressured the employees to sign, telling them that the only way they could obtain copies of the documents was to sign them. But this too was a

---

[2]*See infra* note 7.

1  lie.  Schneider has not provided copies of the declarations to the employees who

2  signed them, nor to plaintiffs' counsel.  Alvarado Decl. ¶6; Bucio Decl. ¶8.

3       When plaintiffs' counsel raised questions in the meet and confer process about

4  how Schneider had obtained the declarations, Schneider's lawyers refused to provide

5  *a single piece of information* – not even to identify who was present at the meetings

6  during which the declarations were obtained, or to confirm whether the declarations

7  were translated into Spanish.  Exhs. A, J.  Instead, Schneider immediately responded

8  by stating its intention to subject the declarants to formal depositions about the

9  circumstances under which the declarations were gathered.  Exh. C.  Schneider has

10  picked six declarants to depose, but refuses to disclose how it chose them.  Exh. E at

11  2.  Schneider also refuses to produce even these six declarations, even though they

12  will be the sole subject of the depositions.   Keeping in line with its coercive

13  practices, Schneider intends to serve these employees – who are unrepresented –

14  with deposition subpoenas at work during working hours.  Exh. G.

15       In the past few weeks, Schneider's lawyers apparently have contacted an

16  unknown number of potential class members by telephone, asking them questions

17  about the issues in this lawsuit.  But during these calls they have still failed to make

18  the disclosures required by Cal. Rule of Prof. Conduct 3-600.  Teukolsky Decl. ¶2.

19       Accordingly, based on the Court's broad authority to regulate class actions,

20  plaintiffs respectfully request that the Court: (1) limit further communication

21  between Schneider and potential class members regarding this lawsuit; (2) enter a

22  ruling that the 106 declarations will be disregarded by the Court should Schneider

23  attempt to use them for any reason; (3) issue a curative notice from the Court to

24  potential class members explaining that any declarations they signed will not be

25  considered by the Court, and that Schneider cannot retaliate against them for

26  cooperating with plaintiffs' counsel or otherwise participating in this lawsuit; (4)

27  require Schneider to produce the 106 declarations to plaintiffs' counsel, and to

28  provide the contact information for those declarants; (5) preclude Schneider from

1   deposing any of the 106 unrepresented declarants regarding the manner in which the
2   declarations were obtained; and (6) enter any other relief that is warranted under the
3   circumstances.

## II.   FACTUAL BACKGROUND

**A.      A Summary of the Complaint**

6          As alleged in the First Amended Complaint ("FAC"), Doc. #29, the plaintiffs
7   in this lawsuit are low-wage workers directly employed by Schneider to perform
8   various tasks in the Mira Loma warehouses, such as driving forklifts and labeling
9   boxes.  FAC ¶1.  In 2008, Schneider devised an unlawful scheme to require its
10   employees to work overtime without paying them the premium to which they are
11   entitled under the law.  Schneider purported to hold an "election," and asked its
12   employees to adopt an alternative workweek schedule under which employees would
13   work four 10-hour days each week (the "4-10 schedule").  Under the alternative
14   workweek rules, an employer is not required to pay overtime premiums for time
15   worked over 8 hours up through the tenth hour in a day.  In exchange for this
16   overtime exemption, the employees are supposed to receive a "regularly scheduled"
17   workweek of four 10-hour days.  FAC ¶2.[3]

18          Plaintiffs allege that the election was invalid for a variety of reasons, including
19   that Schneider failed to provide the required notice of the election in Spanish even
20   though more than 5% of the workforce speaks Spanish.  *Id*; *see* IWC Wage Order
21   9-2001 § 3(C)(3).  Plaintiffs also allege that, afer the election, Schneider lost the
22   benefit of the alternative workweek exemption from paying overtime premiums
23   because it failed to provide its employees with a regularly recurring schedule, and
24   instead created a system of "on-call" employment where the employees' hours of
25   work were subject to continual changes.  FAC ¶3; *see* Simmons Wage and Hour

27          [3]Cal. Labor Code § 511(a) provides that the employer must adopt a "regularly
    scheduled" alternative workweek.  IWC Wage Order 9-2001, which applies to the
28   warehouse workers, provides that the workweek must be a "fixed and regularly
    recurring period."  *Id*. at §§ 2(S), 3(B).

Manual for California Employers § 9.7 (14th Ed.) ("[E]mployers [who adopt alternative workweek schedules] cannot create a system of 'on-call' employment where the employees' days and hours of work are subject to continual changes that deprive them of a predictable work schedule.").

In an attempt to circumvent the legal requirements to pay overtime when an employer does not provide employees with the regular schedule adopted through the election, Schneider had a policy and practice of requiring its employees to sign overtime pay waiver forms on days that they worked less than the regularly-scheduled ten hours.  FAC ¶5.  Schneider has now produced thousands overtime pay waiver forms that its employees have signed – all of which are in English. Teukolsky Decl. ¶¶3-4, 27 & Exh. S.  As alleged in the FAC, these waivers were invalid, against public policy, and obtained through coercive means.  FAC ¶¶5, 28. Accordingly, plaintiffs were entitled to receive overtime compensation under the regular laws governing overtime, and not under the rules governing the alternative workweek.

Plaintiffs' complaint alleges other unlawful labor practices, including, *inter alia*, that Schneider unlawfully deprived employees of meal and rest breaks, and failed to pay reporting time pay on days that employees reported to work but were sent home due to a lack of work.  FAC ¶7.  Of particular significance here, the FAC alleges that Schneider used coercive means to require employees to sign waiver forms giving up their rights under California law to meal periods.  FAC ¶¶31-32. Schneider has now produced thousands of meal period waiver forms that its employees have signed since Schneider started using the form in late 2011. Teukolsky Decl. ¶5 & Exh. T.

## B.     Schneider Failed to Disclose the Declarations in Its Initial Disclosures and Refuses to Produce Them

Plaintiffs filed this lawsuit on March 15, 2012.  On June 22, 2012, Schneider provided plaintiffs with its initial disclosures under Rule 26.  In the section requiring

Schneider to list all documents it "may use to support its claims or defenses," Schneider listed only "[d]ocuments related to the AWS election process," and did not disclose that it had obtained declarations from its own employees just two months earlier. Teukolsky Decl. Exh. M at 2:7. Schneider's lawyers also failed to disclose the declarations during the Rule 26 conference between counsel. Teukolsky Decl. ¶6. Furthermore, in the section of the Rule 26 statement requiring counsel to discuss "any privilege issues," Schneider's lawyers failed to disclose to the Court that they were withholding 106 declarations that they had obtained from employees two months earlier on the basis of the attorney work product doctrine. Doc. #20 at 7:1-11 (attached to the Teukolsky Decl. as Exh. P).

On July 2, 2012, plaintiffs propounded interrogatories asking Schneider to identify any documents, such as declarations, that employees had signed in connection with this litigation. Plaintiffs also requested that Schneider produce any such documents. Teukolsky Decl. ¶7. Schneider responded to the interrogatories by providing a list of 106 employees who had signed declarations. *Id*. After a meet and confer, on January 31, 2013, Schneider further disclosed that employees signed these declarations on four days in April 2012 (April 5, 6, 10 and 11) and that "[a]ll declarations are maintained by Defendant's counsel." Teukolsky Decl. Exh. K. However, Schneider refused to produce any of the declarations, citing the attorney work product doctrine. Exh. L at 82:13-21. Schneider has also refused to list the declarations on a privilege log. Exh. C; Teukolsky Decl. ¶7.

**C.** **Schneider Responds to Plaintiffs' Meet and Confer Efforts By Refusing to Provide Information and Threatening to Depose the Declarants**

On January 28, 2013, plaintiffs' counsel asked Schneider to provide some basic information about the process through which it obtained the 106 declarations. Teukolsky Decl. Exh. A. As plaintiffs' counsel noted, there is a heightened potential for coercion when an employer has pre-certification communications with potential class members, particularly where, as here, the employer engages in a "coordinated

blitz" shortly after a lawsuit is filed to obtain a numerous declarations from its employees. *E.g., Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218 (S.D. Ala. 2008) (employer used unethical tactics to obtain 245 declarations from employees in the days following the filing of a class action lawsuit).[4]  Plaintiffs' counsel was particularly concerned in this case because about 80% of the workforce speaks Spanish, and is not fluent in English.  Bucio Decl. ¶3.

To ensure that Schneider had not engaged in coercive or unethical practices, plaintiffs' counsel asked Schneider to state, *inter alia*, the identity of the people who participated in the meetings during which the declarations were gathered, the identity of the attorney(s) who drafted the declarations, where the meetings took place, whether a Spanish-language interpreter was present, whether the declarations were translated into Spanish, and whether Schneider's attorneys had made the disclosures required under Cal. Rule of Prof. Conduct 3-600.[5]  Teukolsky Exhs. A & B.

*Schneider point-blank refused to provide any of this information* – not even to identify the attorney(s) who drafted the declarations.  Instead, it immediately noticed the depositions of six of the declarants, stating its intent to use process servers to

---

[4]Courts have long recognized the "strong potential for coercion" that is inherent in an ongoing at-will employer-employee relationship.  *Bublitz v. E.I. duPont de Nemours & Co.*, 196 F.R.D. 545, 547, 549 (S.D. Iowa 2000) (ordering that communications between employer and employees regarding topics like a class member's participation in the action be in a writing filed with the Court and provided to plaintiffs' counsel); *Belt v. Emcare Inc.*, 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003) ("[W]here the absent class member and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive."); *EEOC v. Morgan Stanley & Co.*, 206 F. Supp. 2d 559, 562 (S.D.N.Y. 2002) ("Courts have found the danger of such coercion between employers and employees sufficient to warrant the imposition of restrictions regarding communication between defendants and potential class members.") (citing cases).

[5]Cal. Rule of Professional Conduct 3-600 obliged Schneider's attorneys to disclose that: (1) a lawsuit had been filed, and the employees' potential rights to overtime and other compensation was at issue in the pending litigation; (2) the employees' interests may be adverse to Schneider's in the litigation; (3) Schneider's lawyers represented only Schneider's interests, and not the interests of the employees; and (4) the employees could obtain their own counsel. *Mevorah v. Wells Fargo Home Mortg., Inc.*, 2005 U.S. Dist. LEXIS 28615, *14 (N.D. Cal. Nov. 17, 2005); *Shahrokhshahi v. Round Table Pizza, Inc.*, Case No. RG05194700, Order dated Sept. 20, 2005 (attached as Exh. Q to Teukolsky Decl.) at 9-10.

---

1  serve the employees with deposition subpoenas at work during working hours, and to

2  put them under oath and ask them questions about how the declarations were

3  obtained.  Exh. C.  Schneider refused to disclose how it had picked these six

4  employees from the 106 who executed declarations.  Exh. E.  It confirmed that the

5  employees would be pulled out of work for their depositions, and that they would be

6  unrepresented at their depositions unless they obtained their own counsel.  Exhs. E &

7  G.  Even though the depositions will focus exclusively on the declarations,

8  Schneider still refuses to produce even these six declarations.  Exh. G.[6]

9  **D.    Schneider Gathered Declarations From 106 Employees Using Coercive**

10  **and Unethical Tactics**

11          In light of Schneider's refusal to provide any information about the manner in

12  which the declarations were collected, plaintiffs were required to conduct their own

13  investigation, even though Schneider still has not produced contact information for

14  any of the class members.[7]  This investigation revealed that Schneider's attorneys

15  engaged in coercive and unethical conduct in obtaining the 106 declarations.

16  Schneider's shocking tactics are described in the concurrently-filed declarations of

17  two employees whose names appear on the list of 106 individuals who signed

18  declarations (Bucio and Alvarado), and of a named plaintiff who did not sign a

19  declaration but was asked to do so before he joined this lawsuit (Downing).

20

21  ────────────────

22          [6]Schneider belatedly agreed to produce redacted copies of the declarations showing only some "consent language" that the declarations apparently contain and signatures of each declarant.  Exh. J at 3.  But Schneider will not agree to produce

23  the entire declarations, and the "consent" language is meaningless if, as described in the next section, Schneider's attorneys failed to translate the declarations into

24  Spanish or otherwise explain the meaning of the document before the declarants signed them.

25

26          [7]In response to plaintiffs' discovery requests, Schneider refused to disclose *any* class member contact information and insisted on using the *BelAire* notice process before any contact information is disclosed.  Even though plaintiffs vigorously

27  disagreed that the process needed to be used in this case, plaintiffs agreed to use it to avoid yet another a lengthy and costly discovery battle with Ogletree's attorneys.

28  The notice is in the process of being sent out, and plaintiffs will not have contact information until 30 days after it is sent.  Teukolsky Decl. ¶8.

According to these employees, in spring 2012, Schneider's attorneys held one-on-one meetings with Schneider employees during working hours in manager's offices at the warehouses.  Alvarado Decl. ¶2; Bucio Decl. ¶2; Downing Decl. ¶2. Schneider summoned each employee into the meetings either by announcing over a loudspeaker that they were to report to the manager's office, or by having supervisors escort them to the meetings.  Alvarado Decl. ¶2; Bucio Decl. ¶2; Downing Decl. ¶2. The employees were not told why they were being summoned, and they were understandably scared that they had done something wrong and were about to be given a "warning."  Alvarado Decl. ¶2; Bucio Decl. ¶2; Downing Decl. ¶¶2-3.

Earlier that week, Schneider managers had called employees into meetings to discourage them from joining the union, and Downing was worried that he was about to be disciplined for something related to the union.  Downing Decl. ¶3.[8]  None of the employees felt like he could refuse to attend the meeting.  Alvarado Decl. ¶2; Bucio Decl. ¶2; Downing Decl. ¶2.

When the employees got to the office, they were interviewed by either one or two men who identified themselves as lawyers for Schneider.  Alvarado Decl. ¶3; Bucio Decl. ¶3; Downing Decl. ¶4.  Alvarado and Bucio are Spanish speakers, so there was also a female interpreter present at their meetings who translated the questions that the lawyers asked.  Alvarado Decl. ¶3; Bucio Decl. ¶3.  (Downing speaks English.  Downing Decl. ¶9.)

The Schneider lawyer told Alvarado that this was "just an interview," and he was given the impression that the conversation was "very informal."  Alvarado Decl. ¶5.  The Schneider attorney told Bucio that he was "conducting his own internal

---

[8]In declarations previously filed with the Court in the related *Carrillo v. Schneider* matter, named plaintiffs Quezada and Ramirez described similar meetings in which Schneider managers threatened to "destroy" any employees who got involved with the *Carrillo* lawsuit, which also alleges labor violations in the Mira Loma warehouses.  *See Carrillo* Doc. #122 and #123, which are attached as Exhibits N and O to the Teukolsky Declaration.

investigation about the conditions at the warehouse," leading Bucio to believe that what he said would be kept inside of the company. *The attorney did not tell Bucio that a lawsuit had been filed*.  Bucio Decl. ¶¶4,6.

Similarly, the attorney told Downing that he was gathering information for Schneider's own "internal research," and Downing too believed that the interview was informal, and that anything he said would be kept inside the company.  Downing Decl. ¶¶6,8.  The attorneys did not provide any of the three employees with specifics about this lawsuit, or tell them that if the lawsuit was successful, they might be entitled to receive compensation for overtime wages or missed breaks.  Alvarado Decl. ¶5; Bucio Decl. ¶6; Downing Decl. ¶6.

The meetings lasted about 30-40 minutes.  Schneider's lawyers asked each employee questions about the adoption of the 4-10 schedule, meal and rest breaks, and the payment of overtime wages – that is, the very matters that are at the heart of this lawsuit.  Alvarado Decl. ¶4; Bucio Decl. ¶5; Downing Decl. ¶5.  During his interview, Bucio asked the attorney a question about rest breaks:

> I told him that after I had worked ten hours, I was supposed to receive a second break, but I frequently was not given one.  I asked him what could be done about that.  I also asked [him if] any of the questions he was asking me had to [do] with a lawsuit that I heard had been filed.  The lawyer told me that he "had nothing to do with that," or something to that effect, and what I had asked did not concern what we were discussing that day.

Bucio Decl. ¶7.

At the end of Alvarado's interview, the lawyer printed a document in English and "forcefully" put it in front of him to sign.  Although he said that Alvarado did not have to sign it, Alvarado felt compelled to sign because of the lawyer's manner in handing him the document.  Alvarado Decl. ¶6.

The lawyer gave Bucio a pre-printed document in English and explained that it was "a consent form stating that I voluntarily agreed to be interviewed," and asked Bucio to sign it, which he did. Bucio Decl. ¶8. Although an interpreter was present at both meetings, *she did not interpret the document into Spanish before the employees signed them*. Neither Bucio nor Alvarado was given the opportunity to review or make changes to the document before signing. Alvarado Decl. ¶6; Bucio Decl. ¶8. Schneider did not provide either employee with a copy of the document, even though Bucio specifically requested one. *Id*.

At the end of Downing's interview, the attorneys asked him if he wanted to sign a paper "stating that I was 'voluntarily giving the information provided.'" Downing Decl. ¶7. The attorneys told him that the only way for him to obtain a copy of his statement was to sign the paper. Downing felt uncomfortable being pressured, so he did not agree to sign the document. Schneider never provided Downing with a copy of the document even though he requested it. *Id*.

Schneider's lawyers never explained that they were asking the employees to sign formal sworn statements under penalty of perjury. According to Alvarado:

> At no point during my meeting with the Schneider lawyer did he or anyone
> else advise me what it meant to sign a document under penalty of perjury,
> or that the document I was signing could be used to hurt my rights or my
> interests in this lawsuit. He never told me that the document I signed
> could be given to the Court that was deciding this lawsuit to support
> Schneider. In fact, based on what the lawyer said, I believed that I was
> simply signing a "consent form."

Alvarado Decl. ¶9; *see also* Bucio Decl. ¶9 ("I didn't even know what a 'declaration' was until the plaintiffs' lawyers explained it to me."). Schneider also failed to advise the employees that they could consult their own attorney. Bucio Decl. ¶6. Alvarado and Bucio did not even realize that they had signed a declaration under penalty of

1  perjury until plaintiffs' counsel recently contacted them in connection with this

2  investigation.  Alvarado Decl. ¶8, Bucio Decl. ¶9.

3          In addition, Schneider's attorneys apparently have contacted an unknown

4  number of class members by telephone in the last 2-3 weeks in an attempt to further

5  speak to them about this lawsuit, but during these calls they have not made any of the

6  disclosures required by Cal. Rule of Prof. Conduct 3-600.  Teukolsky Decl. ¶2.

7                        **III.  SUMMARY OF RELIEF SOUGHT**

8          On the basis of these facts, plaintiffs request that the Court: (1) limit further

9  communication between Schneider and potential class members regarding this

10  lawsuit; (2) enter a ruling that the 106 declarations will be disregarded by the Court

11  should Schneider attempt to use them for any reason; (3) issue a curative notice from

12  the Court to potential class members explaining that any declarations they signed

13  will not be considered by the Court, and that Schneider cannot retaliate against them

14  for cooperating with plaintiffs' counsel or otherwise participating in this lawsuit; (4)

15  require Schneider to produce the 106 declarations to plaintiffs' counsel, and to

16  provide the contact information for those declarants; (5) preclude Schneider from

17  deposing any of the 106 unrepresented declarants regarding the manner in which the

18  declarations were obtained; and (6) enter any other relief that is warranted under the

19  circumstances.

20                              **IV.  LEGAL ARGUMENT**

21  **A.     Legal Standards Governing This Motion**

22          "Because of the potential for abuse, a district court has both the duty and the

23  broad authority to exercise control over a class action and to enter appropriate orders

24  governing the conduct of counsel and parties."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89,

25  101 (1981).  Although pre-certification communications between the defense and

26  potential class members are generally permitted, the Court may limit such

27  communications based on "specific findings that reflect a weighing of the need for a

28  limitation and the potential interference with the rights of the parties."  *Id*.  "Courts

have limited pre-certification communications with potential class members after misleading, coercive, or improper communications were made." *Mevorah v. Wells Fargo Home Mortg., Inc.*, 2005 U.S. Dist. LEXIS 28615,  (N.D. Cal. Nov. 17, 2005); *see also Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 237 (C.D. Cal. 2007).

In *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218 (S.D. Ala. 2008), the court granted a motion to strike 245 declarations that an employer gathered from its employees within days after the filing of a FLSA opt-in collective action.  The declarations were nearly identical to each other, and stated that the employees had been paid for all of their time worked and did not miss any breaks.  The court found that the employer obtained the declarations improperly and in bad faith based on the following circumstances: (1) the employer's attorneys obtained the declarations in a "coordinated blitz of declaration-gathering" immediately after the filing of the complaint; (2) the attorneys obtained the declarations during work hours with each employee being called individually into meetings, who asked them questions and instructed them to sign a statement; (3) in collecting the declarations, the attorneys were proceeding with actual knowledge of the litigation; (4) the declarations concerned the very subject matter of the litigation; (5) despite this, the attorneys failed to apprise the declarants of the lawsuit, or their potential rights thereunder, and failed to advise the declarants that the declarations could adversely affect their rights in the litigation; (6) the attorneys told the declarants that the purpose of the meeting was that the company was "conducting a survey," rather than to obtain declarations; and (7) the employer sought to use the declarations to defeat class certification.  *Id*. at 1245-46.

On the basis of these facts, the court held that the employer "engaged in conduct that would reasonably be expected to mislead and deceive the prospective plaintiffs concerning the nature, purposes and implications of their participation in the declaration process."  *Id*. at 1227.  "Of critical importance, [the employer's] lawyers neither informed the declarants that a class action lawsuit concerning the

very pay practices about which they were being 'surveyed' was pending, nor that those declarants were themselves potential class members whose execution of a form declaration for [the employer] might effectively strip them of an opportunity to join in the lawsuit." *Id*. at 1228.

Similarly, in *Mevorah v. Wells Fargo Home Mortg., Inc.*, 2005 U.S. Dist. LEXIS 28615 (N.D. Cal. Nov. 17, 2005), the court entered an order limiting pre-certification communications where the employer made misleading and coercive statements to current employees after the filing of a lawsuit challenging the employer's pay practices. The employer's attorneys contacted employees by telephone, made misleading statements about the plaintiffs' lawsuit, interviewed the employees, and prepared declarations for them to sign. *Id*., at *12. The court held that the communications had a "heightened potential for coercion" because of the ongoing employer-employee relationship: "[I]t is . . . reasonable to assume that an employee would feel a strong obligation to cooperate with his or her employer in defending against a lawsuit." *Id*., at *14 (citations omitted).[9]

The *Mevorah* court also concluded that the employer's attorneys had violated Cal. Rule of Prof. Conduct 3-600 because they did not inform the employees whom they contacted that "the organizations interests are or may become adverse to those of" the employees, and that any information that the attorneys collected "may be 'used in the organization's interest' if defendant 'becomes adverse to the constituent.'" *Id*. at *14-15.

*See also Villa v. United Site Servs. of Cal., Inc.*, 2012 U.S. Dist. LEXIS 162922, *42-43 (N.D. Cal. Nov. 13, 2012) (ruling that 206 employee declarations, which the employer gathered during mandatory meetings with employees during working hours, would have no "significant probative value," and ordering that a curative notice be sent to class members informing them that the Court "will

---

[9]For other cases recognizing the "strong potential for coercion" that is inherent in an ongoing at-will employer-employee relationship, *see supra* note 4.

1   disregard any declarations they may have signed"); *Sjoblom v. Charter Communs.,*
2   *LLC*, 2007 U.S. Dist. LEXIS 94829 (W.D. Wis. Dec. 26, 2007) (limiting employer's
3   communications with employees and striking 62 declarations where the employer's
4   attorneys obtained the declarations under false pretenses and did not inform
5   employees of their rights); *Shahrokhshahi v. Round Table Pizza, Inc.*, Case No.
6   RG05194700, Order dated Sept. 20, 2005 attached as Exh. Q to Teukolsky Decl.
7   (ordering that curative notice be sent to class members where employer's attorneys
8   violated Cal. Rule of Prof. Conduct 3-600 by failing to make required disclosures to
9   employees whom they contacted).

10   **B.   Schneider Used Misleading and Coercive Tactics to Gather the**
11         **Declarations**

12   Here, plaintiffs have submitted clear and specific evidence establishing that
13   Schneider's attorneys "engaged in conduct that would reasonably be expected to
14   mislead and deceive the prospective plaintiffs concerning the nature, purposes and
15   implications of their participation in the declaration process." *Longcrier*, 595 F.
16   Supp. 2d at 1227.

17   First, Schneider's attorneys misled the employees about the purpose of the
18   interview.  As in *Longcrier*, where the employer's attorneys falsely told the
19   declarants that the purpose of the meeting was to "conduct a survey," Schneider's
20   attorneys falsely told employees that they were conducting interviews for purposes
21   of "internal research" or an "internal investigation."  Downing Decl. ¶6, Bucio Decl.
22   ¶4.  As in *Longcrier*, Schneider's attorneys lulled the employees into falsely
23   believing that the interviews were "informal," rather than an occasion to draft a
24   formal legal document under penalty of perjury.  Alvarado Decl. ¶5; Bucio Decl.
25   ¶¶4,6; Downing Decl. ¶6.  Even worse, Schneider's lawyers lied to Bucio and told
26   him that the interview had "nothing to do" with the lawsuit he heard had been filed.
27   Bucio Decl. ¶7.

28

The Schneider attorneys' intent in conducting the interviews was not to keep the information confidential, but rather to obtain declarations that they could later use to undermine plaintiffs' claims in this lawsuit. Their failure to disclose this intent to the employees was unethical and misleading. *Cf. Sjoblom*, 2007 U.S. Dist. LEXIS 94829, at *8 (employer acted improperly when it obtained declarations from employees under the guise of a "training session").

Second, Schneider's attorneys lied to the employees about the nature of the document that they were signing. The attorneys told the employees that they were signing "consent forms," and did not explain that they were signing a declaration under penalty of perjury. The declarations were in English, and were not translated to Bucio and Alvarado into Spanish before they signed. They were not given the opportunity to review or make changes to the document. The attorneys never told the employees that they might submit the declarations to the Court to support Schneider's side of this lawsuit against the employees. Bucio and Alvarado only realized that they had signed "declarations" once plaintiffs' counsel explained it to them almost ten months later.

Third, Schneider used coercive means to obtain the declarations. Schneider held one-on-one in-person meetings between highly sophisticated company lawyers and relatively unsophisticated warehouse workers, many of whom do not speak or read English. As one court has stated:

> In-person solicitations pose a particular threat of coercion. . . . [U]nsupervised oral solicitations produce distorted statements and the coercion of susceptible individuals: [I]n-person solicitation may exert pressure and often demands an immediate response, without providing an opportunity for comparison or reflection. The aim and effect of in-person solicitation may be to provide a one-sided presentation and to encourage speedy and perhaps uninformed decisionmaking; there is no opportunity for intervention or counter-education.

1   *Bublitz v. E.I. duPont de Nemours & Co.*, 196 F.R.D. 545, 549 (S.D. Iowa 2000)

2   (citations omitted); *see also Shahrokhshahi* Order (Exh. Q) at 13 ("The current

3   employees are at a significant disadvantage in terms both of relative legal

4   sophistication compared to the corporate counsel and in terms of potential for

5   retaliation by their employer.").

6        Schneider held the meetings during working hours, while the employees were

7   subject to its control.  The employees believed that they could not refuse to attend

8   the meetings, given that their supervisors escorted them to the manager's office or

9   they were summoned to the manager's office over the loudspeaker.  *Cf. Villa*, 2012

10  U.S. Dist. LEXIS 162922, *42-43 (court issued curative notice stating that it would

11  "disregard any declarations they may have signed" where employer's attorneys

12  gathered declarations during mandatory meetings held at the workplace during

13  working hours).

14       And, Schneider held these mandatory workplace meetings following a series

15  of meetings in which Schneider managers threatened employees who engaged in

16  union activity, or who supported the related *Carrillo* lawsuit, which alleges labor

17  violations in the same warehouses.  *See supra* note 8.  The Court previously made

18  findings with respect to these meetings in its February 1, 2012 order in the *Carrillo*

19  matter (Doc. #186), including that the version of these meetings described by named

20  plaintiffs Franklin Quezada and Victor Ramirez was credible.  *Id.* at 11.  According

21  to Quezada and Ramirez, in October 2011, Schneider supervisor Mark Hedges

22  threatened to "destroy" or "throw away" anyone who supported the workers in the

23  *Carrillo* lawsuit.  *Id.*  Downing describes a meeting that took place during the week

24  before he was asked to give a declaration in which Schneider management

25  discouraged employees from joining the union.  Downing Decl. ¶3.

26       All of these facts taken together establish that Schneider used coercive means

27  to gather the declarations.

28

Fourth, Schneider failed to disclose the declarations in its initial disclosures to plaintiffs even though Rule 26 required Schneider to disclose "*all* documents" that it "may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A) (emphasis added).  Schneider obtained the declarations in early April 2012, but did not mention them in its initial disclosures to plaintiffs more than two months later on June 22, 2012.  Schneider's lawyers did not tell plaintiffs' counsel about the declarations during the telephonic Rule 26 conference.  Teukolsky Decl. ¶6.  And, Schneider failed to alert the Court in its portion of the Rule 26(f) statement that it was withholding 106 declarations on the basis of the attorney work product doctrine, Exh. P at 7:1-11, even though Rule 26 provides that the parties "must" state whether there are "any issues about claims of privilege."  Fed. R. Civ. P. 26(f)(3)(D).  These facts further demonstrate Schneider's utter disregard for playing by the rules.  The Court should enter appropriate relief to send Schneider a message that its misconduct will not be tolerated.[10]

## C. Schneider's Attorneys Violated Cal. Rule of Prof. Conduct 3-600(D)

Plaintiffs have also submitted clear and specific evidence establishing that Schneider's attorneys violated Cal. Rule of Prof. Conduct 3-600(D), which governs a corporate counsel's relationship with the corporation's employees, and provides:

> In dealing with an organization's directors, officers, employees,
> members, shareholders, or other constituents, a member shall explain
> the identity of the client for whom the member acts, whenever it is or
> becomes apparent that the organization's interests are or may become
> adverse to those of the constituent(s) with whom the member is dealing.

---

[10]These facts also warrant the entry of sanctions under Fed. R. Civ. P. 26(g), which provides that "every disclosure" made under Rule 26 must be signed by an attorney of record.  The signature certifies that "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry . . . with respect to a disclosure, it is complete and correct as of the time it is made."  Fed. R. Civ. P. 26(g)(a)(A).  When Schneider's attorney signed Schneider's initial disclosures, he must have known that they were incomplete because they failed to disclose the 106 declarations that the attorneys had obtained two months earlier.  Exh. M.

1    The member shall not mislead such a constituent into believing that the

2    constituent may communicate confidential information to the member in

3    a way that will not be used in the organization's interest.

4    Exh. R.

5          In the context of wage-and-hour class action lawsuits, one state court has

6    interpreted Rule 3-600 to mean that an employer's attorneys must make the

7    following disclosures when contacting unrepresented employees before class

8    certification: (1) the putative class members' potential rights to overtime and other

9    wages are at issue in pending litigation; (2) the employees' interests may be adverse

10   to the corporation's interests in the litigation; (3) the employer's attorneys represent

11   only the corporation's interests, not those of the putative class members, and (4) the

12   employees could obtain their own counsel. *Shahrokhshahi* Order (Exh. Q) at 9-10.

13         Here, Schneider's attorneys violated the Rule by failing to make these

14   disclosures to the employees. Schneider's attorneys failed to disclose to Bucio that a

15   lawsuit had even been filed, and did not provide specifics about the lawsuit to any of

16   the three employees. Schneider's attorneys never advised the employees that this

17   lawsuit seeks overtime and other compensation on their behalf. The attorneys did

18   not disclose that they represented only Schneider's interests, and not the interests of

19   the employees. And, the attorneys did not advise the employees that they could seek

20   their own counsel. *See also Mevorah*, 2005 U.S. Dist. LEXIS 28615, at *14-15

21   (employer's attorneys violated Rule 3-600 by failing to disclose that the employer's

22   interests may be adverse to the employee's interests).

23         In addition to failing to make the required disclosures, Schneider's attorneys

24   also violated Rule 3-600(D) by misleading the employees into believing that they

25   could "communicate confidential information" to Schneider's attorneys "in a way

26   that will not be used in [Schneider's] interest." When Schneider's attorneys told the

27   employees that they were gathering the information for "internal research" or an

28   "internal investigation," they misled the employees to believe that the information

they provided would be kept within the company.  Instead, Schneider's true plan was to obtain declarations that it could later use for its own interests – for example, to defeat class certification.  This conduct violates Rule 3-600(D).

**D.     Schneider's Unethical and Coercive Conduct Warrants the Relief Sought**

"Given that class actions present 'opportunities for abuse as well as problems for courts and counsel in the management of cases,' the Supreme Court has recognized the duty and broad authority that a district court has 'to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.'" *Sjoblom*, 2007 U.S. Dist. LEXIS 94829, at *7 (quoting *Gulf Oil*, 452 U.S. at 100).  In *Sjoblom*, after the court concluded that the employer had obtained 62 declarations using improper tactics, the court struck the declarations and entered an order requiring the employer to "to obtain prior consent of this court if they wish to communicate with potential class members." *Id.*, at *10-11.  The court also ruled that if the case were conditionally certified under the FLSA, a curative notice would be sent to the 62 declarants informing them of their rights in the lawsuit. *Id*, at *2-3, 11.

Similarly, in *Longcrier*, after the court concluded that the employer had obtained 245 potential class member declarations "improperly and in bad faith," the court struck the declarations and barred the employer "from utilizing them for any purpose in this litigation." *Longcrier*, 595 F. Supp. 2d at 1246.  In *Villa*, after the court concluded that the employer obtained 206 declarations from its employees under circumstances that demonstrated a mere "*risk* of coercion," the court ruled that it would not give any "significant probative value" to the declarations, and ordered that a curative notice be sent to the employees informing them that "the Court will disregard any declarations they may have signed, and that they may still participate in the suit even if they signed a declaration." *Villa*, 2012 U.S. Dist. LEXIS 162922, at *46-47.  In *Shahrokhshahi*, after the court concluded that the employer's attorneys violated Rule 3-600 by failing to make the required disclosures, the court ordered

that a notice be sent to all potential class members informing them, *inter alia*, that any information the employer gathered in the future could be used to defeat their potential right to overtime wages. *Shahrokhshahi* Order (Exh. Q), Exh. A at 2.

These cases demonstrate that the relief plaintiffs now seek is warranted under the circumstances. Indeed, Schneider's attorneys have recently contacted class members by telephone to ask additional questions about the matters raised in this lawsuit, yet they *still* are not making the disclosures required by Cal. Rule of Prof. Conduct 3-600. Teukolsky Decl. ¶2. And the circumstances before the Court are *even worse* than in any of the above-cited cases because this case involves a substantial number of workers who speak Spanish, and who are not fluent in English. Bucio Decl. ¶3 (about 80% of the workers speak Spanish). Schneider's attorneys knew this – they ensured that a Spanish-language interpreter was present at Bucio and Alvarado's meetings. But the attorneys did not ask the interpreter to translate the declaration into English before asking these employees to sign – presumably to conceal the fact that the document did not truly reflect what the workers had told them, or that it was a formal legal document being signed under penalty of perjury.

For these reasons, the Court should grant plaintiffs' motion in its entirety.

## E.   The Attorney Work Product Doctrine Does Not Protect the Declarations from Disclosure

Schneider will likely assert, as it did during the meet and confer process, that the 106 declarations are protected from disclosure by the attorney work product doctrine. Exh. B. However, the attorney work product doctrine is not absolute, but rather requires the Court to engage in a balancing test to determine whether the need for disclosure outweighs the interest in protecting an attorney's mental impressions about the case. *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1494 (9th Cir. 1989) ("The work-product rule is not a privilege but a qualified immunity . . . ."). Here, any interest that Schneider may have in protecting its attorneys' mental impressions is minimal compared to the need to determine the nature and extent of

1   its attorneys' misconduct in obtaining the declarations.  Schneider cannot conceal its

2   misconduct in the cloak of a qualified immunity.

3         Plaintiffs are entitled to review the declarations to determine the extent of the

4   misconduct, including, for example, whether they were translated into Spanish and

5   whether they include information that undermines the potential class members'

6   interests in this litigation.  If the declarations are "cookie cutter," or were pre-

7   prepared, this may further demonstrate that they were improperly obtained.

8         Moreover, Schneider has failed to establish that the attorney work product

9   doctrine applies because it refused during the extensive meet and confer process to

10  disclose the identity of the attorney(s) who drafted them, or to list them on a

11  privilege log, merely asserting in a meet and confer letter that "they were prepared by

12  SLTD's defense counsel."  Exh. C at 2.  But *Tierno*, the very case upon which

13  Schneider relies to withhold the declarations, states that a party invoking the doctrine

14  must ordinarily disclose "the nature of the document, **the identity of its author,** and

15  other identifying information."  *Tierno v. Rite Aid Corp.*, 2008 U.S. Dist. LEXIS

16  112461, *8-9 (N.D. Cal. July 8, 2008) (emphasis added); *see also id.* at *4 (party

17  invoking the doctrine was ordered to list the declarations on a privilege log and

18  provide the "required" information, including "the attorney involved").  For reasons

19  that remain unexplained, Schneider has refused to disclose the identity of the

20  attorney who supposedly drafted the declarations, despite plaintiffs' repeated

21  requests.  Exh. E.  Under these circumstances, the Court should order that the 106

22  declarations be produced.[11]

23                          **V.  CONCLUSION**

24        For the foregoing reasons, plaintiffs respectfully request that the Court: (1)

25  limit further communication between Schneider and potential class members

26  _____

27  [11]At the very least, should the Court permit Schneider to take the depositions of
    any of the declarants – which plaintiffs submit would be highly inappropriate under
    the circumstances – the Court should order Schneider to disclose those declarants'
28  declarations.  Plaintiffs' counsel would be put at a significant disadvantage if
    required to ask questions at the depositions without seeing the declarations.

regarding this lawsuit; (2) enter a ruling that the 106 declarations will be disregarded by the Court should Schneider attempt to use them for any reason; (3) issue a curative notice from the Court to potential class members explaining that any declarations they signed will not be considered by the Court, and that Schneider cannot retaliate against them for cooperating with plaintiffs' counsel or otherwise participating in this lawsuit; (4) require Schneider to produce the 106 declarations to plaintiffs' counsel, and to provide the contact information for those declarants; (5) preclude Schneider from deposing any of the 106 unrepresented declarants regarding the manner in which the declarations were obtained; and (6) enter any other relief that is warranted under the circumstances.  Plaintiffs have submitted a proposed order concurrently herewith.


Dated:  February 25, 2013                    Respectfully submitted,

                                             TRABER & VOORHEES

                              By:     /s/ Lauren Teukolsky
                                      Lauren Teukolsky
                                      Attorneys for Plaintiffs