UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2188 CAS (DTBx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | FRANKLIN QUEZADA, ET AL V. SCHNEIDER LOGISTICS TRANSLOADING AND DISTRIBUTION, ET AL. | | |

AMENDED

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| CATHERINE JEANG | Sheri Kleeger ~~LAURA ELIAS~~ | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| n/a | n/a |

**Proceedings:**  MOTION FOR RELIEF FROM LIMITING DEFENSE COMMUNICATIONS WITH CLASS MEMBERS (Docket #37, filed February 25, 2013)

## I.   INTRODUCTION

Plaintiffs filed the instant putative class action action in this Court on March 15, 2012, against defendant Schneider Logistics Transloading & Distribution, Inc. ("SLTD"). Plaintiffs' complaint alleges the following claims for relief: (1) violation of California overtime provisions, (2) breach of contract, (3) violation of California rest period provisions, (4) violation of California itemized wage statement provisions, (5) violation of California full and timely wage provisions, (6) violation on the California prohibition against secret wages, (7) fraud, (8) a claim under the California Private Attorney General Act ("PAGA"), California Labor Code § 2698 et seq., (9) unfair competition, and (10) declaratory relief.

On February 25, 2013, plaintiffs filed a motion to limit communications between defendant and potential class members. Defendants filed an opposition on March 4, 2013, and plaintiffs filed a reply on March 11, 2013. Additionally, defendants filed a surreply on March 20, 2013. After considering the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

Plaintiffs in this lawsuit are low-wage workers employed by defendant SLTD to work at three warehouses in Mira Loma, California (the "Mira Loma warehouses"). First

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2188 CAS (DTBx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | FRANKLIN QUEZADA, ET AL V. SCHNEIDER LOGISTICS TRANSLOADING AND DISTRIBUTION, ET AL. | | |

Amended Complaint ("FAC") ¶ 1. Plaintiffs allege that SLTD has unlawfully failed to pay plaintiffs overtime wages, and has also failed to grant them meal and rest breaks as required by law. Id. ¶¶ 2 – 5; 7. Plaintiffs seek to recover lost wages, injunctive relief, and various other forms of relief.

Plaintiffs' motion arises out of 106 sworn declarations that SLTD obtained from its employees, the potential class members in this case, regarding the conduct alleged in plaintiffs' complaint. These declarations were obtained during a series of interviews SLTD conducted with its employees at the Mira Loma warehouses shortly after plaintiffs filed their complaint. Alvarado Decl. ¶ 2; Bucio Decl. ¶ 2; Downing Decl. ¶ 2; Ahearn Decl. ¶ 3. These meetings were held in a manger's office during work hours, and the employees were ordered to report to these meetings either over a loudspeaker or by having a supervisor escort them to the meetings. Alvarado Decl. ¶ 2; Bucio Decl. ¶ 2; Downing Decl. ¶ 2. Some employees did not understand why they were being summoned to the office, and were worried that the meeting was going to focus on discipline or an accusation of misconduct. Id. One SLTD employee, Walter Downing, asked his supervisor what the meeting was about, and was told that he "would just have to go in and find out." Downing Decl. ¶ 2.

Once an employee arrived at the office, he or she was asked a series of questions by lawyers for SLTD. Additionally, a Spanish-English translator was present for those employees who did not feel comfortable participating in the interview in English. Prior to beginning the conversation, the SLTD lawyers explained the following to the employees:

1. That the employee's participation in the meeting was voluntary, and that she or he could end their participation at any time and for any reason.

2. That the associate's participation in the drafting and signing of a declaration was completely voluntary.

3. That if the associate decided to sign a declaration, she or he could make sure that it is truthful and accurate.

4. That SLTD cannot retaliate against the associate, or reward the associate,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2188 CAS (DTBx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | FRANKLIN QUEZADA, ET AL V. SCHNEIDER LOGISTICS TRANSLOADING AND DISTRIBUTION, ET AL. | | |

      based on the information she or he provided in the meeting, or as a result of the employee's decision to participation, or not to participate, in the meeting.

5.     That the employee was a potential member of a class of individuals on whose behalf a lawsuit has been brought against SLTD with claims pertaining to the subject matter discussed in the meeting, which included issues of unpaid wages.[1]

6.     That the lawyers present represented SLTD and not the employees.

7.     That the associate could consult with an attorney of her or his choosing if she had any questions about the process.

Munoz Decl. #1 ¶ 8. The SLTD lawyers also asked whether each employee was represented by counsel, and only continued if the associated answer "no." Id. Despite these notices, only five employees of the nearly one-hundred and twenty called to the interviews elected not to participate. Ahearn Decl. ¶ 3.

      Additionally, before the questioning at each meeting began, the SLTD lawyers informed the employees that the meeting was "just an interview," and stated that the meetings were being conducted in connection with the SLTD lawyers' "internal investigation about the conditions at the warehouse." Bucio Decl. ¶ 4; Downing Decl. ¶ 6; Alvarado Decl. ¶ 5. These statements led at least some SLTD employees to believe that their conversation was informal, and that it would be kept inside the company. Id.

      The interviews lasted between thirty to forty minutes, and the SLTD lawyers' questions focused on the conduct alleged in plaintiffs' complaint. At the end of the interviews, the employees were asked to sign a declaration. The SLTD lawyers did not, however, tell the employees that the document was a sworn declaration that could be used

---

[1] One SLTD employee, Eleonso Bucio, denies that he was told that a lawsuit was filed. Bucio Decl. ¶ 6. Another, Joel Alvarado, states that the SLTD lawyer told him that a lawsuit was filed, but did not explain the specifics of the lawsuit. Alvarado Decl. ¶ 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2188 CAS (DTBx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | FRANKLIN QUEZADA, ET AL V. SCHNEIDER LOGISTICS TRANSLOADING AND DISTRIBUTION, ET AL. | | |

in plaintiffs' lawsuit to limit the employees' potential recovery. Alvarado Decl. ¶ 9; Downing Decl. ¶ 8; Bucio Decl. ¶ 10. Instead, the employees were told that the document was a "consent form" stating that the employee had voluntarily agreed to be interviewed. Bucio Decl. ¶ 8; Downing Decl. ¶ 7. SLTD attorneys also stated that the only way an employee could receive a copy of the declaration was to sign it. Downing Decl. ¶ 7. Some employees felt that they were being pressured into signing the declarations, and in total, only six employees declined to sign declarations. Downing Decl. ¶ 7; Alvarado Decl. ¶ 6; Ahearn Decl. ¶ 3.

Plaintiffs argue that the manner in which SLTD obtained these declarations was coercive and unethical, and now seek an order declaring that the 106 declarations obtained during the meetings at the Mira Loma warehouse will be stricken if SLTD attempts to introduce them as evidence, and also seek a curative notice informing potential class members that the declarations they signed will not be considered by the Court in this lawsuit. Additionally, plaintiffs seek an order preventing SLTD from engaging in any additional communications with potential class members regarding this lawsuit without first obtaining permission from the Court.

### III. LEGAL STANDARD

"Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981). This authority is grounded in Federal Rule of Civil Procedure 23(d), which allows a district court to issue orders that "impose conditions on the representative parties . . . [or] deal with similar procedural matters." Fed. R. Civ. Proc. 23(d); see also Gulf Oil Co., 452 U.S. at 99. Orders limiting communications with class members are appropriate under Rule 23(d), but any such order must be "a carefully drawn order that limits speech as little as possible," and also "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Gulf Oil Co., 452 U.S. at 101.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2188 CAS (DTBx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | FRANKLIN QUEZADA, ET AL V. SCHNEIDER LOGISTICS TRANSLOADING AND DISTRIBUTION, ET AL. | | |

## IV. ANALYSIS

### A. Admissibility of Declarations

As a threshold matter, defendant challenges the admissibility of two declarations submitted by plaintiffs that describe the circumstances under which the interviews took place. Defendant argues that these declarations are not admissible because they were originally executed in Spanish, and were translated into English by plaintiffs' counsel, not a third-party interpreter. Defendant argues that under Federal Rules of Evidence 604 and 901, translated declarations are only admissible if they are authenticated by a qualified and unbiased interpreter, and contends that plaintiffs' counsel is not a qualified interpreter under these rules. See Jack v. Trans World Airlines, 854 F. Supp. 654, 659 (N.D. Cal. 1994) ("Witness testimony translated from a foreign language must be properly authenticated and any interpretation must be shown to be an accurate translation done by a competent translator."); Sun v. Governmental Authorities on Taiwan, 2011 WL 114443, at *7 (N.D. Cal. 2001) (striking translated evidence when there is nothing to indicate "who did the translations and the translator's competency.").

Federal Rule of Evidence 604 provides that "[a]n interpreter must be qualified and must give an oath or affirmation to make a true translation." Fed. R. Evid. 604. Here, the translator has provided a sworn declaration stating that she is "fluent in both the English and Spanish languages," and that she "truthfully and correctly translated" the challenged declarations. Defendants do not provide any evidence that, contrary to this declaration, the translator lacks qualification or fluency in English and Spanish. Defendant implicitly argues that the translator is biased because she is acting as plaintiffs' counsel, but does not cite any authority supporting the proposition that potential bias can render an interpreter unqualified. Defendant does argue that only court certified translators are qualified under Rule 604, and cites United States v. Bailon-Santana, 429 F.3d 1258, 1260 – 1261 (9th Cir. 2005) in support of this argument. Bailon-Santana did not, however, consider the admissibility of translated declarations into evidence. Instead, it considered whether an attorney, in lieu of a court certified translator, could adequately translate a jury trial waiver form from English into Spanish. Id. at 1259 – 1260. Consequently, the case is inapposite, and the Court rejects defendant's argument.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2188 CAS (DTBx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | FRANKLIN QUEZADA, ET AL V. SCHNEIDER LOGISTICS TRANSLOADING AND DISTRIBUTION, ET AL. | | |

The Court therefore finds that the declarations have been properly authenticated and translated, and that they are therefore admissible for purposes of plaintiffs' motion.

### B.     Whether an Order Limiting Communications Should Issue

In general, the defendants in a class action are not barred from pre-certification communications with prospective members of the plaintiff class. Maddock v. KB Homes, Inc., 248 F.R.D. 229, 236 (C.D. Cal. 2007); see also Parks v. Eastwood Ins. Services, Inc., 235 F. Supp. 2d 1082, 1084 (C.D. Cal. 2002). As several decisions have recognized, however, a limitation on pre-certification communications is appropriate when misleading, coercive, or improper communications have taken place. Maddock, 248 F.R.D. at 236; see also Longcrier v. HL-A Co., Inc., 595 F. Supp. 2d 1218, 1227 (S.D. Ala. 2008) ("Federal courts have routinely exercised their discretion to restrict communications in class actions . . . where a party has engaged in misleading or coercive behavior with respect to prospective class members.").

Several decisions have applied these principles in the context of employment class actions where a defendant employer has had pre-certification contacts with members of the potential employee class. These decisions have recognized that there is a "heightened potential for coercion" where absent class members and the defendant are in an employer-employee relationship. Belt v. Emcare, Inc., 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003); Mevorah v. Wells Fargo Home Mortg., 2005 WL 4813532, at *4 (N.D. Cal. 2005). Nonetheless, the "inherent coerciveness in the employment relationship is insufficient, in and of itself, to warrant imposition of limitations of employers' ability to speak with potential class members prior to certification." Longcrier, 595 F. Supp. 2d at 1227; Kerce v. West Telemarketing Corp., 575 F. Supp. 2d 1354, 1366 – 67 (S.D. Ga. 2008); McLaughlin v. Liberty Mut. Co., 224 F.R.D. 295, 298 (D. Mass. 2004); Gulf Oil Co., 452 U.S. at 104 ("the mere possibility of abuses does not justify routine adoption of a communications ban"). An employer has a right to investigate a case as long as its investigation is neither deceptive nor coercive. Bell v. Addus Healthcare, Inc., 2007 WL 2752893, at * 1 – 2 (W.D. Wash. 2007).

In considering whether pre-certification communications between employers and employees are sufficiently deceptive or coercive to warrant relief, courts have considered several factors, including whether the employer adequately informed the employees

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2188 CAS (DTBx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | FRANKLIN QUEZADA, ET AL V. SCHNEIDER LOGISTICS TRANSLOADING AND DISTRIBUTION, ET AL. | | |

about: (1) the details underlying the lawsuit, (2) the nature and purpose of the communications, and (3) the fact that any defense attorneys conducting the communications represent the employer and not the employee.  See, e.g., Longcrier, 595 F. Supp. 2d at 1227 – 28; Maddock, 248 F.R.D. at 237; Mevorah, 2005 WL 4813532, at *4 – 5.  Additionally, federal courts in California have found that any violation of California Rule of Professional Conduct 3-600 weighs in favor of finding that improper communications have taken place.  Mevorah, 2005 WL 4813532, at * 4 – 5.[2]

      Here, defendant argues that the interviews conducted at the Mira Loma warehouses were not coercive or deceptive due to the information provided by SLTD prior to the interviews.  Defendant argues that this information prevented the meetings from becoming coercive or deceptive because the participating employees were told that the attorneys represented SLTD, and were also told that they were free to leave, were free to refuse to sign a declaration, and were free to make changes to their declaration prior to signing.  Citing Bell v. Addus Healthcare, Inc., 2007 WL 2752893, at * 1 – 2, defendant contends that courts have found limitations on communications with class members to be unnecessary when this sort of information is disclosed prior to employer-employee contacts.  Moreover, defendant also points out that its attorneys notified SLTD employees of this lawsuit prior to each interview, and argue that this disclosure also weighs against limiting pre-certification communications.  See Maddock, 248 F.R.D. at 237 (declining to strike declarations where potential class members were given a document describing the case in a neutral fashion).

      While defendant has pointed to some evidence tending to show that no improper

---

[2] California Rule of Professional Conduct 3-600(D) provides that:

"In dealing with an organization's directors, officers, employees, members, shareholders, or other constituents, a member shall explain the identity of the client for whom the member acts, whenever it is or becomes apparent that the organization's interests are or may become adverse to those of the constituent(s) with whom the member is dealing. The member shall not mislead such a constituent into believing that the constituent may communicate confidential information to the member in a way that will not be used in the organization's interest if that is or becomes adverse to the constituent."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2188 CAS (DTBx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | FRANKLIN QUEZADA, ET AL V. SCHNEIDER LOGISTICS TRANSLOADING AND DISTRIBUTION, ET AL. | | |

communications have occurred, the Court finds that clear countervailing evidence shows that SLTD's communications with its employees were improper. Even if defendant provided its employees with some information about the lawsuit and with notice that the attorneys represented SLTD, the communications were deceptive because the interviewing attorneys failed to notify the employees of the nature and purpose of the communications. Crucially, the employees were never told that the purpose of the interviews was to gather evidence to be used against the employees in a lawsuit. In fact, the employees were not even told that the document they were asked to sign at the close of the interview was a sworn declaration, nor were they apprised of the significance of signing a declaration under penalty of perjury. Alvarado Decl. ¶ 9; Downing Decl. ¶ 8; Bucio Decl. ¶ 10. The employees were instead misleadingly told that the interviews were only an "internal investigation."

Failing to inform the employees of the evidence-gathering purpose of the interviews rendered the communications fundamentally misleading and deceptive because the employees were unaware that the interview was taking place in an adversarial context, and that the employees' statements could be used to limit their right to relief. In addition to rendering the communications deceptive, failing to disclose the evidence-gathering purpose of the interviews runs contrary to the requirement set out in California Rule of Professional Conduct 3-600(D) that an attorney representing an organization "shall not mislead [an employee] into believing that the [employee] may communicate confidential information to the [attorney] in a way that will not be used in the organization's interest if that is or becomes adverse to the [employee]." An employee unaware of the formal and potentially adversarial nature of the evidence-gathering interviews could acquire the false impression that he or she could communicate confidential information to the interviewer without negative consequences. In fact, at least some SLTD employees actually acquired this false impression. Bucio Decl. ¶¶ 4,8 ("I believed our conversation was informal, and that what I said would be kept inside the company."). The deceptive nature of the interviews therefore appears to have led to a violation of Rule 3-600(D), which in this case weighs strongly in favor of finding that improper communications have taken place.

Defendant cites no authority in which an employer has been entitled to gather evidence from its employees without disclosing this purpose. In fact, while the defendant in <u>Bell v. Addus Healthcare, Inc.</u> apparently interviewed its employees in order to gather

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2188 CAS (DTBx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | FRANKLIN QUEZADA, ET AL V. SCHNEIDER LOGISTICS TRANSLOADING AND DISTRIBUTION, ET AL. | | |

evidence, that defendant specifically informed its employees that the individual conducting the interview "is seeking to investigate facts in order to evaluate and defend against [a] lawsuit" in which the employee was a potential class member. Bell, 2007 WL 2752893, at *1. No comparable warning was given to SLTD employees prior to the interviews.

     While the deceptive nature of the interviews is sufficient to support a finding that improper communications have taken place, the Court also finds that the interviews were impermissibly coercive, which provides additional reason to grant relief. The interviews were conducted in a coercive manner because the employees did not attend the interviews on their own initiative, but instead were summoned into attendance over a loudspeaker or directly ordered to attend by their supervisors. The employees were not given the option of simply not attending. Defendant contends that the meetings were nonetheless not coercive because the employees were "properly notified of the voluntary nature of the meeting[s]." Def. Opp. at 7. This notice was hardly sufficient, however, because the employees were ordered to attend the meetings, and it was therefore confusing and slightly self-contradictory for SLTD's lawyers to inform the employees that their presence at the interviews was voluntary. Moreover, while defendant makes much of the fact that the employees were told they were free to leave the interviews once they began, only five out of the nearly one-hundred and twenty employees interviewed actually chose to leave, which suggests that the interviewing attorney's grant of permission to leave did little to dispel the aura of coercion.

     Additionally, turning to conduct that took place during the interviews, some employees participating in the interviews reported that they felt pressured into signing the declaration presented to them at their interview's conclusion. See Alvarado Decl. ¶ 6 ("The attorney said that I didn't have to sign the paper, but the way he said it and the way in which he forcefully put the paper in front of me made me feel like I had no choice but to sign the document."); Downing Decl. ¶ 7. A mere six employees interviewed declined to sign declarations, which provides some confirmation that employees were pressured into signing declarations.

     The Court therefore finds that defendant's communications with its employees were coercive and misleading, and that relief is therefore warranted. Courts in similar circumstances have found that any declarations obtained through improper

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2188 CAS (DTBx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | FRANKLIN QUEZADA, ET AL V. SCHNEIDER LOGISTICS TRANSLOADING AND DISTRIBUTION, ET AL. | | |

communications should be disregarded, and therefore plaintiffs' request for an order stating that the declarations will not be considered by the Court should be granted. Longcrier, 595 F. Supp. 2d at 1230. Additionally, to correct any inaccurate impressions resulting from the interviews, the Court also finds that a curative notice to potential class members is appropriate. Mevorah, 2005 WL 4813532, at * 5 – 6. Finally, to mitigate the risk of any further deceptive and coercive communications from taking place, the Court hereby orders that defendant must refrain from further communications with its employees regarding this lawsuit without first obtaining the permission of the Court. Id.[3]

**V.      CONCLUSION**

In accordance with the foregoing, plaintiff's motion is hereby GRANTED. The Court orders the following:

(1)    Defendant and its agents shall have no further communications with potential class members regarding this lawsuit without first obtaining written permission from the Court. If defendant wishes to communicate with potential class members regarding this lawsuit, it must submit a statement to the Court setting forth the information that it wishes to communicate, the means it intends to use to make the communication, and the identity of the individual(s) who will make the communication.

(2)    The Court will disregard the 106 declarations should defendant attempt to use them for any reason.

(3)    The Court will issue a curative notice to potential class members explaining that any declarations they signed will not be considered by the Court, and that defendant cannot retaliate against them for cooperating with plaintiffs'

---

[3] Plaintiffs also seek an order compelling defendant to produce the declarations it obtained during the interviews, and in response defendant argues that the declarations are protected under the attorney work product doctrine. Since production of the declarations is a discovery matter, it should be brought before Magistrate Judge Bristow, not this Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2188 CAS (DTBx) | Date | March 25, 2013 |
|---|---|---|---|
| Title | FRANKLIN QUEZADA, ET AL V. SCHNEIDER LOGISTICS TRANSLOADING AND DISTRIBUTION, ET AL. | | |

counsel or otherwise participating in this lawsuit. Plaintiffs' counsel shall draft a proposed curative notice for the Court's review and file it not later than 10 days from the date of this Order. Defendant shall bear the cost of sending the notice.

IT IS SO ORDERED.

| | : | 20 |
|---|---|---|
| Initials of Preparer | IM | |