THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
REBECCA PETERSON-FISHER (SBN 255359)
MARISA HERNANDEZ-STERN (SBN 272477)
Traber & Voorhees
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com
rpf@tvlegal.com
mhs@tvlegal.com

Attorneys for Plaintiffs Franklin Quezada, *et al.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| FRANKLIN QUEZADA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SCHNEIDER LOGISTICS TRANSLOADING & DISTRIBUTION, INC., et al., <br><br> Defendants. | Case No. CV 12-2188 CAS (DTBx) <br><br> **DECLARATION OF NAMED PLAINTIFF FRANKLIN QUEZADA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** <br><br> Date:   None Set <br> Time:   None Set <br> Judge:  Hon. Christina A. Snyder |

Quezada Declaration;
Case No. CV 12-2188 CAS (DTBx)

# DECLARATION OF FRANKLIN QUEZADA

I, Franklin Quezada, declare as follows:

1. The information contained in this declaration is based on my personal knowledge. If called as a witness, I could and would competently testify to the following matters.

2. I am a named plaintiff in this class action lawsuit. I have been a warehouse employee working in the warehouses located at 4100 and 4250 Hamner Avenue in Mira Loma/Eastvale, California for approximately the last eight years. Since 2006, I have worked for Schneider Logistics Transloading & Distribution, Inc. ("Schneider"). Currently, I pull orders and do other tasks related to the operations of the warehouses.

3. I was present in or around June 2008 when Schneider held an informational meeting about the alternative workweek schedule ("AWS" or "4-10 schedule"). At this meeting, all the information was given to us orally. The managers speaking at the meeting spoke to us only in English. Even though I can understand and speak some English, I primarily speak Spanish. Because the meeting about the 4-10 schedule was conducted in English, I did not fully understand all that was being told to me. Schneider did not have anyone from their staff provide simultaneous translation of the meeting or have anyone stay after to answer questions in Spanish about the content of the meeting.

4. The AWS election took place a couple of weeks after the meeting. Before the election, Schneider did not give me anything in writing describing the 4-10 schedule or its effects. The Schneider managers did not hand out anything in writing during the meeting.

5. After the election, my schedule was not regular. Schneider often did not give me four ten-hour workdays per week. Instead, my schedule constantly changed depending on how much work there was in the warehouse. Sometimes, my shifts

lasted six hours, or eight hours, or 10 hours. Sometimes, during the "blitz," I worked 12 or even 15-hour days.

6. Before this lawsuit was filed, Schneider did not provide me with a second rest break in the middle of my shift when I worked shifts that lasted 8 hours, and I sometimes didn't get a rest break at all when I worked shifts that lasted between 6-8 hours. My start time was 5:00a.m., so when I worked 8-hour shifts, my end time was 1:30p.m. Schneider usually called the second rest break over the loudspeaker at 1:15p.m., and we were only supposed to take breaks when they were called. So, if I worked a shift that lasted 7 hours, I would leave work at 12:30 before the second break was called, and I didn't get a rest break. If I worked a shift that lasted 8 hours, the break was right at the end of my shift, and not in the middle. Sometimes when I worked 8 hour shifts, my supervisor told me just to work through the break because I was about to go home anyway.

7. As for meal breaks, right after the AWS election, I was told to sign a document or else I would be terminated by Schneider. The document was in English and I wasn't given a translation. I later learned that the document I was forced to sign said that I was voluntarily waiving my right to all future second meal breaks when I worked shifts lasting between 10-12 hours. I did not understand this document or the rights I was giving up. I don't believe that I ever took a second meal break when I worked a shift between 10-12 hours. Even when I worked shifts lasting more than 12 hours, I almost never took a second meal break, and no one explained to me that I had the right to take a second meal break when I worked more than 12 hours.

8. I also did not understand that I was entitled to take a meal break when I worked a shift that was between five and six hours long, or that I could waive my right to take a meal break for shifts lasting between 5-6 hours. My supervisor sometimes told me that when I worked six hour shifts, I should just go home and not take a meal break. The Labor Commissioner came to the warehouses in the fall of

2011. After they came, Schneider started having us sign a piece of paper that said I was "voluntarily" giving up my right to a meal break for shifts lasting between 5-6 hours. However, my supervisor often forced me to sign this piece of paper at the end of my shift, and nothing about it was "voluntary." Almost all the forms I was forced to sign were in English and if I did sign them, I often had no idea what I was being forced to sign.

9. Also, when it came to meal breaks, I was often told to sign forms by my supervisors. Many of these forms were meal break waivers. Instead of voluntarily saying I did not want to take first or second meal break, I was often forced by my supervisors at the end of my shifts to sign forms saying I voluntarily waived my right to my meal breaks. Nothing about that process was voluntarily, since I was being forced to sign. There were times when I did not agree with this process and I refused to sign the forms. Almost all the forms I was forced to sign were in English and if I did sign them, I often had no idea what I was being forced to sign. Another example of signing meal period waivers happened around the time of the 4-10 election. At that time, I was told to sign a document or else I would be terminated by Schneider. I later learned that the document I was forced to sign said that I was voluntarily waiving my right to all future second meal periods. I did not understand this document or the rights I was giving up.

10. I have recorded the hours I work by clocking in and out of Schneider's time clocks. I was not aware that Schneider was deducting 30 minutes from my time records when I worked more than 12 hours.

11. After we switched to the 4-10 schedule, there were many days when I showed up for work, only to be told I was being sent home for lack of work ("LOW"). On LOW days, Schneider supervisors told me to go home or asked me to "volunteer" to go home. Schneider did not pay me reporting time pay on days that I agreed to leave early. And, I was not told that, by agreeing to leave before

Quezada Declaration;
Case No. CV 12-2188 CAS (DTBx)                -3-

performing four hours of work, I was giving up my right to reporting time pay under California law.

12. I first started working with the plaintiffs' attorneys in the fall of 2011. I spent several hours being interviewed by them about my working conditions. I provided these attorneys with employment documents, including pay stubs and work diaries. I asked many of my co-workers to get involved in the lawsuit. I also put the attorneys in touch with a number of other current and former Schneider employees who I thought might be interested in bringing this lawsuit to improve our working conditions.

13. Between October 2011 and the filing of the complaint in this lawsuit in March 2012, I met with my attorneys many times, both in person and over the phone. I knew that becoming a lead plaintiff in this lawsuit would have the potential to make me a target in the workplace, but I felt strongly about protecting my own and other workers' rights.

14. In March of 2012, plaintiffs' counsel filed this lawsuit against Schneider. That lawsuit named me as lead plaintiff. Many of my co-workers came to associate me with the lawsuit. Many felt I was betraying the company by filing the lawsuit and no longer wanted to speak with me at work. Other workers who had previously been my friends no longer wanted to associate with me because of my involvement. I often feared that the mangers and supervisors would treat me differently or judge my work more harshly because of my involvement. This was a very stressful experience.

15. After the case was filed, I continued to assist the attorneys with their investigation. I assisted by attending class meetings, speaking with my co-workers about the lawsuit, and answering discovery requests made to me. Since the lawsuit was filed, I have responded to Schneider's Request for Production of Documents and Special Interrogatories. To answer Schneider's discovery requests, I met with my

attorneys multiple times in person and over the phone to verify my responses. I also had to search my house for documents in response to Schneider's requests.

16. In June of 2013, I spent several hours working with my attorneys to prepare for my deposition. On June 4, 2013, an attorney for Schneider took my deposition for a full day. After the deposition transcript was sent to my attorneys, I worked with my attorneys to review the transcript.

17. Throughout the case, including during settlement negotiations, I remained in regular contact with my attorneys to assist them with this lawsuit. I was in constant communication with my attorneys to tell them about the working conditions in the warehouses.

18. I also attended many class meetings, which were held approximately every six to eight weeks. In total, I estimate that I attended eight class meetings with my attorneys to discuss case updates with interested class members.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this _16_ day of October, 2013, in _Ontario_, California.

_____
Franklin Quezada

Quezada Declaration;
Case No. CV 12-2188 CAS (DTBx)                -5-

## DECLARATION OF TRANSLATION

I, Marisa Hernández-Stern, declare that I am fluent in both the English and Spanish languages. On October 15, 2013, I truthfully and correctly translated and read the foregoing **DECLARATION OF NAMED PLAINTIFF FRANKLIN QUEZADA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** to Franklin Quezada before he signed it. He told me that he understood what I read to him. I declare under penalty of perjury under the laws of the State of California that this declaration is true.

Executed this 15 day of October, 2013, in Pasadena, California.

_____
Marisa Hernández-Stern

- 1 -
DECLARATION OF TRANSLATION