THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
REBECCA PETERSON-FISHER (SBN 255359)
MARISA HERNANDEZ-STERN (SBN 272477)
Traber & Voorhees
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com
rpf@tvlegal.com
mhs@tvlegal.com

Attorneys for Plaintiffs Franklin Quezada, *et al.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| FRANKLIN QUEZADA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SCHNEIDER LOGISTICS TRANSLOADING & DISTRIBUTION, INC., et al., <br><br> Defendants. | Case No. CV 12-2188 CAS (DTBx) <br><br> **DECLARATION OF NAMED PLAINTIFF ELIZABETH GUTIERREZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** <br><br> Date: None Set <br> Time: None Set <br> Judge: Hon. Christina A. Snyder |

## DECLARATION OF ELIZABETH GUTIERREZ

I, Elizabeth Gutierrez, declare as follows:

1. The information contained in this declaration is based on my personal knowledge. If called as a witness, I could and would competently testify to the following matters.

2. I am a named plaintiff in this action. I have worked as an hourly employee in the warehouses located at 4100 and 4250 Hamner Avenue in Mira Loma/Eastvale, California. Since approximately 2007, I have worked for Schneider Logistics Transloading & Distribution, Inc. ("Schneider"). Currently, I pull orders and do other tasks related to the operations of the warehouses.

3. I was present in June of 2008 when Schneider held a secret ballot election to go to a four-day a week, ten-hour a day schedule ("4-10 schedule"). Before the vote to switch to a 4-10 schedule was held, Schneider conducted a meeting to discuss about the 4-10 schedule. I was present at the meeting. During the meeting, Schneider did not hand out any information discussing the 4-10 schedule. The meeting was held entirely in English. While I do speak and understand limited English, my primary language is Spanish. Schneider did not make anyone available from the company to translate the meeting, and I had trouble understanding the entire presentation made about the 4-10 schedule. After the meeting, and before voting on the 4-10 schedule, I did not receive any written information about the 4-10 schedule, in English or Spanish. The only information I ever received about the 4-10 was communicated to me orally at the meeting I attended.

4. After the 4-10 election, my work schedule was very irregular. Schneider did not comply with its promise of giving me four days of work, ten hours each day. My schedule was constantly changing and wholly depended on the amount of work available in the warehouse. My shifts would last anywhere between

six, eight, or ten hours, and the warehouse was often closed entirely on days that I was scheduled to work.

5. Before this lawsuit was filed, Schneider did not provide me with a second rest break in the middle of my shift when I worked shifts lasting eight hours. There were also times when I did not get a rest break at all when I worked shifts that lasted between six and eight hours. My start time is 5:00 AM. Before the lawsuit, when I worked an eight-hour shift, my end time was 1:30 PM. Schneider usually called the second rest break over the P.A. at 1:15 PM. My supervisor told me that we were only allowed to take breaks when they were called over the P.A. Because the break was called at 1:15 PM, and our shift ended fifteen minutes after that, I would often go and just stand in the break room, waiting for it to be 1:30 PM. I would have rather just gone home, but I knew I had to wait around in order to be compensated for this break. Sometimes, my shift would only last six or seven hours. In the case of six or seven hour shifts, I would be sent home before a second rest break was called.

6. With regard to meal breaks, right after the 4-10 election, a Schneider supervisor told me to sign a document or else Schneider would terminate me. The document was in English and the supervisor did not translate it for me. I did not understand this document or its significance. I signed the document because I did not want to lose my job. I later learned that the document was a waiver stating that I was voluntarily waiving my right to all future second meal breaks when I worked shifts lasting between 10 and 12 hours. I do not think I ever took a second meal break when I worked between 10 and 12 hours. No one at Schneider ever told me that I was entitled to take a second meal break.

7. I also did not know that I was entitled to take a meal break when I worked a shift lasting between five and six hours or that I could waive my right to take a meal break on those days. On the days I worked five to six hours, Schneider only allowed me to take a single rest break. I cannot recall Schneider calling a meal

break over the PA on days that I worked between five and six hours. In the fall of 2011, the Labor Commissioner came to the warehouses. After the Commissioner's visit, Schneider began making me sign a document saying that I was "voluntarily" giving up my right to a meal break on shifts that last lasted between five and six hours. These papers were almost always given to me at the end of my shift, and my supervisor forced me to sign it. Sometimes, the supervisor would even give me these papers a few days after the meal break I had "voluntarily" given up had occurred. My supervisors gave me no choice but to sign the document. I did not understand the document at the time I signed it.

8. During my time working for Schneider, I would often show up to work, ready to work a ten-hour day, only to be told by my supervisors that there was not enough work for me that day. These days were referred to as Lack of Work or "LOW" days. On LOW days, my supervisors would ask me and others to "volunteer" to go home. Sometimes if enough workers did not "volunteer," my supervisors would begin telling certain people to go home. Sometimes I would volunteer and other times I was sent home. Either way, I came prepared to work ten-hours and I did not consider myself to be volunteering to go home if my supervisor was telling me I *had* to do it. Schneider did not pay me reporting time pay on days that I "volunteered" to go home. The mornings I was asked to volunteer or was told to go home, none of my supervisors or managers told me that I was giving up my right to reporting time pay under California law.

9. In or around early 2012 I began assisting the attorneys from Traber & Voorhees with their investigation of working conditions at Schneider.

10. In connection with this investigation, I provided the attorneys with documents related to my employment with Schneider, including work diaries and pay stubs. I provided them with the names of other current and former Schneider employees who I knew were also interested in pursuing claims against the company.

Gutierrez Declaration
Case No. CV 12-2188 CAS (DTBx)        -3-

11.     Between October 2011 and the filing of the complaint in March 2012, I met with my attorneys many times, both in person and over the phone, to discuss the investigation of the case.

12.     In March of 2012, plaintiffs' counsel filed this lawsuit against Schneider, and I agreed to be a named plaintiff.

13.     After the lawsuit was filed, many of my co-workers asked me what the lawsuit meant. Some co-workers told me they thought I was being a disloyal employee by bringing the lawsuit against the company. Some co-workers with whom I had previously been friendly began to avoid me. I frequently worried that I would be retaliated against for participating in the lawsuit, or even worse, that I might lose my job. The additional pressure to perform well at work because I was a lead plaintiff in the lawsuit caused me great anxiety and stress.

14.     After the case was filed, I continued to assist the attorneys with their investigation. I assisted the lawyers by attending many class meetings, speaking with my co-workers about the lawsuit, and answering discovery requests made to me. Since the lawsuit was filed, I have responded to over 160 document requests by Schneider and 26 Special Interrogatories. To answer Schneider's discovery requests, I met with my attorneys over the phone for several hours to verify my responses. I also searched my house for documents.

\\
\\

17.  I was scheduled to have my deposition taken in June 2013, but it was rescheduled for a later date. The case settled before my deposition was taken.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 16 day of October, 2013, in Perris, California.

*Elizabeth Gutierrez*

## **DECLARATION OF TRANSLATION**

I, Marisa Hernández-Stern, declare that I am fluent in both the English and Spanish languages. On October 16, 2013, I truthfully and correctly translated and read the foregoing **DECLARATION OF NAMED PLAINTIFF ELIZABETH GUTIERREZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** to Elizabeth Gutierrez before she signed it. She told me that he understood what I read to her. I declare under penalty of perjury under the laws of the State of California that this declaration is true.

Executed this 17 day of October, 2013, in Pasadena, California.

_____
Marisa Hernández-Stern

- 1 -
DECLARATION OF TRANSLATION