THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
REBECCA PETERSON-FISHER (SBN 255359)
MARISA HERNANDEZ-STERN (SBN 272477)
Traber & Voorhees
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com
rpf@tvlegal.com
mhs@tvlegal.com

Attorneys for Plaintiffs Franklin Quezada, *et al.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| FRANKLIN QUEZADA, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SCHNEIDER LOGISTICS TRANSLOADING & DISTRIBUTION, INC., et al.,<br><br>　　　　Defendants. | Case No. CV 12-2188 CAS (DTBx)<br><br>**DECLARATION OF NAMED PLAINTIFF WALTER DOWNING IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date:　　None Set<br>Time:　　None Set<br>Judge:　　Hon. Christina A. Snyder |

Downing Declaration
Case No. CV 12-2188 CAS (DTBx)

# DECLARATION OF WALTER DOWNING

I, Walter Downing, declare as follows:

1. The information contained in this declaration is based on my personal knowledge. If called as a witness, I could and would competently testify to the following matters.

2. I am a named plaintiff in this action. I was a warehouse employee working in the warehouses located at 4100 and 4250 Hamner Avenue in Mira Loma/Eastvale, California from approximately 2004 until 2012 for Schneider Logistics Transloading & Distribution, Inc. ("Schneider"). I worked as warehouse operations associate. My duties included checking and verifying boxes, replenishment, and doing other tasks related to the operations of the warehouses.

3. I was present in June 2008 when Schneider held a meeting to discuss if warehouse workers would convert to an alternative workweek schedule of four-days-a-week, ten-hours each day ("AWS" or "4-10 schedule"). At the meeting to discuss the possibility of switching to a 4-10 schedule, all the information given to us was verbal. The Schneider managers leading the meeting did not distribute any written materials describing the 4-10 schedule to me. After the meeting was held, I still did not receive any written information describing the 4-10 schedule. The 4-10 schedule meeting was held entirely in English and no translation was given for those workers who did not speak English.

4. After the 4-10 was implemented, my hours were never very regular. Schneider rarely provided me with four days of work, ten hours each day. My schedule would change depending on the volume of work available in the warehouses. Some days I would work six or eight hour shifts. Other days I would work 10 or 12 hours. During the "blitz" I would sometimes work as many as 14 hours.

5.      Before the lawsuit was filed, Schneider did not provide me with a second rest break in the middle of my shift when I worked shifts lasting eight hours. If I was provided with a second break, it was almost always offered by Schneider during the last fifteen minutes of my shift. Schneider only allowed me and other workers to take a break when it was called on the PA system. Some days, the break would not be called over the loudspeaker and I would not take a break during my entire shift. On days that Schneider offered me seven hours of work, I was not permitted to take a second rest break, since I was sent home before such a break would have been announced over the PA.

6.      Around the time of the AWS election, Schneider forced me to sign a document. If I did not sign the document, I would lose my job. I later learned that the document said I was voluntarily waiving my right to all future second meal breaks when I worked shifts lasting between 10 and 12 hours. Schneider did not explain this document or its significance to me. I do not believe that I was always offered a second meal break when I worked shifts lasting between 10-12 hours. It was rare that Schneider offered or permitted me to take a second meal break on days that I worked more than 12 hours.

7.      On days that I worked six-hour shifts, Schneider did not provide me with a meal period. Schneider also never told me that I was allowed to waive my right to take a meal break on days that I worked shifts lasting between five and six hours. After the Labor Commissioner came to the warehouse in the fall of 2011, Schneider made me sign a document saying that I was "voluntarily" giving up my right to a meal break for shifts lasting between five and six hours. I did not voluntarily waive my rights because my supervisor forced me to sign these forms. I did not understand what I was signing or the rights that I was giving up. Many times these forms were given to me at the end of my shift or even days after a shift.

8.      After we began working the 4-10 schedule, there many days when I would show up for work, only to be told by a supervisor that there was not enough

1  work that day. On these days, a Schneider supervisor would either tell me to go
2  home or ask me to "volunteer" to go home. On days when I would "volunteer" to go
3  home, I did not consider it to be voluntary at all. I felt like Schneider was forcing me
4  to go home. Schneider did not tell me that by agreeing to leave before performing
5  four hours of work that I was giving up my right to reporting time pay under
6  California law.

7      9. In May of 2012, I was terminated by Schneider. I made a formal request
8  to Schneider's management for time-off in order to fix my car. Upon my return to
9  work a few days after putting in my initial request, I was called in by Schneider
10 management and was fired. Schneider told me that my initial request for time-off
11 had been denied and I was being fired for job abandonment. During my eight years
12 working for Schneider, I had never been written up for productivity or behavior
13 issues.

14     10. In or about mid-2012, I began working with plaintiffs' attorneys. I
15 spent several hours being interviewed by them about my working conditions at
16 Schneider. I provided these attorneys with employment documents, including pay
17 stubs.

18     11. Between June 2012 and the filing of the First Amended Complaint
19 ("FAC") in October 2012, I met with my attorneys many times, both in person and
20 over the phone, to discuss the investigation of the case. I knew that becoming a lead
21 plaintiff in this lawsuit could jeopardize my future employment in the logistics field,
22 but I felt strongly about the claims in the lawsuit.

23     12. In October of 2012, Plaintiffs filed their First Amended Complaint. The
24 FAC named me as a plaintiff.

25     13. After the case was filed, I continued to assist the attorneys with their
26 investigation. I assisted the lawyers by attending class meetings, speaking with my
27 former co-workers about the lawsuit, and answering discovery requests made to me.
28 Since the lawsuit was filed, I have responded to 136 document requests and 25

special interrogatories. To answer Schneider's discovery requests, I met with my attorneys multiple times in person and over the phone to verify my responses. I also had to search my house for documents in response to Schneider's requests.

14. In June of 2013, I spent many hours working with my attorneys to prepare for my deposition. On June 7, 2013, an attorney for Schneider took my deposition for a full day. After the deposition transcript was sent to my attorneys, I worked with my attorneys to review the transcript.

15. Throughout the case, including during settlement negotiations, I remained in regular contact with my attorneys to assist them with this lawsuit. I also attended many class meetings. In total, I estimate that I attended at least seven class meeting with my attorneys to discuss case updates with interested class members.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 28 day of October, 2013, in San Bernardino, California.

_____
Walter Downing