THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
REBECCA PETERSON-FISHER (SBN 255359)
MARISA HERNANDEZ-STERN (SBN 282477)
Traber & Voorhees
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com
rpf@tvlegal.com
mhs@tvlegal.com

Attorneys for Plaintiffs Franklin Quezada, *et al.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| FRANKLIN QUEZADA, et al., | Case No. CV 12-2188 CAS (DTBx) |
| Plaintiffs, | |
| v. | **PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR ATTORNEYS' FEES, REASONABLE COSTS AND SERVICE AWARDS TO THE NAMED PLAINTIFFS** |
| SCHNEIDER LOGISTICS TRANSLOADING & DISTRIBUTION, INC., et al., | |
| Defendants. | Date:     May 12, 2014<br>Time:     10:00 a.m.<br>Judge:    Hon. Christina A. Snyder |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 12, 2014, at 10:00 a.m., or as soon thereafter as the matter may be heard by Judge Christina A. Snyder of the United States District Court of the Central District of California, 312 N. Spring Street,  Los Angeles, CA 90012, in Courtroom 5, plaintiffs Walter Downing, Elizabeth Gutierrez, Franklin Quezada, and Victor Ramirez (collectively, "named plaintiffs"), individually and on behalf of all others similarly situated, will and hereby do move for the following awards of attorneys' fees and costs to the law firm of Traber & Voorhees ("Class Counsel"), and service awards to the named plaintiffs to be paid out of the total common settlement fund:

1.  Attorneys' fees to Class Counsel of 33 1/3% of the $4.7 million settlement fund, equaling $1.56 million, and costs in the amount of $47,884.61.

2.  Service awards of $10,000 each to named plaintiffs Walter Downing, Elizabeth Gutierrez, Franklin Quezada, and Victor Ramirez.  The total amount sought is $40,000.

In compliance with C.D. Local Rule 7-3, the parties contemplated the filing of this motion in their Settlement Agreement.  Schneider agreed in the Settlement Agreement that it would not oppose this motion.  Declaration of Lauren Teukolsky in Support of Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs and Service Awards ("Teukolsky  Decl.") Decl. ¶2 & Exh. A ¶29.

This motion is based on: the accompanying Memorandum of Points and Authorities, the Teukolsky Declaration and exhibits, the Court file in this action, and such other matters as the Court may consider.

Dated: February 10, 2014                    Respectfully submitted,

TRABER & VOORHEES

By:    /s/ Marisa Hernández-Stern
       Marisa Hernández-Stern
       Attorneys for Plaintiffs

# **TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . 1

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    Background of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.    Discovery and Motion Practice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

C.    Mediation and Settlement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.   ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A.    Legal Standards Applicable to the Fee Request. . . . . . . . . . . . . . . . . . . . 5

B.    The Requested Fee Award Is Fair and Reasonable. . . . . . . . . . . . . . . . . . 7

       1.    Class Counsel Achieved Excellent Results . . . . . . . . . . . . . . . . . . . 7

       2.    Class Counsel Litigated the Case on a Contingency Basis and
             Faced Considerable Risk. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       3.    The Skill and Quality of the Work Performed by Class Counsel
             Merits an Award of 33 1/3% in Attorneys' Fees. . . . . . . . . . . . . . . . 9

       4.    An Award of 33 1/3% of the Common Fund to Compensate Class
             Counsel is Reasonable in Comparison to Awards in Similar Cases. . . 11

C.    The Lodestar Cross-Check Validates the Reasonableness of the Proposed
       $1.56 Million Fee Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

D.    The Costs That Class Counsel Seek for Reimbursement are Reasonable. . . . 13

E.    The Proposed $10,000 Service Award to Each of the Named Plaintiffs is
       Reasonable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Barbosa v. Cargill Meat Solutions Corp.,*
2013 U.S. Dist. LEXIS 93194 (E.D. Cal. July 2, 2013). . . . . . . . . . . . 10, 11, 13

*Birch v. Office Depot, Inc.,*
2007 U.S. Dist. LEXIS 102747 (S.D. Cal. Sept. 28, 2007). . . . . . . . . . . . . . 15

*Cicero v. DirecTV, Inc.,*
2010 U.S. Dist. LEXIS 86920 (C.D. Cal. July 27, 2010). . . . . . . . . . . . . . . . 6

*Cook v. Niedert,*
142 F.3d 1004 (7th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Craft v. County of San Bernardino,*
624 F. Supp. 2d 1113 (C.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Equity Funding Corp. Sec. Litigation,*
438 F. Supp. 1303 (C.D. Cal. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Espinoza v. Domino's Pizza, LLC,*
2012 U.S. Dist. LEXIS 160641 (C.D. Cal. Nov. 7, 2012). . . . . . . . . . . . . . . 15

*Florida v. Dunne,*
915 F.2d 542 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Franco v. Ruiz Food Products,*
2012 U.S. Dist. LEXIS 169057 (E.D. Cal. Nov. 27, 2012). . . . . . . . . . . 6, 7, 8

*Garcia v. Gordon Trucking, Inc.,*
2012 U.S. Dist. LEXIS 160052 (E.D. Cal. Oct. 29, 2012). . . . . . . . . . . . . . . 14

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Harris v. Marhoefer,*
24 F.3d 16 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hensley v. Eckerhart,*
461 U.S. 424 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Heritage Bond Litigation,*
2005 U.S. Dist. LEXIS 13555, *68 (C.D. Cal. June 10,2005). . . . . . . . . . . . 9

*In re Immune Response Securities Litigation,*
497 F. Supp. 2d 1166 (S.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Ingalls v. Hallmark Retail, Inc.,*
2009 U.S. Dist. LEXIS 131078 (C.D. Cal. Oct. 16, 2009). . . . . . . . . . . . . . . 15

*Mangold v. California Public Utilities Commission,*
   67 F.3d 1470 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Mego Finance Corp. Sec. Litigation,*
   213 F.3d 454 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Omnivision Technologies,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Rodriguez v. West Publishing Corp.,*
   563 F.3d 948 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Romero v. Producers Dairy Foods, Inc.,*
   2007 U.S. Dist. LEXIS 86270 (E.D. Cal. Nov. 14, 2007). . . . . . . . . . . . . . 11

*Singer v. Becton Dicksinson & Co.,*
   2010 U.S. Dist. LEXIS 53416 (S.D. Cal June 1, 2010). . . . . . . . . . . . . . . . 11

*Six Mexican Workers v. Arizona Citrus Growers,*
   904 F.2d 1301 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Staton v. Boeing,*
   327 F.3d 938 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sure Safe Industrial Inc. v. C & R Pier Manufacturing,*
   152 F.R.D. 625 (S.D. Cal. 1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. City of Twin Falls, Idaho,*
   806 F.2d 862 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Vasquez v. Coast Valley Roofing, Inc.,*
   266 F.R.D. 482 (E.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 11

**STATE CASES**

*Consumer Privacy Cases,*
   175 Cal. App. 4th 545 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**FEDERAL STATUTES**

Fed. R. Civ. P. 30(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I. INTRODUCTION**

3    On December 3, 2013, this Court granted Plaintiffs' Unopposed Motion for

4    Preliminary Approval of Class Action Settlement.  Doc. #93.  The Settlement

5    negotiated by the parties settles plaintiffs' wage-and-hour class action for $4.7

6    million and confers substantial benefits on the 568 member class.[1]  The Settlement

7    will provide a cash payment to all class members, in addition to improving working

8    conditions for the many class members still employed by Defendant Schneider

9    Logistics Transloading & Distribution, Inc. ("Schneider").  This result is particularly

10   extraordinary given that it was achieved before plaintiffs filed a motion for class

11   certification, thus mitigating the costs of further expensive and protracted litigation.

12   By this motion, the law firm of Traber & Voorhees ("Class Counsel")

13   respectfully seeks compensation for its past work, and future efforts, on behalf of the

14   class.  Per the Settlement Agreement, Class Counsel seeks an award of 33 1/3% of

15   the Settlement Fund, or $1.56 million, in attorneys' fees.  SA ¶29.  Class Counsel

16   also seeks an award of  $47,884.61 in costs that were reasonably incurred in

17   litigating this case.  Finally, plaintiffs seek service awards of $10,000 each for named

18   plaintiffs Walter Downing, Elizabeth Gutierrez, Franklin Quezada, and Victor

19   Ramirez, per the Settlement Agreement.  SA ¶28.  These service awards are

20   appropriate given the significant time and effort expended by the named plaintiffs,

21   and the invaluable assistance they provided to Class Counsel throughout this case.

22   As demonstrated below, the $1.56 million fee award requested by Class

23   Counsel is warranted by the excellent results achieved early in the case, is consistent

24   with other cases in this Circuit, and is reasonable in comparison to Class Counsel's

25   current lodestar of $1,523,005.  Teukolsky Decl. ¶64.

26

27   [1] The Settlement Agreement ("SA") is attached as Exhibit A to the Teukolsky
     Declaration, filed herewith.  Unless otherwise noted, all exhibits referenced in this
28   motion are attached to the Teukolsky Declaration.

## II.  STATEMENT OF FACTS

### A.    Background of the Case

On March 15, 2012, after more than a year of investigation, plaintiffs, represented by Traber & Voorhees, filed a complaint against Schneider alleging a number of wage-and-hour violations on behalf of hourly employees who work in Schneider's Eastvale warehouse facility.  Teukolsky Decl. ¶47.  On October 29, 2012, plaintiffs filed their First Amended Complaint ("FAC"), Doc. #29, the operating pleading.  The FAC alleges that Schneider held an invalid election for an alternative workweek schedule ("AWS") in June 2008 because it failed to comply with the strict rules that govern AWS elections, and that Schneider made fraudulent misrepresentations to induce employees to vote for the AWS.  Schneider also allegedly failed to implement the AWS schedule properly by failing to provide employees with a regular schedule.  The FAC further alleges that Schneider failed to maintain proper records, failed to provide lawful meal and rest breaks, unlawfully deducted (through an "auto-deduct" system) 30 minutes for meal breaks on shifts greater than 12 hours, and failed to pay proper reporting time pay.

### B.    Discovery and Motion Practice

After filing suit, Class Counsel aggressively pursued both formal discovery and informal fact investigation to increase the chances of succeeding on the merits of plaintiffs' claims.  Of the 3,641 total hours that Class Counsel dedicated to this case, 1,602 hours, or 43% of the total hours in the case, were dedicated to formal discovery.  Teukolsky Decl. ¶66 & Exh. B.  Plaintiffs served over 125 document requests on Schneider.  Schneider produced over 189,000 documents and electronic files, including time and payroll records for all class members, employee handbooks, all meal period waiver forms signed by class members, all signed overtime premium waiver forms, emails between Schneider personnel, and AWS-related documents.  Class Counsel spent hundreds of hours reviewing these documents and meeting and conferring with Schneider's counsel about their responses.  Teukolsky Decl. ¶48.

Class Counsel took the depositions of four corporate representatives of Schneider pursuant to Fed. R. Civ. P. 30(b)(6), including two of Schneider's Human Resources managers (Kozik and Gonzalez), its Vice-President and General Manager (Flaherty), and its Director of Operations (Pickens).  These depositions confirmed that several of Schneider's policies – such as inducing class members to waive overtime pay and meal periods – were unlawful.  Teukolsky Decl.  ¶51.

Schneider took the depositions of three of the four named plaintiffs.  Class Counsel spent many hours preparing the named plaintiffs for their depositions, including reviewing hundreds of documents.  Teukolsky Decl.  ¶52.  Almost concurrently, Schneider issued subpoenas for six putative class member depositions, which began mere days after the depositions of three of the named plaintiffs, and ended the day before the mediation.  Teukolsky Decl.  ¶53.  During these depositions, Class Counsel established that Schneider had made pervasive, unauthorized edits to class member time records without their knowledge.  *See* Doc. #89 at 21:17-19.

Class Counsel spent significant time responding to Schneider's written discovery.  Schneider propounded over 130 document requests to each of the named plaintiffs, and plaintiffs produced 765 documents to Schneider in response.  Teukolsky Decl.  ¶54.  Schneider also propounded 25 interrogatories to each of the named plaintiffs, and Class Counsel spent several hours meeting with the named plaintiffs to respond to these interrogatories.  Because three of the four named plaintiffs are primarily Spanish-speaking, these meetings had to be conducted in Spanish, and the English responses had to be translated in order for the named plaintiffs to verify the responses.  This process was extremely time-consuming.  Teukolsky Decl.  ¶55.

In addition to formal discovery, Class Counsel engaged in extensive informal fact investigation, primarily through interviewing class members, reviewing class member documents, and holding regular meetings with class members to develop the

facts and theories of the case.  Class Counsel interviewed more than 40 class members, the majority of whom are Spanish-speaking, and held more than a dozen class member meetings, all of which had to be translated into Spanish.  Teukolsky Decl.  ¶56.   In all, Class Counsel devoted approximately 589 hours to class member contact.  Teukolsky Decl.  ¶66 & Exh. B.   This class contact, which was integral to the success of the case, simply would not have been possible without the highly-skilled bilingual staff at Traber & Voorhees.  Teukolsky Decl.  ¶46.

Through the discovery efforts and class contact described above, Class Counsel learned that Schneider had obtained 106 declarations from class members approximately three weeks after this case was filed under circumstances that appeared to be deceptive and coercive.  Accordingly, in February 2013, plaintiffs filed a motion for relief under Rule 23 seeking to limit Schneider's communication with class members about this case and seeking other relief.  Doc. #37.  On March 25, 2013, the Court granted plaintiffs' motion and entered an order limiting Schneider's communication with class members regarding the litigation, authorizing the distribution of a curative notice to the class, and providing that the Court would disregard the disputed declarations.  Doc. #61.  This game-changing motion practice increased the visibility of the lawsuit among putative class members, and assured class members that Schneider would not retaliate against them if they participated in the lawsuit.  A number of class members contacted Class Counsel after receiving the curative notice, and began participating in the lawsuit.  Teukolsky Decl. ¶57.

## C.   Mediation and Settlement

The mediation on June 25, 2013 took place over the course of a full day. Despite the parties' inability to reach a comprehensive settlement the day of the in-person mediation, substantial progress was made.  During the ensuing weeks after the mediation, Class Counsel was in communication with mediator Steve Pearl to continue negotiations.  After weeks of telephonic conferences and written exchanges, the parties were able to reach a settlement of $4.7 million, as well as

extensive non-monetary relief for the class.  Class Counsel then spent significant
time drafting the Settlement Agreement, preparing the class notice and claims form,
and taking other steps to ensure court approval of the Settlement.  *See* Doc. #89 at 3-
4.  In all, Class Counsel spent approximately 144 hours on mediation-related
activities, and an additional 298 hours on tasks related to drafting and implementing
the Settlement Agreement.  Teukolsky Decl. ¶66 & Exh. B.

On December 3, 2013, the Court granted plaintiffs' unopposed motion for
preliminary approval of the Settlement.  Doc. #93.  Since then, Class Counsel has
worked with the Claims Administrator to effectuate the terms of the Settlement
Agreement, and has responded to numerous phone calls from class members
regarding the settlement.  Teukolsky Decl. ¶59.

The culmination of all these efforts has led to a settlement which will confer
ample monetary and non-monetary benefits to the class.  Class members who
participate in the settlement will receive not only financial remuneration, but those
class members who continue to work in the warehouses are experiencing a more just
and lawful work environment.

## III.  ARGUMENT

### A.  Legal Standards Applicable to the Fee Request

The common fund doctrine allows Class Counsel to seek an award of
reasonable attorneys' fees to be paid from the common fund created by a class action
settlement.  *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311
(9th Cir. 1990).[2]  Using its discretion, a district court may use either a percentage-of-

---

[2]Because this case arises under California law and the Court is exercising its
diversity jurisdiction to hear plaintiffs' claims, the Court applies California law to
calculate attorneys' fees.  See *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d
1470, 1478 (9th Cir. 1995).  Under California law, courts may use the lodestar or
percentage-of-the-fund method to calculate reasonable attorneys' fees.  *Consumer
Privacy Cases*, 175 Cal. App. 4th 545, 557-558 (2009).  Here, because the lodestar
and percentage-of-the-fund approaches yield almost the same fee award, the Court
may use either approach to determine whether the requested fee award is reasonable.
For purposes of this motion, plaintiffs use the percentage-of-the-fund analysis with a
(continued...)

1  the-fund or lodestar approach to determine whether the proposed fee award is

2  reasonable.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

3        Where a court uses the percentage-of-the-fund analysis, it may also apply a

4  lodestar crosscheck, which "measures the lawyers' investment of time in the

5  litigation, [and] provides a check on the reasonableness of the percentage award."

6  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).   "The ultimate

7  goal under either method of determining fees is to reasonably compensate counsel

8  for their efforts in creating the common fund."  *In re Omnivision Techs.*, 559 F.

9  Supp. 2d 1036, 1046 (N.D. Cal. 2007); *Florida v. Dunne*, 915 F.2d 542, 545 (9th

10 Cir. 1990) (holding that the ultimate inquiry is whether fees are "reasonable under

11 the circumstances").

12       In the Ninth Circuit, the "benchmark" for a common fund fee award is 25% of

13 the settlement fund.  *Vizcaino*, 290 F.3d at 1047.  However, in California, "[district]

14 courts usually award attorneys' fees in the 30-40% range in wage-and-hour class

15 actions that result in recovery of a common fun[d] under $10 million."  *Cicero v.*

16 *DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920, *17 (C.D. Cal. July 27, 2010) (citing

17 three cases awarding fees in this range after surveying other California fee awards in

18 wage-and-hour class actions); *see also Vasquez v. Coast Valley Roofing, Inc.*, 266

19 F.R.D. 482, 492 (E.D. Cal. 2010) (citing five wage-and-hour class actions in which

20 courts awarded fees ranging from 30 to 33%); *Craft v. County of San Bernardino*,

21 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (holding that attorneys' fees for cases

22 settling below $10 million often exceed the 25% benchmark); *Franco v. Ruiz Food*

23 *Prods.*, 2012 U.S. Dist. LEXIS 169057, *44 (E.D. Cal. Nov. 27, 2012) ("[I]n most

24 common fund cases, the award exceeds the benchmark percentage.") (citation and

25 internal quotation marks omitted).

26

27 ───────────────

28    [2](...continued)
   lodestar crosscheck.

In assessing whether the percentage requested is fair and reasonable, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden by the plaintiff; and (6) the awards made in similar cases. *Franco*, 2012 U.S. Dist. LEXIS 169057, at *44 (citing *Vizcaino*, 290 F.3d at 1047).   As shown below, all six factors are met and support the requested fee award.

**B.    The Requested Fee Award Is Fair and Reasonable**

Application of the six *Vizcaino* factors justifies the requested fee award of 33 1/3% of the common fund.

**1.    Class Counsel Achieved Excellent Results**

First, Class Counsel achieved an extraordinary result in this case.  "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Ominivision Techs*, 559 F. Supp. 2d at 1046.  As set forth in the Motion for Preliminary Approval, the projected damages in this case were approximately $5 million.  Class Counsel persuaded Schneider to pay close to full value of the projected damages (not including interest or penalties) prior to a motion for class certification. *See* Teukolsky Declaration in Support of Motion for Preliminary Approval (Doc. #90) ¶¶57, 64, 72-73.  This award will result in the payment of thousands of dollars in cash awards to class members to compensate them for stolen wages.  Given that class members earn on average between $15-16 per hour, *id*. ¶77, this is a significant financial benefit.  Class Counsel's ability to achieve this result early in the case demonstrates that the legal strategy pursued in this case was appropriate and beneficial to the class.

Class Counsel's vigorous pursuit of plaintiffs' claims also yielded substantial non-monetary relief for class members.  Even before the mediation, Schneider changed its meal and rest break policies to comply with California law, and discontinued its unlawful use of overtime pay waivers.  Teukolsky Decl. ¶60.  Under

the Settlement Agreement, employees will no longer be subject to arbitrary reductions in hours when work is not available for all workers on a particular shift. Instead, work will be offered based on objective, pre-determined criteria on a rotating basis. SA ¶31(e). In response to plaintiffs' claims that Schneider made unauthorized edits to employee time records, Schneider agreed to a number of changes to ensure that all edits are lawful and authorized, and also agreed to monitoring by Class Counsel. SA ¶31(c). Schneider further agreed to change its practices so that class members no longer unknowingly waive their right to reporting time pay under California. SA  ¶31(g). These changes are just a sample of the beneficial changes in policies and practices that Class Counsel secured for class members. These changes benefit class members in creating a more equitable work environment and ensure that Schneider complies with applicable wage-and-hour laws going forward.

In sum, both the substantial monetary and non-monetary relief that Class Counsel negotiated on plaintiffs' behalf supports the fee award requested here.

## 2. Class Counsel Litigated the Case on a Contingency Basis and Faced Considerable Risk

The second and fifth *Vizcaino* factors, the risk of litigation and the contingent nature of the fee, also favors the requested fee award. Although Class Counsel believed that plaintiffs' claims were strong, there was some risk that the Court would not certify all of the claims, or that plaintiffs would lose at summary judgment or trial. Indeed, as set forth in plaintiffs' Motion for Preliminary Approval, Schneider vigorously contested both liability and the propriety of class certification. *See* Doc. #89 at 8-10 (setting forth Schneider's defenses to plaintiffs' claims).

In addition, Class Counsel litigated the case on a contingency fee basis, Teukolsky Decl. ¶61, which "necessarily presented considerable risk." *Franco*, 2012 U.S. Dist. LEXIS 169057, at *47 (citation omitted). As of the filing of this motion, Class Counsel has spent a total of 3,641 hours performing work to advance

plaintiffs' claims.  Teukolsky Decl. ¶64.  This includes hundreds of hours of analyzing documents, communicating with class members, engaging in motion practice, and researching plaintiffs' claims.  Teukolsky Decl ¶66 & Exh. B.  Class Counsel performed this work without any guarantee of payment.  Moreover, Class Counsel risked losing the roughly $48,000 in costs incurred to date, a number which likely would have doubled by the time of trial.

"Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award." *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, *68 (C.D. Cal. June 10,2005).  Here, Class Counsel's pursuit of plaintiffs' case on a contingency fee basis, with the accompanying risk of foregoing any compensation in the event of a judgment in favor of Schneider, supports an award of 33 1/3% of the common fund in attorneys' fees.

### 3.    The Skill and Quality of the Work Performed by Class Counsel Merits an Award of 33 1/3% in Attorneys' Fees

The third and fourth *Vizcaino* factors examine the experience and ability of class counsel, and the quality of class counsel's work.  Here, Class Counsel has extensive experience in wage-and-hour class actions, as well as other types of complex civil litigation.  Teukolsky Decl. ¶¶3-46 (setting forth the experience of Class Counsel).  The partners at Traber & Voorhees have a combined 70 years of litigation experience between them, and have consistently been recognized in the Los Angeles legal community for their outstanding work and their dedication to work in the public interest.  *Id*.  Furthermore, the associates, paralegals and law clerks at Traber & Voorhees are bilingual, an indispensable skill given the high number of Spanish-speaking class members in this case.  Teukolsky Decl. ¶46.  Defense counsel in this case were also highly skilled, and Schneider is a multibillion dollar company that presumably used extensive resources to defend itself against the claims in this case.  *Cf. In re Equity Funding Corp. Sec. Litigation*, 438 F. Supp. 1303, 1337

(C.D. Cal. 1977) ("[P]laintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly.").

Class Counsel performed high quality work in this case, aggressively but efficiently pursuing the litigation.  For example, this case settled after Class Counsel took just four depositions of Schneider's corporate representatives, which established many of the legal violations at issue in the case. Teukolsky Decl. ¶51; *In re Equity Funding Corp. Sec. Litigation*, 438 F. Supp. at 1337 (holding that courts should "reward[] the use of efficient methods to expedite the case").  Class Counsel persuaded Schneider to produce classwide time and pay records early in the case, and avoided the usual delay and expense associated with this process.  Teukolsky Decl. ¶50.  Because Class Counsel maintained effective contact with class members, Class Counsel was able to bring a successful motion to exclude Schneider's "happy camper" declarations long before the motion for class certification was due. Teukolsky Decl. ¶57.  Indeed, this was the single motion litigated before the case settled, demonstrating the efficiency and skill of Class Counsel.

Moreover, Class Counsel effectively pursued discovery and investigation of the facts in the case.  Class Counsel engaged in aggressive discovery efforts, which yielded hundreds of emails and other electronically stored information damaging to Schneider that a less-skilled plaintiffs' counsel likely would not have obtained. Teukolsky Decl. ¶49.  To prepare for the mediation, Class Counsel retained an expert who culled through thousands of class member time and pay records to construct an accurate calculation of the damages suffered by the class.  Teukolsky Decl. ¶58. This preparation was crucial to the excellent settlement results achieved, and further demonstrates that the requested fees are appropriate. *Cf. Barbosa v. Cargill Meat Solutions Corp.*, 2013 U.S. Dist. LEXIS 93194, *50 (E.D. Cal. July 2, 2013) (recognizing counsel's active pursuit of the litigation and the extensive discovery conducted in awarding 33% in fees).

1
2

**4.** **An Award of 33 1/3% of the Common Fund to Compensate Class Counsel is Reasonable in Comparison to Awards in Similar Cases**

3   The sixth and final *Vizcaino* factor – comparable awards in similar cases – also
4   supports Class Counsel's request for 33 1/3% of the common fund.  Numerous other
5   district courts have awarded class counsel 33 1/3% of the common fund in wage-
6   and-hour class actions similar to this one.  *E.g.*, *Barbosa*, 2013 U.S. Dist. LEXIS
7   93194 at *48 (awarding 1/3 of the settlement fund to class counsel 1.5 years after
8   case was filed and before class certification where the majority of class members
9   were Spanish-speaking); *Singer v. Becton Dicksinson & Co.*, 2010 U.S. Dist. LEXIS
10  53416 (S.D. Cal June 1, 2010) (awarding 1/3 of the settlement fund in
11  wage-and-hour class action where plaintiffs' counsel took on the case on a
12  contingency basis and settlement negotiations were hard fought); *Romero v.*
13  *Producers Dairy Foods*, Inc., 2007 U.S. Dist. LEXIS 86270 (E.D. Cal. Nov. 14,
14  2007) (awarding 1/3 of the settlement fund where plaintiffs' counsel's small firm
15  devoted extensive resources to litigating the wage-and-hour class action).  For all of
16  these reasons, Class Counsel respectfully requests that the Court award the requested
17  33 1/3% of the common fund.

18  **C.   The Lodestar Cross-Check Validates the Reasonableness of the Proposed**
19         **$1.56 Million Fee Award**

20  A court may use the lodestar method to crosscheck the reasonableness of a
21  percentage-of-the-fund fee award.  *Vizcaino*, 290 F.3d at 1050.  The lodestar is
22  calculated using "the number of hours reasonably expended on the litigation
23  multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433
24  (1983).  Moreover, a court may presume that the lodestar "provides an accurate
25  measure of reasonable attorney's fees."  *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th
26  Cir. 1994).

27  Class Counsel  in this case has kept extensive and contemporaneous time
28  records.  Teukolsky Decl. ¶¶61-62.  These records show that Class Counsel has spent

a total of 3,641 hours litigating this case.  Multiplying these hours by Class

Counsel's 2013 rates yields a lodestar of $1,523,005, Teukolsky Decl. ¶64, which is

extremely close to the requested fees of $1.56 million.  A breakdown of the total

hours by biller is as follows:

| Biller | Hours | 2013 Rate | Total |
|---|---|---|---|
| Barbosa | 198 | $225 | $44,550 |
| Hernandez-Stern | 1099 | $350 | $384,650 |
| Hidalgo | 119 | $225 | $26,775 |
| Hushagen | 48 | $225 | $10,800 |
| Owens | 93 | $210 | $19,530 |
| Peterson-Fisher | 431 | $460 | $198,260 |
| Sealey | 133 | $210 | $27,930 |
| Slaughter | 63 | $210 | $13,230 |
| Teukolsky | 951 | $600 | $570,600 |
| Traber | 141 | $795 | $112,095 |
| Valenzuela | 216 | $210 | $45,360 |
| Voorhees | 70 | $735 | $51,450 |
| Weinstein | 79 | $225 | $17,775 |
| Total | 3,641 | | $1,523,005 |

Teukolsky Decl. ¶64.

Significantly, the $1.52 million lodestar amount does *not* include Class

Counsel's ongoing work in the case, including the preparation of the instant motion,

drafting the Motion for Final Approval of Settlement, responding to any objections

or future appeals, overseeing the distribution of settlement funds, monitoring

Schneider's compliance with the non-monetary terms of the Settlement, and

responding to future phone calls from class members.[3]  Class Counsel anticipates

that, by the time this case is finally resolved, the lodestar will in fact exceed the

---

[3]For various administrative reasons, a significant amount of pre-filing
investigation time is also not included in the lodestar.  If necessary, Class Counsel
could calculate and provide this time to the Court.  Teukolsky Decl. ¶65.

1   requested fee amount of $1.56 million.  In short, the reasonableness of the fee award

2   requested by Class Counsel is supported by a lodestar crosscheck, and Class Counsel

3   respectfully requests that the Court award all of the requested fees.

4   **D.     The Costs That Class Counsel Seek for Reimbursement are Reasonable**

5          Class Counsel incurred reasonable costs in litigating this case that were

6   necessary to successfully advance plaintiffs' claims.  Attorneys who succeed in

7   creating a common fund may seek reimbursement of reasonable and necessary costs

8   from the fund.  *See In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177

9   (S.D. Cal. 2007).  Here, Class Counsel seeks reimbursement of $47,884.61 in costs,

10  which is reasonable given the nature and extent of this class action litigation.

11  Teukolsky Decl. ¶74.

12         The costs for which Class Counsel seeks reimbursement include expenses for

13  photocopies, legal research, postage, court filing fees, mediation fees, deposition

14  transcripts, retaining an expert to calculate damages for purposes of the mediation,

15  and travel related to the litigation. *Id*.  The most significant costs are as follows:

| Nature of Cost | Amount |
| --- | --- |
| Expert fees to prepare for mediation | $14,712 |
| Deposition transcripts | $12,888.81 |
| Mediation fees | $8,157 |
| Copies (e.g., for discovery and motions) | $4,616 |
| Travel (e.g., mileage reimbursement for trips to attend depositions and meetings with class members) | $1,949.87 |

*Id*.

         Each of these categories represents an integral component in Class Counsel's

successful litigation strategy.  Many courts have found that reimbursement for such

costs is reasonable and permitted. *See Barbosa*,  2013 U.S. Dist. LEXIS 93194, at

*64 (finding that costs associated with "travel, mediation fees, photocopying, private

investigator to locate missing Class Members, and delivery and mail charges" were

1    routine costs that should be reimbursed); *Garcia v. Gordon Trucking, Inc.*, 2012 U.S.

2    Dist. LEXIS 160052, *30-31 (E.D. Cal. Oct. 29, 2012) (same); *United States v. City*

3    *of Twin Falls, Idaho*, 806 F.2d 862, 864 (9th Cir. 1986) (awarding costs sought for

4    the retention of expert testimony that is "crucial or indispensable" to the litigation at

5    hand); *Sure Safe Indus. Inc. v. C & R Pier Mfg.*, 152 F.R.D. 625, 626 (S.D. Cal.

6    1993) (costs for computerized legal research are reasonable); *In re Immune Response*

7    *Secs. Litig.*, 497 F. Supp. 2d at 1178 (awarding costs paid for the retention of a

8    mediator).

9           Therefore, Class Counsel  respectfully submits that the reimbursement of

10   $47,884.61 in costs is reasonable and should be granted.

11   **E.    The Proposed $10,000 Service Award to Each of the Named Plaintiffs is**

12   **Reasonable**

13          It is within a district court's discretion to grant service awards to named

14   plaintiffs in class action litigation.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

15   454, 463 (9th Cir. 2000).  Incentive awards "are intended to compensate class

16   representatives for work done on behalf of the class, to make up for financial or

17   reputational risk undertaken in bringing the action, and, sometimes, to recognize

18   their willingness to pact as a private attorney general." *Rodriguez v. West Publishing*

19   *Corp.*, 563 F.3d 948, 959 (9th Cir. 2009).

20          In assessing the propriety of a service award, a court may consider "the actions

21   the plaintiff has taken to protect the interests of the class, the degree to which the

22   class has benefited from those actions, . . . the amount of time and effort the plaintiff

23   expended in pursuing the litigation and reasonabl[e] fear [of] workplace retaliation."

24   *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003)  (quoting *Cook v. Niedert*, 142

25   F.3d 1004, 1016 (7th Cir. 1998)).

26          Plaintiffs request service awards not to exceed $10,000 each to named

27   plaintiffs Downing, Gutierrez, Quezada, and Ramirez for their substantial

28   contributions in securing an excellent outcome, both monetary and non-monetary,

1   for the class.  Courts have found that service awards of $10,000 are reasonable.  *See*

2   *Espinoza v. Domino's Pizza*, LLC, 2012 U.S. Dist. LEXIS 160641, *10 (C.D. Cal.

3   Nov. 7, 2012) ($10,000 service awards were reasonable); *Ingalls v. Hallmark Retail*,

4   Inc., 2009 U.S. Dist. LEXIS 131078, *6 (C.D. Cal. Oct. 16, 2009) (same); *Birch v.*

5   *Office Depot, Inc.*, 2007 U.S. Dist. LEXIS 102747, 7 (S.D. Cal. Sept. 28, 2007)

6   (granting service awards of $15,000 and $10,000 to named plaintiffs).  The facts here

7   support the requested service awards.

8           First, plaintiffs Gutierrez, Quezada, and Ramirez were employed by Schneider

9   throughout the litigation of this case and had a reasonable fear of workplace

10  retaliation as a result of their involvement.  Each of these plaintiffs has suffered

11  significant anxiety and stress as a result of serving as a named plaintiff while

12  employed by Schneider, and each has been ostracized by co-workers who fear being

13  associated with this litigation.  Quezada Decl. (Doc. #89-4) ¶14; Gutierrez Decl.

14  (Doc. #89-2) ¶13; Ramirez Decl. (Doc. #89-3) ¶14.  Despite the risk of possible

15  retaliation in the workplace, plaintiffs remained supportive and invested in the

16  litigation.

17          Second, all four plaintiffs contributed substantial time and effort in responding

18  to Schneider's extensive discovery.  Plaintiffs answered Defendant's Special

19  Interrogatories, searched for responsive documents, and plaintiffs Downing,

20  Quezada, and Ramirez were deposed by Schneider.  Ramirez Decl. ¶¶15-16;

21  Quezada Decl. ¶¶15-16; Gutierrez Decl. ¶14; Downing Decl. ¶¶13-14.  Each of these

22  tasks required copious preparation and consultation with Class Counsel to complete.

23          Further, the named plaintiffs have been integral to the investigation of the

24  claims in this case.  Since the inception of Class Counsel's investigation, plaintiffs

25  have been instrumental in encouraging other class members to get in touch with

26  Class Counsel.  Gutierrez Decl. ¶ 10; Quezada Decl. ¶15; Ramirez Decl. ¶¶12, 15;

27  Downing Decl. ¶13.  The named plaintiffs have remained in regular contact with

28  Class Counsel, providing updates on current working conditions and encouraging

current and former employees of the company to contact Class Counsel regarding this lawsuit.

Collectively, plaintiffs bring over 26 years of experience working for Schneider.  Gutierrez Decl. ¶2; Quezada Decl. ¶2; Ramirez Decl. ¶2; Downing Decl. ¶2.  Their knowledge of working conditions, company policies and practices, and relationships with co-workers were essential in advancing and protecting the class claims.  An award of  $10,000 to each named plaintiff thus constitutes just compensation for the considerable risks that the named plaintiffs have undertaken in this litigation, especially with regard to the threat of workplace retaliation, time spent responding to Schneider's discovery requests and preparing for deposition, and in aiding in the investigation and litigation of class claims.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court award Class Counsel $1.56 million in attorneys' fees, $47,884.61 in costs, and $10,000 service awards to each of the named plaintiffs.

Dated: February 10, 2014                    Respectfully submitted,

                                            TRABER & VOORHEES


                                   By:    /s/ Marisa Hernández-Stern
                                          Marisa Hernández-Stern
                                          Attorneys for Plaintiffs