THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
REBECCA PETERSON-FISHER (SBN 255359)
MARISA HERNANDEZ-STERN (SBN 282477)
Traber & Voorhees
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com
rpf@tvlegal.com
mhs@tvlegal.com

Attorneys for Plaintiffs Franklin Quezada, *et al.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| FRANKLIN QUEZADA, et al., | Case No. CV 12-2188 CAS (DTBx) |
| Plaintiffs, | |
| v. | **DECLARATION OF LAUREN TEUKOLSKY IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, REASONABLE COSTS AND SERVICE AWARDS TO THE NAMED PLAINTIFFS** |
| SCHNEIDER LOGISTICS TRANSLOADING & DISTRIBUTION, INC., et al., | |
| Defendants. | Date:      May 12, 2014 |
| | Time:      10:00 a.m. |
| | Judge:     Hon. Christina A. Snyder |

Teukolsky Declaration;
Case No. CV 12-2188 CAS (DTBx)

## DECLARATION OF LAUREN TEUKOLSKY

I, Lauren Teukolsky, hereby declare as follows:

1.      I am a partner in the law firm of Traber & Voorhees, an attorney duly licensed to practice law in the State of California and before this federal court, and counsel of record for plaintiffs in the above-captioned class action lawsuit.  I am providing this declaration in support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Reasonable Costs and Service Awards to the Named Plaintiffs.  The facts stated here are based on my personal knowledge or my review of the file in this case. If called as a witness, I could and would competently testify to the following matters.

2.      A true and correct copy of the Settlement Agreement in this case is attached hereto as Exhibit A.  Pursuant to Paragraph 29, plaintiffs are to file a motion for attorneys' fees and costs in advance of the final approval hearing, and Schneider will not oppose plaintiffs' request.

**Our Firm's Background and Experience**

3.      Traber & Voorhees has extensive experience litigating class action lawsuits, including several wage-and-hour class action lawsuits.  In this section of my declaration, I set forth my qualifications, along with the qualifications of others at my firm who worked on this case, including my law partners, Theresa Traber and Bert Voorhees, and two associates at our firm, Rebecca Peterson-Fisher and Marisa Hernandez-Stern.

4.      I received a Bachelor of the Arts degree with honors from Harvard College in 1997.  I received a Juris Doctor degree from UCLA School of Law in 2000, and graduated Order of the Coif.  At UCLA School of Law, I was an Articles Editor of the UCLA Law Review, took first place in the UCLA Moot Court Competition, and was in the inaugural class of the Program in Public Interest Law and Policy.

5.      From 2000-2001, I served as a law clerk to the Honorable Harry Pregerson on the Ninth Circuit Court of Appeals. From 2001-2002, I served as a law

1  clerk to the Honorable A. Howard Matz on the U.S. District Court in the Central

2  District of California.

3      6.    I joined Traber & Voorhees as a partner in September 2011.  Before

4  then, from June 2010 to September 2011, I was the Pro Bono Director at Bet Tzedek

5  Legal Services.  While at Bet Tzedek, I oversaw a nationwide pro bono project to

6  assist Holocaust survivors obtain pension benefits from the German government.

7  From October 2002 to June 2010, I was an associate at the public interest firm

8  Hadsell & Stormer (now known as Hadsell Stormer Richardson & Renick LLP).

9      7.    From 2012 to the present, I have been designated by Los Angeles

10 Magazine as a "Super Lawyer" by *Los Angeles Magazine* and *Law & Politics*

11 *Magazine* as a "Super Lawyer."  For every year from 2004 to 2010, I was named a

12 "Southern California Rising Star" in the Southern California Super Lawyers Rising

13 Star Edition.  I was profiled in the *Daily Journal* article, "Lawyer Finds Calling at

14 Bet Tzedek," dated July 16, 2010.

15     8.    In 2006, I taught a seminar on public interest law as an Adjunct

16 Professor at UCLA School of Law.  Since 2002, I have given dozens of presentations

17 to law students and lawyers on various aspects of public interest litigation.

18     9.    During my approximately 13 years of practice, I have worked on a wide

19 range of civil litigation, including several complex class actions.  Currently, along

20 with co-counsel, Ms. Traber and I represent the plaintiffs in *Carrillo v. Schneider*

21 *Logistics Transloading and Distribution, Inc.*, *et al.*, Case No. CV 11-8557 (CAS)

22 (DTBx), a class and collective action alleging a variety of wage-and-hour claims on

23 behalf of a different group of workers who worked in the same warehouses at issue

24 in *Quezada*.  In *Carrillo*, the Court granted the plaintiffs a TRO and two preliminary

25 injunctions to address unlawful practices in the warehouses.

26     10.   Along with co-counsel, Mr. Voorhees and I are class counsel

27 representing the plaintiff class in *Murphy v. CVS*, No. BC 464785 (L.A. Sup. Ct.), a

28 class action on behalf of 40,000 CVS employees in California challenging unlawful

wage-and-hour practices.  The court recently certified our class and we are preparing for trial.

11.     Along with co-counsel, Mr. Voorhees, Ms. Peterson-Fisher and I are currently class counsel in *Hernandez, et al., v. Goliath Inc., et al.*, No. BC 462953 (L.A. Sup. Ct.), a class action that alleges that dancers at a so-called taxi-dancing club were subjected to systematic abuse that included sexual harassment, wage theft, failure to pay for all hours worked, failure to pay overtime, and substandard working conditions.  The case settled in excess of $1.1 million, and the Court recently approved the motion for preliminary approval.

12.     Mr. Voorhees and I are also counsel on *KL v. City of Glendale,* No. CV 11-8484 (C.D. Cal.), a case on behalf of high school students in Glendale challenging unconstitutional search and seizure practices by the Glendale police that recently settled.  Ms. Traber, Ms. Peterson-Fisher, Ms. Hernandez-Stern and I are currently counsel on *FTR International, Inc. v. Board of Trustees of the Los Angeles Community College District*, No. BSS136137 (L.A. Sup. Ct.), a case challenging the unconstitutional debarment of a construction contractor.  Ms. Peterson-Fisher and I are also counsel on *Garcia v. New Albertsons, Inc.*, No. CV 13-5941 CAS (JCGx) (C.D. Cal.), a case on behalf of a grocery store worker who lost her baby after her employer failed to grant her multiple requests for a pregnancy accommodation.

13.     From approximately 2002 to 2010, Ms. Traber, Mr. Voorhees and I worked on *Bowoto v. Chevron Corporation, et al.*, No. C 99-02506 SI (N.D. Cal.), an extremely complex international human rights case in which we, along with co-counsel, represented approximately 20 Nigerian citizens who charged Chevron with violating international humans rights law and engaging in RICO violations in killing, injuring and torturing Nigerian citizens in conjunction with Chevron oil operations in the Niger Delta.  I also worked on *Doe v. Unocal*, No. CV 96-6959 RSWL (BQRx) (C.D. Cal.), another high-profile international human rights case against a multinational oil company on behalf of Burmese villagers.

14.     While at Hadsell & Stormer, along with co-counsel, I was the lawyer principally responsible for prosecuting the plaintiffs' claims in *Bautista v. Nijjar Realty*, No. BC384602 (L.A. Sup. Ct.), which challenged unlawful labor practices in a class action on behalf of maintenance workers against a management company, resulting in a $1.8 million settlement.  I have worked on a range of other successful class action lawsuits, including those challenging unconstitutional jail conditions (*Pierce v. County of Orange*, No. CV-00981-ABC -MLG), unlawful consumer practices (*Cundiff v. Verizon*, No. B199511), and unlawful wage-and-hour practices.

15.     I have also represented a number of individual and multiple plaintiffs in a variety of cases involving civil rights violations, slum housing conditions and unlawful employment practices.  In 2007, I successfully argued an appeal in which the Ninth Circuit reversed the district court's grant of summary judgment in an employment discrimination case, resulting in a published opinion, *Metoyer v. Chassman*, 504 F.3d 919 (9th Cir. 2007).  I also worked on *Pineda v. Wallman*, No. BC 245 543 (Los Angeles Sup. Ct.), a slum housing case on behalf of over 100 plaintiffs involving the 2001 building collapse in Echo Park that killed one tenant and injured dozens of others.  Most of my cases have resulted in six- and seven-figure recoveries.

16.     I am familiar with the qualifications and experience of Theresa Traber and Bert Voorhees, who have also worked on this case.  Ms. Traber received her Bachelor of Arts degree in English and History with Highest Honors from the University of Michigan in 1980 and a Juris Doctor degree from Northeastern University in 1984.

17.     During Ms. Traber's approximately 29 years of practice, she has served as an attorney in many complex class actions.  She has represented plaintiff classes in class actions on numerous occasions, and has served as the lead attorney representing a plaintiff class in well over a dozen cases, as described below.  Ms. Traber has worked on a wide variety of public interest cases, including cases

involving wage-and-hour violations, constitutional violations such as police abuse, employment discrimination, housing discrimination, slum housing conditions and international human rights violations.

18.    In 2012 and 2013, the *Daily Journal* named Ms. Traber one of the 75 top Labor and Employment Lawyers in California.  She has been designated as a "Super Lawyer" by *Los Angeles Magazine* and *Law & Politics Magazine* every year from 2004 through the present, and was named by the *Daily Journal* as one of the top 50 female lawyers in Southern California in 2004.

19.    Since August 2012, Ms. Traber has served as a Lawyer Representative to the Ninth Circuit Judicial Conference, and was an Alternative Lawyer Representative from August 2011 to August 2012.  Since 2012, Ms. Traber has served on the Merit Selection Panel for Magistrate Judges for the Central District of California.  Since 2011, Ms. Traber has served as an Attorney Volunteer Mediator for the Employment CRASH Program of the Los Angeles Superior Court.

20.    Mr. Voorhees graduated Order of the Coif from UCLA Law School in 1988.

21.    Public recognition of Mr. Voorhees' skill includes being listed as one of Southern California's Super Lawyers by *Los Angeles Magazine* and *Law & Politics Magazine* every year from 2010 through the present.  In addition, he has twice been honored for his legal work by the Pasadena Chapter of the NAACP, including for representing the local chapter of the NAACP in opposing various provisions of a Pasadena gang injunction.  In 2007, Mr. Voorhees was honored by the Koreatown Immigrant Workers Alliance for successfully prosecuting and settling a large wage-and-hour and discrimination class action on behalf of virtually all of the Latino and Korean American workers employed by the largest supermarket in Koreatown.

22.    Mr. Voorhees and Ms. Traber founded Traber & Voorhees in 1991 out of the dissolution of Litt & Stormer, the largest, private public-interest law firm in Southern California from 1984 until its dissolution in 1991.  Ms. Traber worked with

Litt & Stormer, first as an associate and then as a partner, from 1984 to 1991.  Mr. Voorhees worked at Litt & Stormer from 1989 until 1991.  Both Mr. Voorhees and Ms. Traber have significant experience in wage-and-hour class actions and other complex civil litigation.

23.     Ms. Traber is currently one of the lead class counsel, along with Michael Rubin at Altshuler Berzon LLP, in *Carrillo v. Schneider Logistics Transloading and Distribution, Inc.*, *et al.*, No. CV 11-8557 CAS (DTBx) (C.D. Cal.), the related warehouse class and collective action on which I also work.

24.     Ms. Traber served as one of the lead class counsel in *Veliz, et al, v. Cintas Corporation, et al.*, No. C 03-01180, a class and collective action brought by delivery drivers throughout the country alleging in arbitration and in  federal court in the Northern District of California that they were denied overtime premiums and mandatory meal and rest breaks under the federal Fair Labor Standards Act and numerous state labor laws.  On June 6, 2011, the federal District Court and Arbitrator both approved a class-wide settlement of $22.75 million for thousands of workers throughout the country.

25.     Ms. Traber was appointed by the federal district court as lead class counsel, along with Robert D. Newman, in *Burdick v. Union Security Insurance Company*, U.S.D.C., C.D. Cal., No. CV 07-4028 ABC (JCx), a case seeking declaratory, injunctive and restitutionary relief on behalf of a class of current and future insureds under a long-term disability policy with inconspicuous and vague provisions which drastically reduced any benefits to be paid through a Social Security disability offset provision buried in the policy.  After substantial briefing, the district court entered judgment in September, 2010, based on orders, *inter alia,* barring the enforcement of the offset provision as against a class of current and future insureds and granting full back benefits, with interest, for the named plaintiff and class representative.  The case is not yet resolved, but is likely to settle in the near future.

26.    In May 2013, Ms. Traber was appointed class counsel in *Ochoa v. Paleteria La Michoacana, Inc., et al.*, No. BC 455260 (L.A. Sup. Ct.), a wage-and-hour class action on behalf of drivers and merchandisers who delivered ice cream bars and other frozen food products to stores.  The case settled for $1 million, pending approval by the court.

27.    Ms. Traber was lead counsel in *Vaca v. Cintas Corporation*, Case No. BC 250459 (Los Angeles Superior Court), a class action alleging a failure to pay overtime and other wage-and-hour violations on behalf of a class of more than 700 Cintas route drivers throughout California.  The case resulted in a $10 million settlement which was approved by the state court in 2003.

28.    In *Spink, et al. v. Lockheed, et al.* CV 92-0800 SVW (GHKx), Ms. Traber and Mr. Voorhees represented two putative classes of Lockheed employees who challenged two distinct practices under ERISA and the ADEA.  The first challenged practice involved a class of retired Lockheed employees whom the company refused to credit with certain years of their service because of their age at hire, which challenge sought millions of dollars in additional retirement benefits for Lockheed employees and would have indirectly resulted in $2-3 billion in additional benefits for retired persons across America.  The second challenged practice involved Lockheed's use of millions of dollars in pension plan funds to obtain broad releases of claims from retiring employees.  Although the case was dismissed in the district court, these claims were reinstated by the Ninth Circuit in *Spink, et al. v. Lockheed, et al.*, 60 F.3d 616 (9th Cir. 1995).  When Lockheed obtained review of the decision in the U.S. Supreme Court, Ms. Traber argued the case for plaintiffs before the high court, which  reversed the Ninth Circuit's decision in *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996).  The matter was settled for a confidential sum following remand rulings before the Ninth Circuit.

29.    In *Lara v. Assi Super, Inc.* (BC 289199), Traber & Voorhees litigated a case on behalf of two classes of current and former employees of a Korean

supermarket, including a class of Latino employees who were retaliated against, harassed and discriminated against, and were denied state mandated rest periods on account of their ethnicity or race and a class of employees who were not paid overtime wages and/or provided rest periods.  The parties settled the lawsuit prior to class certification, and negotiated a class settlement involving payment of approximately $1.5 million and entry of a consent decree which mandated training for the company's management and important changes in the company's employment practices.  Our firm was honored by the Korean Immigrant Workers Alliance at their 2007 annual dinner for our successful litigation and resolution of this case.

30.   In *Bermudez et al. v. A La Carte Catering Inc., et al.*, (BC 271496), Ms. Traber and Mr. Voorhees litigated a wage-and-hour class action brought by a  class of cooks and drivers working on catering trucks, who alleged that their employers, defendants A La Carte Catering, Inc. and Esther and Herman Appel, mis-classified them as independent contractors and failed to pay them overtime wages, afford them meal and rest breaks, and provide them payroll statements under state law.  After the class was certified, the parties litigated the case to the eve of trial but ultimately settled the case through a mediation which resulted in a settlement involving payment of approximately $200,000 and entry of a consent decree which mandated important changes in the company's employment policies.

31.   In *Pedroza v. Fashion 21, Inc.* (BC 079974), Traber & Voorhees litigated a class action which charged a retail clothing chain with discriminating against its non-Korean American employees in wages and working conditions and with routinely failing to pay full overtime wages.  After the class was certified, we negotiated a 1998 settlement involving the payment of $1,000,000, training for the company's managers, and important changes in the company's employment policies.

32.   Ms. Traber was one of several class counsel in *Flores v. Albertson's, Inc.*, Case No. 01-00515 PA (SHx) (U.S. District Court, Central District of California), a class action asserting the overtime and other wage-and-hour claims of

1  supermarket janitors working in major supermarkets throughout California.  The case

2  settled in 2004 for more than $19 million.

3      33.    Beginning in December, 1991, Ms. Traber and Mr. Voorhees acted as

4  class counsel in *Mould, et al. v. Palmdale, 112 Ltd., et al.*, CA 001 201 (Los Angeles

5  Superior Court) on behalf of a class of Latino and African American applicants who

6  were denied housing on account of their ethnicity or race, obtaining the first $1

7  million-plus settlement of a fair housing case on behalf of applicant class against

8  private defendants.  In conjunction with that settlement, Traber & Voorhees drafted a

9  consent decree requiring unique injunctive relief, which has since been published in

10  a nationally-recognized fair housing publication.

11      34.    Ms. Traber and Mr. Voorhees also served as class counsel in *United*

12  *States v. Plaza Mobile Estates, et al.*, Nos. 91-6255 RMT (GHKx) consolidated with

13  92-3015 RMT (GHKx), in which a class of families with children along with the

14  federal government challenged mobile home park rules and practices which

15  discriminate on the basis of familial status in violation of the federal Fair Housing

16  Act, Title VIII of the Civil Rights Act of 1968.  In January, 1996, the Court approved

17  a partial settlement of the case and entered a Consent Decree which resulted in a

18  settlement fund of in excess of $2.21 million and substantial injunctive relief with

19  respect to 7 of the more than 15 mobile home parks involved in the lawsuit.  In doing

20  so, the Court approved a common fund award to Traber & Voorhees of

21  approximately $480,000 in fees and costs.  The remainder of the case was settled in

22  2005, providing for injunctive relief at three additional parks, a confidential sum for

23  the members of the two named plaintiff families and an agreement to litigate fees.  In

24  May of  2007, Judge Takasugi awarded Traber & Voorhees just under $3 million in

25  fees and costs for having successfully prosecuted this class action.

26      35.    Ms. Traber and Mr. Voorhees also successfully litigated several of the

27  largest fair housing class actions ever brought against private defendants.  For

28

example, in *Walker, et al. v. Lakewood Condo Owners Assoc., et al.*, they acted as class counsel in settling, for the sum of $1.675 million and injunctive relief, class action claims that the manager of Park Apartments evicted African-American tenants who allowed their teenage children to spend time with other African-American teenagers living in the Lakewood complex, deliberately falsified complaints in order to evict African-American families, and instructed security guards to harass African-American teenagers by falsely accusing them of various crimes.

36.    In addition to these class actions, Traber & Voorhees has served as class counsel in a number of other significant employment discrimination and wage-and-hour cases, including *Otera v. Rent-A-Center* (L.A. Superior Court class action settlement of $3 million in overtime case brought on behalf of employees who were misclassified as exempt), and *E.E.O.C. v. McKesson Water Product Company* (federal court settlement where Ms. Traber acted as co-counsel on behalf of a plaintiff-intervenor class and where defendant paid in excess of $1.6 million and agreed to substantial training and policy changes in order to settle the matter prior to formal litigation of the case).

37.    In *Strother v. Southern California Permanente Medical Group, et al.* (CV 92-5549 RSWL (Shx)), Ms. Traber represented an African-American partner physician who charged Kaiser supervisors and fellow doctors with discriminating against her because of her gender and her race, and with retaliating against her after she complained.  On appeal in *Strother v. Southern California Permanente Medical Group, et al.*, 79 F.3d 859 (9th Cir. 1996), Dr. Strother established, *inter alia*, that partners may rely on the protections of employment discrimination statutes to the extent they can prove they are sufficiently like employees, notwithstanding their formal partnership status.

38.    In *EEOC [Estrada] v. Farmer Brothers* (CV 88-1075 TJH (Gx)), Ms. Traber and Mr. Voorhees tried an individual gender discrimination case to U.S. District Court Judge Terry J. Hatter, resulting in a combined damages verdict and a

fee and cost award in excess of $2 million following appeal against Farmer Bros., a major Los Angeles-based food products company.  Ms. Traber acted as appellate counsel when Farmer Bros. filed an appeal challenging numerous rulings of the district court, and was successful in fending off the many arguments of defense counsel at O'Melveny & Myers.  The opinion affirming Estrada's success at the trial level is reported at *EEOC [Estrada] v. Farmer Brothers*, 31 F.3d 891 (9th Cir. 1994).

39.    In *Zuchegna v. Librascope Corp*. (CV 97-1398 CW), Ms. Traber was counsel in a federal gender discrimination case brought on behalf of a 61-year-old female inspector against a defense contractor who denied her a promotion and then laid her off illegally, which resulted in a mid-trial settlement of $1,400,000.

40.    While at Litt & Stormer, Ms. Traber served as lead litigator prior to trial in *Martin v. Texaco* (L.A.S.C. No. C 613 044), a lawsuit which charged Texaco with failing to promote a female manager because of her gender.  The trial, during which Dan Stormer served as lead trial counsel, resulted in the largest award ever obtained in an individual gender discrimination case - a more than $17 million jury verdict. That verdict was overturned by the trial court.  Ms. Traber was trial counsel, along with her former partner, Barrett S. Litt, in a police shooting case which resulted in a jury verdict of $1.5 million (*Melgar v. City of Los Angeles*, C 427 310).  In *Troffer v. U.S.A.*, Ms. Traber worked with Mr. Stormer to obtain a judgment of $1.056 million on behalf of various persons who were denied their rights by the United States Air Force.

41.    In *Hunter & LaLey v. City of Los Angeles Police Department*, Nos. 92-1897 AWT (CTx) and 92-1898 AWT (CTx), Ms. Traber served as the court-appointed Special Master, charged with determining how an approximately $1 million settlement was to be distributed to a class of minority police officers seeking compensation for racially discriminatory denials of training, promotions, and other career opportunities.

42.     Together with co-counsel, Ms. Traber and Mr. Voorhees represented gay and lesbian LAPD officers in a discrimination lawsuit which settled in 1993 for $770,000 against the City of Los Angeles in *Grobeson, et al. v. City of Los Angeles, et al.* (C 700 134) ("Grobeson I").  The case charged LAPD officers with harassing and discriminating against three officers on the basis of sexual orientation.  The Grobeson settlement required Los Angeles to adopt far-reaching administrative regulations protecting gay and lesbian city employees.

43.     In September, 2001, Ms. Traber acted as one of two lead trial counsel in *Doe v. Radovan Karadzic*, a case which resulted in a verdict of more than $4.5 billion on behalf of 21 Muslim individuals and family members of individuals who were murdered, tortured, raped and forcibly removed from their homes as a part of the Serbian governments "ethnic cleansing" policies.  As a result of my work on this case, Ms. Traber was nominated, along with my co-counsel, as Public Interest Trial Lawyer of the Year, by the Trial Lawyers for Public Justice Foundation.

44.     Ms. Peterson-Fisher, who joined Traber & Voorhees in 2011, graduated *cum laude* from New York University School of Law in 2007.  As a law student, Ms. Peterson-Fisher interned with several public interest law firms and externed with the Honorable Ronald George, former Chief Justice of the California Supreme Court. After graduating, she clerked for U.S. Magistrate Judge Michael H. Dolinger in the Southern District of New York.  Ms. Peterson-Fisher began practicing law as a staff attorney with the Brooklyn Family Defense Project, a program providing interdisciplinary advocacy to parents in dependency cases in Brooklyn Family Court. Before joining Traber & Voorhees, she also represented low income clients and engaged in policy advocacy as a staff attorney with Neighborhood Legal Services of Los Angeles County's Administrative Law and Advocacy Group. Ms. Peterson-Fisher has published academic scholarship in the New York University Review of Law and Social Change examining the interaction between the history of policing, bail, bounty hunting and current civil rights law. Since joining Traber &

1   Voorhees, she has handled a range of litigation, including employment

2   discrimination cases and wage-and-hour class actions.

3        45.    Ms. Hernandez-Stern, who joined Traber & Voorhees in 2012,

4   graduated from UCLA School of Law in 2010 with concentrations in Critical Race

5   Studies and Public Interest Law and Policy. After graduating, Ms. Hernandez-Stern,

6   who is fluent in Spanish, worked as a bilingual civil rights analyst at the Department

7   of Justice Civil Rights Division, Voting Section.  Ms. Hernandez-Stern then clerked

8   for the Honorable Harry Pregerson, United States Circuit Judge for the Ninth Circuit

9   Court of Appeals. Before beginning law school, Ms. Hernandez-Stern worked for

10  Congressman Xavier Becerra in Washington, D.C.  She also worked for Georgia

11  Legal Services Program's Farmworker Division, where she assisted attorneys in

12  bringing federal wage-and-hour cases for Spanish speaking guestworkers. Since

13  joining Traber & Voorhees, she has primarily handled wage-and-hour class actions

14  and employment discrimination cases.

15       46.    Many of the Traber & Voorhees personnel who worked on this case are

16  fluent in both English and Spanish, specifically associates Marisa Hernandez-Stern,

17  Rebecca Peterson-Fisher, paralegals Jade Sealey and Julian Valenzuela, and law

18  clerks Mike Hidalgo and Gabriella Barbosa.  All of these individuals used their

19  Spanish skills to communicate with class members in this case.

20  **The Work That Plaintiffs' Counsel Performed in this Case**

21       47.    On March 15, 2012, after more than a year of investigation, plaintiffs,

22  represented by Traber & Voorhees, filed a complaint against Schneider alleging a

23  number of wage-and-hour violations on behalf of hourly employees who work in

24  Schneider's Eastvale warehouse facility.

25       48.    Our firm engaged in extensive discovery during the course of this case.

26  As described in more detail below, Traber & Voorhees spent 1,602 hours on

27  discovery-related tasks.  Beginning in June 2012 and continuing through July 2013,

28  plaintiffs served over 125 document requests on Schneider.  Schneider produced

over 189,000 documents and electronic files, including time and payroll records for all class members, employee handbooks, all meal period waiver forms signed by class members, all signed overtime premium waiver forms, emails between Schneider personnel, and AWS-related documents.  My colleagues and I spent hundreds of hours reviewing these documents and meeting and conferring with Schneider's counsel about their responses, including emails that appeared to be missing.

49.    In the related *Carrillo* matter, in which our firm is also counsel of record, I filed a sanctions motion against Schneider for failing to produce documents in response to our discovery requests.   Magistrate Judge Bristow granted our sanctions motion, and ordered Schneider to retain a third-party vendor to search for all electronically stored information.  *Carrillo v. Schneider*, CV 11-8557, Doc. #313. Rather than contest plaintiffs' contentions in *Quezada* that certain electronic information was missing, Schneider agreed to use the same vendor to search for relevant emails and electronically stored information.  I generated a number of keyword search terms that Ogletree, Schneider's counsel, agreed that the third-party vendor would use to search for electronically stored information in this case. Schneider was also required to provide us with an index of all documents stored on its servers for the Eastvale warehouse facility.  I reviewed this index for documents that appeared relevant to this case, and Schneider used the third-party vendor to locate and produce them.  The process described above yielded a number of emails, Excel spreadsheets, and other documents that were damaging to Schneider and helpful to plaintiffs.

50.    Very early in the case, after the Rule 26(f) conference, we persuaded Schneider to produce classwide time and pay records, and avoided the usual delay and expense associated with this process.  Schneider agreed to pay for and send a *BelAire* notice to the class, and we then promptly received the time and pay records of all class members.

51.     I took the depositions of four corporate representatives of Schneider pursuant to Fed. R. Civ. P. 30(b)(6), including two of Schneider's Human Resources managers (Kozik and Gonzalez), its Vice President and General Manager (Flaherty), and its Director of Operations (Pickens).  These depositions confirmed that several of Schneider's policies – such as inducing class members to waive overtime pay and meal periods – were unlawful.

52.     Schneider took the depositions of three of the four named plaintiffs. Class Counsel spent many hours preparing the named plaintiffs for their depositions, including reviewing hundreds of documents.

53.     Almost concurrently, Schneider issued subpoenas for six putative class member depositions, which began mere days after the depositions of three of the named plaintiffs, and ended the day before the mediation.

54.     Schneider propounded over 130 document requests to each of the named plaintiffs, and we produced 765 documents to Schneider in response.

55.     Schneider propounded 25 interrogatories to each of the named plaintiffs, and we spent several hours meeting with our named plaintiffs to respond to these interrogatories.  Because three of our four named plaintiffs are primarily Spanish-speaking, these meetings had to be conducted in Spanish, and the English responses had to be translated in order for our clients to verify the responses.  This process is extremely time-consuming.

56.     In addition to formal discovery, my colleagues and I conducted extensive investigation of the plaintiffs' claims in this case. We interviewed more than 40 class members (the majority of whom are primarily Spanish-speaking), and we held more than a dozen class member meetings to develop the facts of this case. Because both English-speakers and Spanish-speakers have attended these class meetings, we have translated them into Spanish.

57.     In February 2013, plaintiffs' counsel filed a motion to limit Schneider's communication with class members under Rule 23 based on evidence that Schneider

1  had collected 106 declarations from class members using deceptive and coercive

2  practices.  The Court granted our motion and issued a curative notice to the class,

3  which stated, *inter alia*, that Schneider would not retaliate against class members

4  who participated in the lawsuit.  A number of class members contacted our firm after

5  receiving the curative notice, and began participating in the lawsuit.  The Court also

6  held that it would not consider Schneider's 106 declarations if Schneider attempted

7  to use them in the litigation.  We received this ruling on March 25, 2013, about six

8  months before our motion for class certification was due.

9       58.    To prepare for the mediation, we retained an expert to help them

10  determine the value of plaintiffs' claims.  Our expert built a database using the

11  extensive time and pay records that Schneider provided, and calculated damages and

12  penalties for each claim.  Our expert also analyzed the time records to determine,

13  *inter alia*, the extent to which time records had been altered by Schneider managers,

14  whether employees worked a regular schedule of four 10-hour workdays, and

15  whether employees took 30-minute meal breaks.

16      59.    Since the Court granted plaintiffs' motion for preliminary approval of

17  the settlement on December 3, 2013, we have worked with the Claims Administrator

18  to effectuate the terms of the Settlement Agreement, and have responded to

19  numerous phone calls from class members regarding the settlement.

20      60.    Before the mediation, Schneider changed its meal and rest break

21  policies to comply with California law, and discontinued its unlawful use of

22  overtime pay waivers.

23  **Facts Related to Attorneys' Fees, Costs and Damages Calculations**

24      61.    Traber & Voorhees has litigated this case on a contingency basis.

25  Throughout the course of this case, attorneys and other personnel at Traber &

26  Voorhees have maintained regular time records indicating the number of hours spent

27  on each task completed in representing the plaintiffs in this case.  Up until about

28  June 2013, each individual who has worked on this case, including attorneys,

paralegals and law clerks, filled out daily time sheets describing all tasks performed in connection with this case, and the amount of time spent on each task. These time sheets were completed at or about the time the work was performed, and time was recorded in 6-minute increments (i.e., 1/10 of an hour). The data on these daily time sheets was then entered into our timekeeping software, Timeslips, by a paralegal.

62.     Beginning in June 2013, all Traber & Voorhees personnel began recording the time spent on tasks in this case (and all other cases) directly into Timeslips. These entries are made at or about the time the work was performed, including a description of the task performed, and time is still recorded in 6-minute increments. Our paralegal regularly enters all case-related costs into the same timekeeping software described above. These are the practices Traber & Voorhees has used in this case to record time worked and costs expended.

63.     To determine the attorneys' fees and costs expended on this case to date, I exported all of the time and expense records from Timeslips into a Microsoft Excel spreadsheet. I reviewed every single time entry to ensure that they in fact related to this litigation, and to determine whether there were any errors. I eliminated any entries that appeared to be erroneous or duplicative. I then used simple formulas in Excel to calculate the amount of fees that we have spent on this case to date, using our 2013 rates.

64.     This calculation showed that our firm has spent about 3,641 hours on this case, for a total of approximately $1,523,005 in attorneys' fees. Below is a breakdown of the fees and costs by biller:

| Biller | Hours | 2013 Rate | Total |
|---|---|---|---|
| Barbosa | 198 | $225 | $44,550 |
| Hernandez-Stern | 1099 | $350 | $384,650 |
| Hidalgo | 119 | $225 | $26,775 |
| Hushagen | 48 | $225 | $10,800 |
| Owens | 93 | $210 | $19,530 |

| | | | |
|---|---|---|---|
| Peterson-Fisher | 431 | $460 | $198,260 |
| Sealey | 133 | $210 | $27,930 |
| Slaughter | 63 | $210 | $13,230 |
| Teukolsky | 951 | $600 | $570,600 |
| Traber | 141 | $795 | $112,095 |
| Valenzuela | 216 | $210 | $45,360 |
| Voorhees | 70 | $735 | $51,450 |
| Weinstein | 79 | $225 | $17,775 |
| **Total** | 3,641 | | $1,523,005 |

65.     As described above, our firm is also counsel on the related *Carrillo* warehouse case, in which we represent a different group of workers in the same warehouses at issue in this lawsuit.  Because our investigation of *Carrillo* overlapped with our investigation of *Quezada*, I eliminated from the report any time entries that predated September 29, 2011, when we began keeping separate time entries for the *Carrillo* and *Quezada* cases.  This means that a significant amount of pre-filing investigation is not contained in the attorneys' fees report that I generated for this case.  If necessary, I could go through the time entries before September 29, 2011 to determine which of them are applicable to *Quezada* rather than *Carrillo*.

66.     I also categorized each of the time entries to provide the Court with information about the number of hours spent on certain tasks.  A true and correct copy of the report that breaks down the hours by task is attached hereto as Exhibit B. This report shows, for example, that Traber & Voorhees spent 1,602 hours on discovery-related tasks; 589 hours on tasks related to maintaining contact with class members; 338 hours on tasks relating to motion practice; 298 hours (to date) on tasks related to drafting and implementing the settlement agreement; and 144 hours on mediation-related activities.

67.     The hourly rates that we have used to calculate the lodestar in this case and the years of law school graduation for Traber & Voorhees attorneys are as follows:

| Biller | Year of Graduation | 2013 Rate |
|---|---|---|
| Barbosa | Law Clerk | $225 |
| Hernandez-Stern | 2010 | $350 |
| Hidalgo | Law Clerk | $225 |
| Hushagen | Law Clerk | $225 |
| Owens | Paralegal | $210 |
| Peterson-Fisher | 2007 | $460 |
| Sealey | Paralegal | $210 |
| Slaughter | Paralegal | $210 |
| Teukolsky | 2000 | $600 |
| Traber | 1984 | $795 |
| Valenzuela | Paralegal | $210 |
| Voorhees | 1988 | $735 |
| Weinstein | Law Clerk | $225 |

68.     Based on my own experience, as described above, and my familiarity with attorneys' fee awards and the qualifications and skills of Traber & Voorhees' attorneys and those in the Los Angeles legal community, I believe that Traber & Voorhees' hourly rates are consistent with those charged in the Los Angeles legal market for attorneys with roughly the same experience and reputation as the attorneys at our firm.

69.     For example, in 2011, a district court in the Central District of California awarded attorneys' fees to the prevailing plaintiffs in a civil rights trial challenging the propriety of a gang injunction.  The order in that case, *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. July 28, 2011), is attached hereto as Exhibit C.  The plaintiffs were represented by the ACLU of Southern California and *pro bono* attorneys from Munger, Tolles & Olsen.  One of the plaintiffs' attorneys was Joseph Ybarra, a partner at Munger, Tolles & Olsen.  The court approved Mr. Ybarra's 2011 hourly rate of $550, which is comparable to my 2013 hourly rate of $570.

70.     Mr. Ybarra submitted a declaration in support of the attorneys' fees motion, which is attached hereto as Exhibit D.  Mr. Ybarra's declaration establishes that he has very comparable experience to me.  He graduated from USC Law School in 2001, and was elected to the Order of the Coif.  I graduated from UCLA School of Law in 2000, where I was also elected to the Order of the Coif.  In 2001-2002, Mr. Ybarra and I clerked together for the Honorable A. Howard Matz, and we are now both partners with significant litigation experience at law firms with excellent reputations in the community.  I in fact have one additional year of experience than Mr. Ybarra, because I graduated from law school one year before him and clerked for the Ninth Circuit Court of Appeals in 2000-2001.  Thus, my hourly rate is roughly equivalent (if not lower than) the rate charged in the Los Angeles market by an attorney with similar experience, skill and reputation.

71.     The *Vasquez* decision also supports the hourly rates billed by Ms. Peterson-Fisher.  In *Vasquez*, Judge Fairbank approved the 2011 hourly rate of a Munger attorney named Laura Smolowe, who, received her J.D. in 2006, just one year before Ms. Peterson-Fisher.  *See* Ybarra Decl. ¶7.  Ms. Smolowe's 2011 rate was $460/hour.  Ms. Peterson-Fisher's 2013 rate is $460/hour, which is presumably at or below Ms. Smolowe's 2013 rate.

72.     Courts have regularly approved the rates that both Ms. Traber and I have sought in previous cases, including *FTR International, Inc. v. Board of Trustees of the Los Angeles Community College District*, Case No. BS 136137 (Los Angeles Superior Court) (August 28, 2012 order approving Ms. Traber's 2011 rate of $675 per hour and my 2011 rate of $515 per hour); *Pierce v. County of Orange*, Case No. SACV 01-981 ABC (MLGx) (March 2, 2012 order approving my 2011 rate as an associate at Hadsell Stormer of $500 per hour); *Bautista v. Nijjar Realty, Inc.*, Case No. BC384602 (April 9, 2010 order approving my 2010 rate as an associate of $475 per hour); *United States of America v. Plaza Mobile Estates*, Case No. CV 91-6255 RMT (GHKx) & 92-3015 RMT (GHKx) (May 21, 2007 approving Ms. Traber's

1   2007 rate of $510 per hour); *Walker v. Lakewood Condominium Owners*

2   *Association*, Case No. CV 93-4531 DT (ANx) (July 22, 2003 order approving Ms.

3   Traber's 2003 rate of $425 per hour).

4         73.    On November 28, 2012, in connection with an attorneys' fees motion

5   filed in the related case, *Carrillo v. Schneider Logistics*, Magistrate Judge Bristow

6   approved Ms. Traber's 2012 rate at $755.25 per hour and my 2012 rate at $541.50

7   per hour.  Judge Bristow ruled that plaintiffs had failed to provide sufficient support

8   establishing that our 2012 rates were consistent with the prevailing market rates, and

9   reduced our requested rates by 5%.  This was the first time since Traber & Voorhees

10  was founded in 1991 that a court has ever lowered the hourly rates that attorneys at

11  our firm have requested in an attorneys' fees motion.

12        74.    According to a cost report that I generated from Timeslips, the software

13  described above that our paralegal uses to enter all case-related costs, we have spent

14  a total of $47,884.61 in costs on this case to date.  This includes costs for

15  photocopies, legal research, postage, court filing and mediation fees; deposition

16

17

18

19

20

21

22

23

24

25

26

27  //

28  //

transcripts, retaining an expert to calculate damages, and travel related to the litigation.  Our most significant expenses were as follows:

| Nature of Cost | Amount |
|---|---|
| Expert fees to prepare for mediation | $14,712 |
| Deposition transcripts | $12,888.81 |
| Mediation fees | $8,157 |
| Copies (e.g., for discovery and motions) | $4,616 |
| Travel (e.g., mileage reimbursement for trips to Ontario and elsewhere to attend depositions and meetings with class members) | $1,949.87 |

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.  Executed on February 10, 2014 in Pasadena, California.

Lauren Teukolsky

Teukolsky Declaration;
Case No. CV 12-2188 CAS (DTBx)          -22-