# Exhibit A

THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
REBECCA PETERSON-FISHER (SBN 255359)
MARISA HERNANDEZ-STERN (SBN 282477)
Traber & Voorhees
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com
rpf@tvlegal.com
mhs@tvlegal.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| FRANKLIN QUEZADA, ELIZABETH GUTIERREZ, VICTOR RAMIREZ, and WALTER DOWNING for themselves and all others similarly situated and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>SCHNEIDER LOGISTICS TRANSLOADING & DISTRIBUTION, INC.; and DOES 1 through 5,<br><br>Defendants. | Case No. 2:12-cv-02188-CAS-(DTBx)<br><br>**CLASS ACTION**<br><br>**SETTLEMENT AGREEMENT AND RELEASE**<br><br>Complaint Filed: March 15, 2012<br>Trial Date:      None Set<br>Judge:           Christina A. Snyder |

## SETTLEMENT AGREEMENT AND RELEASE

This SETTLEMENT AGREEMENT AND RELEASE (the "Agreement" or "Settlement") is made, subject to Court approval, by and between Plaintiffs Franklin Quezada, Elizabeth Gutierrez, Victor Ramirez and Walter Downing, individually and in their capacity as representatives of the Settlement Class defined herein (referred to as "Plaintiffs") and all members of the Settlement Class ("Class Members" as defined below), on the one hand, and Schneider Logistics Transloading and Distribution, Inc. ("Schneider" or "Defendant"), on the other hand.  Plaintiffs and Schneider shall collectively be referred to as the "Parties." Plaintiffs are represented by Traber & Voorhees ("Class Counsel" or "Plaintiffs' Counsel") and Schneider is represented by Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

### A.  RECITALS

This agreement is made for the following purposes and with reference to the following facts:

1.     On March 15, 2012, Plaintiffs Franklin Quezada, Elizabeth Gutierrez and Victor Ramirez filed a class action lawsuit against Schneider.  On October 29, 2012, Plaintiffs filed a First Amended Complaint ("FAC"), which is the operative pleading.  The FAC added some new claims, and also added Plaintiff Walter Downing.  The case is entitled *Quezada v. Schneider Logistics Transloading and Distribution, Inc*. Case No. CV 12-2188, and is referred to herein as the "Action."

2.     The FAC alleges that Schneider held an invalid alternative workweek election in June 2008, and then improperly implemented an alternative workweek schedule ("AWS").  The FAC alleges that after the election, beginning on or about August 3, 2008, Schneider's employees began working an AWS of four 10-hour workdays (the "4-10 schedule"), and were not paid an overtime premium for the eighth to tenth hour of work.  The FAC alleges that because the election was invalid, and because Schneider improperly implemented the AWS, Schneider owes

the employees the overtime premium for all hours that they worked between 8 and 10 hours from approximately August 3, 2008 to the present.

3.      The FAC also alleges, *inter alia*, that Schneider failed to maintain proper time and pay records, failed to provide lawful meal and rest breaks, unlawfully deducted (through an "auto-deduct" system) 30 minutes of time and pay for shifts lasting more than 12 hours, and failed to pay proper reporting time pay.

4.      Based on these allegations, the FAC alleges fourteen causes of action under California law for: (1) unpaid overtime; (2) breach of contract; (3) failure to provide lawful rest breaks; (4) failure to provide lawful meal breaks; (5) failure to pay proper reporting time pay; (6) failure to pay all wages owed; (7) failure to maintain accurate time and pay records; (8) failure to provide accurate itemized wage statements; (9) waiting time penalties; (10) violation of the prohibition against paying secret wages; (11) fraudulent misrepresentation; (12) penalties under the Private Attorneys General Act ("PAGA"); (13) violation of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) and (14) declaratory relief.  The FAC seeks damages, penalties, interest, attorneys' fees, costs, and declaratory and injunctive relief.

5.      On November 6, 2012, per the stipulation of the Parties, Steve Pearl was assigned to serve as the Panel Mediator in this Action through the Court's ADR Program.  On May 14, 2013, the Court entered a Scheduling Order setting September 23, 2013 as the deadline for Plaintiffs' motion for class certification. The Court also set a trial date of August 12, 2014.

6.      The Parties held a mediation with Mr. Pearl on June 25, 2013, but the Action did not settle at that time.  Thereafter, as a result of continued negotiations between the Parties conducted by Mr. Pearl, a settlement was reached, the terms of which are set forth in a Memorandum of Understanding dated August 15, 2013 and in this Agreement.

7.      Before entering into this Agreement, the Parties engaged in significant

1   discovery, and both Parties retained experts to assist them in evaluating the value
2   of Plaintiffs' claims.  Plaintiffs' Counsel reviewed over 189,000 documents
3   produced by Schneider in response to Plaintiffs' document requests, including time
4   and pay records of Class Members, documents related to the AWS and the
5   election, email correspondence, and Schneider's employment policies and
6   procedures.  Plaintiffs' Counsel took the depositions of four Schneider managers
7   under Fed. R. Civ. P. 30(b)(6), and propounded numerous interrogatories and
8   requests for admission.  Schneider took the depositions of three named Plaintiffs
9   (Quezada, Ramirez and Downing), as well as the depositions of six putative class
10  members.  As a result of this and other work performed in the case, Plaintiffs'
11  Counsel has concluded that the terms of the settlement set forth in this Agreement
12  are fair, reasonable, adequate and in the best interests of the Class, in light of all
13  the known facts and circumstances, including the risks of continued litigation.
14  8.      Schneider denies liability with respect to all claims asserted in the Action
15  and all claims released herein, and denies all charges of wrongdoing or liability
16  against it arising out of or relating to any conduct, acts, or omissions alleged in the
17  Action.  However, Schneider has agreed to settle this Action in light of the time,
18  expense and potential risk inherent in continued litigation.
19  9.      The Parties intend that this Agreement will finally resolve all claims of the
20  Plaintiffs and Class Members, except as otherwise indicated.  The Parties intend
21  this Agreement to bind Plaintiffs, Class Members and Schneider.

**B.  DEFINITIONS**

23  10.    **"Accrual Time"** means the total number of days that a Class Member
24  accrued for vacation or flex time pursuant to the terms of the Schneider Associate
25  Resource Guide during the Class Period.
26  11.    **"Claim Form"** means the form, attached hereto as Exhibit B, that will be
27  mailed to Class Members, which they will use to submit claims to the Claims
28  Administrator.  The Claim Form will be sent in both English and Spanish.

12.    **"Class Period** means March 15, 2008 through the date of Preliminary Approval.

13.    **"Effective Date"** refers to the effective date of final approval of the settlement.  If no objections are filed to the settlement, the Effective Date will be the date the Court enters an order of final approval of the settlement.  If objections are filed and overruled, and no appeal is taken of the approval order, the Effective Date will be 30 days after the trial court enters an order of final approval.  If an appeal is taken from the Court's overruling of objections to the settlement, the Effective Date will be 30 days after the appeal is withdrawn or after an appellate decision affirming the final approval decision becomes final.  No money will be distributed unless and until the Effective Date occurs.

14.     **"Final Approval"** refers to the entry of an order by the Court granting a motion for final approval of the settlement agreement.

15.    **"Preliminary Approval"** refers to the entry of an order by the Court granting a motion for preliminary approval of the settlement agreement.

16.    **"Settlement Class"** means all current and former hourly employees who have worked for Schneider at its Mira Loma/Eastvale facility during the Class Period, and who have been subject to an alternative workweek schedule ("AWS") at any time during the Class Period.  Such employees shall be referred to herein as "Class Members."

## C. AGREEMENT

For and in consideration of the mutual covenants herein, the Parties agree, subject to Court approval, as follows:

17.    **Gross Fund Amount**

Schneider shall pay four million seven hundred thousand dollars ($4,700,000) – the Gross Fund Amount – to settle this action.  There shall be no reversion of any part of the Gross Fund Amount to Schneider.

Payment of the Gross Fund Amount shall fully resolve and satisfy all claims

for attorneys' fees and costs, all payments to Class Members provided for under this Agreement, service awards to Plaintiffs, the costs of the Claims Administrator to administer the settlement, and payment to the Labor Workforce Development Agency ("LWDA") pursuant to the terms and conditions set forth in this Settlement Agreement.

18.    **Claims Administrator**

The Parties have agreed to hire RG2 ("Claims Administrator") to administer this Settlement.  The Claims Administrator's fees and costs are estimated at approximately $14,500.

19.    **Procedure for Payment of Gross Fund Amount**

Schneider will deposit the Gross Fund Amount with the Claims Administrator within 10 business days from the date of Final Approval.  If Final Approval does not occur by December 31, 2013, as soon as practicable but no later than 10 business days thereafter, Schneider will deposit the Gross Fund Amount into an escrow account jointly controlled by counsel for Schneider and Plaintiffs. The interest thereon after deposit will accrue to the benefit of the Settlement Class, unless the settlement is not finally approved by the Court, in which case it will revert to Schneider along with the Gross Fund Amount.

20.    **Net Settlement Fund**

The "Net Settlement Fund," which is the total amount of money available for distribution to Class Members, shall be calculated by deducting from the Gross Fund Amount the amount of Plaintiffs' Counsel's attorneys' fees and costs as approved by the Court, service awards to the named Plaintiffs as approved by the Court, the payment to the LWDA as set forth in this Agreement, and the costs of the Claims Administrator to administer the settlement.  In the event the Court awards less than the fees, costs and other payments described in this paragraph, the difference shall be added to the Net Settlement Fund and distributed to Class Members.

21.  **Allocation of Net Settlement Fund and Tax Issues**

The Net Settlement Fund shall be allocated as follows:  (1) one third (1/3) shall be allocated to wages; (2) one third (1/3) shall be allocated to interest; and (3) one third (1/3) shall be allocated to penalties alleged to be owed under California Labor Code §§ 203 and 226.  The portion of the Net Settlement Fund paid to Class Members attributed to wages shall be reported to the Internal Revenue Service on Form W-2 prepared by the Claims Administrator and applicable withholdings shall be taken.  The portions of the Net Settlement Fund paid to Class Members attributed to interest and penalties shall be reported to the Internal Revenue Service as miscellaneous income on Form 1099 and no withholdings shall be taken.  The Parties will be responsible for their own tax obligations that result from this agreement.

22.  **Obtaining Court Approval**

Upon full execution of this Agreement, the Parties shall take all necessary steps to obtain Preliminary Approval.  Within thirty days following execution of this Agreement by the Parties, Plaintiffs' Counsel shall file with the Court a motion seeking preliminary approval of the Settlement by the Court, approval of the Class notice to be sent to the Class Members ("Class Notice," attached hereto as Exhibit A), approval of a claim form ("Claim Form," attached hereto as Exhibit B), approval of an opt-out method, approval of a method of giving Class Notice, appointment of the Claims Administrator, and the setting of a hearing date for final approval of the Settlement Agreement and hearing any objections to the settlement. Plaintiffs will seek to certify the Settlement Class, as defined above.  Schneider will not oppose such motion, and will cooperate in good faith with Plaintiffs to the extent necessary to file such motion.

If the Court does not approve this Agreement, the Agreement shall terminate and be of no force or effect, unless the Parties agree in writing to modify this Agreement in the manner necessary to obtain Court approval.  This Agreement

shall not terminate should the Court elect to modify the allocation of the Net
Settlement Fund or the methodology for distribution of the Net Settlement Fund to
Class Members, or invite the Parties to do so in order to obtain approval.

23.    **Schneider to Provide Class Member Information to the Administrator**

If the Court grants preliminary approval of the Settlement, Defendant shall,
within five business days of the order granting preliminary approval, provide the
Claims Administrator with the following information (hereafter, "Class Members'
Information") from its records formatted as a Microsoft Office Excel spreadsheet:
Each Class Member's full name; last known address; Social Security Number; hire
and termination date and any information regarding Accrual Time, as defined
above, and any time not worked due to medical and leaves of absence, to permit
the Claims Administrator to calculate the number of workweeks worked at
Schneider during the Class Period pursuant to Paragraph 25 herein.

24.    **Notice to Class Members**

**24(a).  Mailing of the Notice Packet to Class Members**

After receipt of the Class Members' Information from Defendant and prior
to mailing of the Class Notice and Claim Form ("Notice Packet"), the Claims
Administrator will perform a search and update using the National Change of
Address Database to correct any known or identifiable address changes for Class
Members.  Within five (5) business days of receipt of the Class Members'
Information from Defendant, the Claims Administrator shall send Notice Packets
to all Class Members by First Class U.S. Mail.  For any Notice Packets returned to
the Claims Administrator as non-deliverable on or before the deadline for
postmarks or fax date marks for the Claim Form or notices of exclusion, the Notice
Packets shall be sent to the forwarding address affixed thereto.

If no forwarding address is provided, the Claims Administrator shall
promptly attempt to determine a correct address using a single skip-trace using the
Class Member's name, last known address and Social Security Number, and shall

then perform a single re-mailing of the Notice Packets to the resulting new address. If after the skip-trace search and re-mailing the Notice Packet is again returned to the Claims Administrator as non-deliverable, those Class Members with undeliverable notices shall not be eligible for payment, but shall be bound by the terms of the Settlement.

Class Members will have 60 days from the date of mailing of the Notice Packet to submit a claim form to the Claims Administrator.  The date of the postmark on the return envelope shall be the exclusive means used to determine whether a Class Member timely submitted a claim or opted out. In addition, the Claims Administrator, upon agreement by all counsel, may determine that there is good cause to extend the date for mailing a particular Claim Form, or the Court may find good cause to extend the date for mailing a particular Claim Form by up to ten (10) days.

### 24(b).  Mailing of a Reminder Postcard

The Claims Administrator will mail a reminder postcard in the form attached hereto as Exhibit C to all Class Members who have not submitted a Claim Form, an objection, or an opt-out twenty (20) days before the expiration of the claim period.  The reminder postcard will be in both English and Spanish.

### 24(c).  The Form of Class Notice

The form of Class Notice to be given to Class Members shall be approved by the Court.  The Class Notice and the Claim Form will be in both English and Spanish.  The Class Notice shall contain the Class Member's full name, last known address, hire and termination dates, number of workweeks worked with Defendant during the Class Period, and anticipated amount of payments to each Class Member.

The Class Notice shall advise each Class Member of the pendency of the Action, of the general nature of the claims asserted in the Action, the general terms of this Agreement, the effect of final approval of the Settlement, if granted, in

SETTLEMENT AGREEMENT AND RELEASE

1  extinguishing the Released Claims, as defined herein, of all Class Members who
2  do not make a timely election to opt out, the right of each Class Member to
3  participate in the Settlement, the right of each Class Member to opt out of the
4  Action, the right of each Class Member to object to the Settlement Agreement and
5  the means by which objections may be asserted, and that each Class Member who
6  does not timely opt out will be bound by the release provisions in this Settlement
7  Agreement.

8       The Class Notice shall also disclose that the LWDA shall receive a portion
9  of the Gross Fund Amount in connection with the PAGA claim, that Plaintiffs are
10 seeking an enhancement from the Gross Fund Amount and the amount of such
11 enhancement payments, that Class Counsel is seeking an award of fees and costs
12 from the Gross Fund Amount and the amount which Class Counsel is seeking, and
13 of the fact that any such awards will be payable out of the Gross Fund Amount.

14      The Class Notice shall also provide that Schneider may not retaliate against
15 Class Members who wish to participate in the settlement, and may not reward
16 Class Members who decide to opt out.

17      The Class Notice shall provide that those Class Members who wish to object
18 to the proposed Settlement Agreement have the right to appear at the hearing on
19 final approval either personally or through counsel.  The Class Notice shall further
20 provide that Class Members who wish to object must mail a written objection and
21 notice of intent to appear at the hearing on final approval within 60 calendar days
22 of the original mailing of the Class Notice and Claim Form, setting forth their
23 name, address, telephone number, reason(s) why they are objecting to the proposed
24 settlement, date and signature ("Notice of Objection"), and whether they intend to
25 appear at the hearing.

26      The entire cost and expense of sending Notice Packets to Class Members
27 shall be paid from the Gross Fund Amount.

28

### 24(d).  Objections and Opt-Outs

The postmark date of the mailing shall be the exclusive means for determining that a Notice of Objection is timely.  Class Members who fail to make timely written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.

The Class Notice shall also provide that Class Members who wish to exclude themselves from the settlement must submit a written statement requesting exclusion from the settlement ("opt-out"), postmarked within 60 days of the original mailing of the Class Notice and Claim Form.  Such written request for exclusion must contain the name, address, and telephone number of the person requesting exclusion.  The opt-out must be personally signed by the Class Member who seeks to opt-out.  No opt-out request may be made on behalf of a group of Class Members.  The opt-out request must be sent by mail to the Claims Administrator and must be timely postmarked as set forth above, unless the Parties otherwise agree in writing.   Any Class Member who requests exclusion from the settlement will not be entitled to any Settlement Award and will not be bound by the Settlement Agreement or have any right to object, appeal, or comment thereon.

Before the final approval hearing, any person who has elected to opt-out may withdraw that election by notifying the Claims Administrator in writing that he or she wishes to be a Class Member.  The Claims Administrator shall maintain records of all withdrawn opt-outs, and shall provide such information to Class Counsel and Defendant's counsel. In the event that an individual submits a request for exclusion and an objection and/or Claim Form, the Claims Administrator will use reasonable efforts to contact the individual via telephone and/or U.S. Mail to determine whether he or she wants to opt out of the settlement or participate in the settlement.  If the Claims Administrator is unable to contact the individual and obtain a resolution by the time for an individual to file a Claim Form, object or opt-

10                 2:12-cv-02188-CAS-(DTBx)

1  out, the individual will be deemed to have elected to participate in the settlement

2  and shall become a Settlement Class Member.  A Settlement Class Member who

3  files an Objection under this paragraph must still file a Claim Form to participate

4  in the Settlement and obtain a Settlement Award.

5          After the 60-day deadline to submit objections or opt-out requests is over,

6  the Claims Administrator will inform the Parties of any objections and/or requests

7  for exclusions it received to the proposed agreement.  The Claims Administrator

8  shall (a) date-stamp all original objections and/or requests for exclusions to the

9  settlement that it receives; (b) serve copies on Class Counsel and Defendant's

10 Counsel no later than five (5) business days after receipt, or immediately if

11 received within 5 business days of the Court's final approval hearing; and (c) file

12 the date-stamped originals with the Clerk of the Court no later than five (5)

13 business days prior to the date of the Court's final approval hearing or immediately

14 if received less than 5 business days prior to the date of the Court's final approval

15 hearing.  Subject to the Court's approval, compliance with the procedures described

16 above shall constitute due and sufficient notice to Class Members of this proposed

17 settlement and the Final Approval Hearing, and shall satisfy the requirements of

18 due process.

19              **24(e).  Class Member Disputes About Workweeks**

20          Any Class Member shall be entitled to submit an objection to the hire date,

21 termination date, or number of workweeks set forth on his or her Claim Form,

22 which must specify the grounds for the objection and include any supporting

23 documentation and must be mailed to the Claims Administrator by certified mail

24 with return receipt requested, postmarked on or before the 60-day deadline to

25 submit objections or request for exclusions.  Upon receipt of any such objection,

26 the Claims Administrator shall promptly serve counsel for all Parties with a copy

27 of the objection.  The Claims Administrator will evaluate the evidence submitted

28 by the Class Member and will make a final, binding determination based on its

1   evaluation of the evidence.

2        In the event that any disputes remain, it is agreed that, in the event the Court

3   grants final approval to the Settlement Agreement, the Court may resolve any

4   remaining disputes as to the validity or amount of Class Members' claims at the

5   same time, it being the intent of the Parties to resolve such disputes, if any, as

6   expeditiously and in as informal a manner as is consistent with the due process

7   rights of the Class Members.

8   25.   **Calculation of Payments to Class Members**

9        Within the time set by the Court for the giving of the Class Notice, each

10  Class Member shall be sent the Notice Packet.

11       Counsel for the Parties have arrived at a calculation methodology that is fair,

12  equitable and efficient.  The methodology is as follows:  Each participating Class

13  Member will be entitled, provisionally, to a proportional share of the Net

14  Settlement Fund based on the number of workweeks each Class Member worked

15  for Schneider during the Class Period.  For current Schneider employees, eligible

16  workweeks shall be determined by counting the number of calendar days from the

17  Class Member's starting date of employment for Schneider through and including

18  the last day of the Class Period, divided by seven.  For former employees who no

19  longer work for Schneider, eligible workweeks shall be determined by counting the

20  number of calendar days from the Class Member's starting date of employment for

21  Schneider through and including the last day of his or her employment with

22  Schneider or the last day of the Class Period, whichever is earlier.  If the hire date

23  for either current or former employees is prior to the Class Period, then the start

24  date would be the first day of the Class Period.

25       Additionally, in calculating the number of workweeks, for each Class

26  Member, the Claims Administrator will subtract Accrual Time, as defined above,

27  and any time taken for medical, parent or family leave, or any other leave of

28  absence.  No other time will be subtracted.

26.      **Uncashed Checks Payable to Cy Pres Fund**

Net Settlement Funds attributable to Class Members for settlement checks returned as undeliverable, and for settlement checks not cashed within ninety (90) days after issuance, will constitute unpaid residuals in class action litigation and shall be paid as cy pres to United Way of the Inland Empire.

27.      **PAGA**

The Parties agree that from the Gross Settlement Fund, five thousand dollars ($5,000) shall be designated as PAGA penalties that are payable to the state.

28.      **Service Award**

Class Counsel may request that the Court approve service awards in an amount up to $10,000 for each of the four Named Plaintiffs (i.e., a total of $40,000).  Schneider will not oppose this request.  To the extent the Court approves service awards in an amount less than the request, the difference between the requested and awarded amount will be distributed to Class Members on a proportional basis relative to the size of their claims, in accordance with other administration and distribution requirements of the settlement.  The Parties agree that irrespective of any action taken by the Court with respect to the Service Awards, the validity of the underlying Agreement shall not be affected.

29.      **Attorneys' Fees and Costs**

Plaintiffs' Counsel will request that the Court approve an award of statutory attorneys' fees in an amount not to exceed 33-1/3% of the Gross Fund Amount, after payment of Plaintiffs' Counsel's incurred expenses.  Schneider will not oppose these requests for fees and costs.  Attorneys' fees and expenses will be paid out of the Gross Fund Amount.  To the extent the Court approves attorneys' fees in an amount less than Plaintiffs' Counsel's request, the difference between the requested and awarded amounts will be distributed to Class Members on a proportional basis relative to the size of their claims (as defined above), in accordance with other administration and distribution requirements of the

SETTLEMENT AGREEMENT AND RELEASE

1  settlement.  Plaintiffs have the right to appeal any order in which the Court awards

2  attorneys' fees in an amount less than Plaintiffs' Counsel's request.  The Parties

3  agree that irrespective of any action taken by the Court with respect to attorneys'

4  fees and expenses, the validity of the underlying Agreement shall not be affected.

5  30.    **Distribution of the Settlement Funds**

6         Within five (5) business days after the Effective Date (or within five (5)

7  business days of when the settlement funds, deposited by Schneider with the

8  Claims Administrator, become available, whichever date is later), the Claims

9  Administrator shall issue and distribute: individual wage checks, along with

10  individual checks representing 1099 payments for penalties and interest, to all

11  Class Members who have submitted valid and timely claims forms; any service

12  award payable to the Plaintiffs that is approved by the Court; the payment to the

13  LWDA approved by the Court; and the payment of the attorney's fees and costs

14  approved by the Court.

15         All checks to Class Members shall clearly bear a marking that they will

16  expire ninety (90) days after issuance.  The Claims Administrator shall, within

17  sixty (60) days following such disbursement, file an accounting of such

18  disbursements with the Court, with copies to Class Counsel and Defendant's

19  counsel.

20         In the event that there is an appeal taken from the Order of the Court on the

21  application by Class Counsel for attorneys' fees and costs, then the Claims

22  Administrator shall not disburse any of the Gross Fund Amount to Class Counsel,

23  but shall, if and when the Effective Date has occurred, make distribution to Class

24  Members as provided in this Settlement Agreement.  The money which would,

25  absent an appeal, have been distributed to Class Counsel shall be held by the

26  Claims Administrator in the Escrow Account pending the outcome of the appeal.

27  If the award of fees and costs is affirmed on appeal and becomes final, then the

28  Claims Administrator shall disburse all of such funds to Class Counsel, including

14                2:12-cv-02188-CAS-(DTBx)

accrued interest.  If the result of any appeal or of proceedings following appeal in the event of a reversal is a reduction in the amount of fees and costs, then only the reduced amount shall be disbursed to Class Counsel and the balance shall be distributed to the Class Members in the same proportions as utilized in the initial distribution to Class Members.

31.        **Non-Monetary Conditions of Settlement**

In addition to the payment of the Gross Settlement Fund, Schneider agrees to the following terms and conditions in exchange for the release of claims, as set forth below.

### 31(a).  Termination of the AWS

Plaintiffs alleged in the First Amended Complaint that the alternative workweek election that Schneider held in June 2008 was invalid because Schneider failed to comply with the requirements of IWC Wage Order 9-2001.  Plaintiffs alleged that more than 5% of the workforce speaks Spanish, but that Schneider failed to provide the required disclosures in Spanish.  Plaintiffs further alleged that Schneider failed to provide a number of employees with written disclosures in any language.  On this basis, plaintiffs alleged that Schneider's alternative workweek schedule was never validly adopted by employees.  See FAC §§ 24, 43(a), 49.

Plaintiffs conducted extensive discovery on the validity of the alternative workweek election.  Plaintiffs took four depositions, including under Fed. R. Civ. P. 30(b)(6), that included extensive questioning regarding the validity of the election.  Plaintiffs propounded and Schneider responded to a number of interrogatories on this topic.  Plaintiffs requested and Schneider produced hundreds of documents related to this topic, including the disclosures Schneider claimed were provided, drafts of the disclosures, recommendations from Human Resources regarding the requirements for the disclosures, forms that employees signed in connection with the disclosure meetings and the election, sign-in sheets that employees filled out for disclosure meetings, the (anonymous) ballot forms that

employees used to vote in the election, and numerous emails related to the election and disclosures.

Schneider denies that the election was invalid, but recognizes that there is a good-faith dispute on this issue. Without admitting any wrongdoing, Schneider agrees and stipulates for purposes of settlement only that the Court may enter an injunction terminating the alternative workweek schedule on the basis that the June 2008 election was invalid. The effective date of the termination of the alternative workweek schedule is February 1, 2014. Once the alternative workweek schedule is terminated, Class Members will work a "normal" schedule of five 8-hour workdays, which will not be subject to the rules regulating alternative workweek schedules. Schneider will provide at least 30 days' advance notice to Class Members that the alternative workweek schedule is being terminated. This notice will be given at some point during the time period from December 1-December 16, 2013. Notice will be given by way of written notifications in Spanish and in English, and in group meetings. The Parties will meet and confer further regarding precise form and content of such notice.

### 31(b).  No Monitoring re AWS

No monitoring will be needed regarding substantial compliance with the AWS, in light of Schneider's anticipated termination of the AWS.

### 31(c).   Changes to Employee Time Records

Schneider agrees to implement a new written policy, which will be set forth in the Associate Resource Guide, regarding changes to employee time records as follows. The new policy will provide, at a minimum, that (1) only Human Resources personnel may make changes; (2) no changes may be made unless supported by documentation in which the employee either authorizes the change or, in the event of a dispute, acknowledges that s/he has been informed that the change is being made; (3) that Schneider has zero tolerance for changes made without supporting documentation, and (4) that such changes, absent a good-faith

explanation, will warrant corrective action, up to and including termination of employment; (5) employees have the right to access their time records upon request; and (6) that if the employee wishes to review video footage of the applicable time clock to help resolve any dispute about his or her time records, the employee shall promptly make such request, whereupon Schneider will request that U.S. Security make such footage available for review.

The new written policy will go into effect as of October 2, 2013, and Schneider will then provide training to both management and Class Members regarding the new policy. The training will be completed no later than three weeks after the effective date of the new policy, and Schneider will provide Plaintiffs' Counsel with confirmation in writing once the training has been completed.

Schneider agrees to self-audit to ensure that it is complying with its own written policy regarding changes to employee time records. For a period of one year after the Court enters an order granting final approval of the settlement, Schneider will provide to Plaintiffs' Counsel on a quarterly basis the monthly "timecard audit trails" that show the changes, if any, made to all Class Members' time records. Schneider will also provide Plaintiffs' Counsel with a random sample of documentation for twenty employees on which employees authorize or acknowledge changes to their time records. Upon reasonable request, Schneider will provide Plaintiffs' Counsel with additional documentation to support changes reflected in the timecard audit trails.

During this same period of time, on a quarterly basis, Schneider will also provide Plaintiffs' Counsel with a signed report, based upon information and belief, with an unambiguous statement that it is in compliance with its written policy regarding changes to employee time records and describing the steps taken to determine that it is in compliance. Or, if such a representation of compliance cannot be made, Schneider will explain how it reached that conclusion.

Disputes arising out of this auditing process, or the results of the process,

will be submitted, at Schneider's option, in the first instance to Mediation with Mr. Steven Pearl for resolution, prior to any presentation of such disputes to the Court. If Schneider exercises this option, it will pay for Mr. Pearl's fees that result.

### 31(d).  Use of Forms re Overtime

Schneider will discontinue use of any forms in which employees purport to waive any right to overtime pay.

### 31(e).  Reductions in Hours

Schneider has agreed to begin using a mechanism by which its hourly employees will be selected for a reduction in hours on a pre-determined, rotating basis, using objective criteria.  The criteria will be those described in Attachment 1 to this agreement.

### 31(f).  Meal/Rest Period Policies

Plaintiffs' First Amended Complaint alleges a number of meal and rest break violations.  Schneider has already revised its Associate Resource Guide to comply with California's requirements for meal and rest breaks, and counsel for Schneider has represented that Schneider's management has been trained on and is complying with the policies set forth in the Associate Resource Guide.  Schneider agrees to comply with its written policy regarding meal and rest breaks going forward.  In addition, the current policy in the Associate Resource Guide regarding meal and rest breaks will be revised to include the following language: "Employees are entitled to and should take their meal and rest breaks even if the breaks are not announced over the loudspeaker [or PA system]."

### 31(g).  Reporting Time Pay

To the extent Schneider asks employees to volunteer to leave before performing half of their usual or scheduled day's work, Schneider agrees to adopt a written form by October 2, 2013 that explains that, by agreeing to leave before performing half of their usual or scheduled day's work, s/he is giving up her right to receive reporting time pay under California law.  The form will state that the

SETTLEMENT AGREEMENT AND RELEASE

1  employee has the option to refuse to leave before performing half of her usual or

2  scheduled day's work, unless Schneider agrees to pay for reporting time consisting

3  of not less than two hours', and not more than four hours' pay.  The form will

4  provide an example for an employee who is scheduled to work eight hours on a

5  given day, but asked to leave after performing work for one hour.  Employees will

6  be asked to sign this form on days that they volunteer to leave before performing

7  half of their usual or scheduled day's work and agree to waive their right to receive

8  reporting time pay.  If an employee does not sign the form on the same day that he

9  or she leaves early, Schneider will pay the employee reporting time pay consistent

10  with the requirements of California law.  Post-dated forms are not valid.

11      Schneider has agreed to revise its Associate Resource Guide to include the

12  following language regarding reporting time pay:  "Your supervisor may ask you

13  to volunteer to leave before you have performed half of your usual or scheduled

14  day's work.  If you agree to leave, you will be giving up your right to reporting

15  time pay under California law (which is between two to four hours' of pay,

16  depending on how long you were scheduled to work that day). If you are asked by

17  SLTD if you want to leave work early on a voluntary basis, you have the option to

18  refuse to leave work before performing half of your usual or scheduled day's work,

19  unless SLTD agrees to pay for reporting time consisting of not less than two

20  hours', and not more than four hours' pay.  If you would like to leave before you

21  have performed half of your usual or scheduled day's work, without receiving

22  reporting time pay, you will be required to fill out a form acknowledging that you

23  are voluntarily giving up your right to receive reporting time pay on that day.  If

24  you choose not to sign the form, SLTD will either pay you reporting time pay or

25  will provide you with half of your usual or scheduled day's work."

26      Once Schneider revises its Associate Resource Guide and adopts the above-

27  described form, Schneider will then provide training to both management and

28  Class Members regarding the new policy.  The training will be completed no later

19      2:12-cv-02188-CAS-(DTBx)

SETTLEMENT AGREEMENT AND RELEASE

1   than three weeks after the effective date of the new policy, and Schneider will

2   provide Plaintiffs' Counsel with confirmation in writing once the training has been

3   completed.

4   32.    **Release of Claims**

5       Upon final settlement approval, each member of the Settlement Class,

6   regardless of whether that member submitted a timely claim, will release Schneider

7   and its present and former parent companies, affiliates, shareholders, employees,

8   subsidiaries, owners, managers, officers, directors, agents, representatives,

9   divisions, attorneys, insurers, successors and assigns from any and all claims,

10  debts, liabilities, or causes of action that relate to the allegations and claims

11  asserted or could have been asserted based on the facts alleged in the First

12  Amended Complaint, for the Class Period.  The Parties agree to seek dismissal

13  with prejudice of this action within ten (10) days after the Effective Date.

14  33.    **General Releases By Named Plaintiffs**

15      33(a).  Plaintiffs, and each of them, represent and warrant that except for the

16  claims set forth in the FAC, and except for Franklin Quezada's pending workers'

17  compensation claim(s) against Schneider and/or Schneider's insurance carriers,

18  they do not presently have on file, and further represent that they will not hereafter

19  file any grievances, complaints or actions against Schneider with any arbitrator, or

20  with any board, administrative agency or court, based upon any actions occurring

21  prior to the date of this Agreement, unless otherwise permitted by law.

22      33(b).  Mutual Release of All Claims.  Except as otherwise provided herein,

23  in consideration for the promises set forth above, Plaintiffs, and each of them, for

24  themselves and their heirs, successors and assigns, do hereby waive, release, acquit

25  and forever discharge Schneider and each of its respective agents, heirs, assigns,

26  representatives, administrators, and affiliates, and any of Schneider's past and

27  present corporate parents, administrators, subsidiaries, and affiliates and their

28  respective officers, directors, shareholders, employers, employees, fiduciaries,

1   benefit plan committees, claims administrators, agents, partners, insurers,

2   attorneys, heirs, successors, assigns, and related entities or corporations (the

3   "Released Parties"), from any and all claims, actions, charges, complaints,

4   grievances and causes of action (hereinafter collectively referred to in this

5   subparagraph as "claims"), of whatever nature, whether known or unknown, which

6   exist or may exist on her behalf as of the date of this Agreement, including but not

7   limited to any and all tort claims, contract claims, wage claims, wrongful

8   termination claims, disability claims, benefit claims, public policy claims,

9   retaliation claims, statutory claims, personal injury claims, emotional distress

10  claims, invasion of privacy claims, defamation claims, fraud claims, quantum

11  meruit claims, and any and all claims arising under any federal, state or other

12  governmental statute, law, regulation or ordinance, including, but not limited to

13  claims for violation of the Fair Labor Standards Act, the California Labor Code,

14  the California Wage orders, other state wage and hour laws, Americans with

15  Disabilities Act, Age Discrimination in Employment Act (ADEA), Employee

16  Retirement Income Security Act, Title VII, California Fair Employment and

17  Housing Act, California Family Rights Act and Family Medical Leave Act,

18  California Whistleblower Protection Act), Business & Professions Code Section

19  17200, personal injury claims, emotional distress claims, invasion of privacy

20  claims, defamation claims, fraud claims, and any and all claims arising under any

21  federal, state or other governmental statute, law, regulation or ordinance.  Except

22  as otherwise provided herein, Schneider and each of its agents, heirs, assigns,

23  representatives, administrators, and affiliates, and any of Schneider's past and

24  present corporate parents, administrators, subsidiaries, and affiliates and their

25  respective officers, directors, shareholders, employers, employees, fiduciaries,

26  benefit plan committees, claims administrators, agents, partners, insurers,

27  attorneys, heirs, successors, assigns, and related entities or corporations also waive

28  and release any and all possible claims or causes if action against Plaintiffs, and

1    each of them.

2         This release expressly excludes any workers' compensation claims Plaintiff

3    Franklin Quezada currently has pending against Schneider and/or its workers'

4    compensation insurance carriers.

5         33(c).  It is further understood and agreed by the Parties, and each of them,

6    that as a condition of this Agreement, they hereby expressly waive and relinquish

7    any and all claims, rights or benefits that they may have under California Civil

8    Code section 1542, which provides as follows:

9         "A general release does not extend to claims which the creditor does not

10   know or suspect to exist in his or her favor at the time of executing the release

11   which if known by him or her must have materially affected his or her settlement

12   with the debtor."

13        In connection with such waiver and relinquishment, the Parties, and each of

14   them, hereby acknowledge that they or their attorneys may hereafter discover

15   claims or facts in addition to, or different from, those which she now knows or

16   believes to exist, but that she expressly agrees to fully, finally and forever settle

17   and release any and all claims, known or unknown, suspected or unsuspected,

18   which exist or may exist on her behalf against any of the other Parties in the Action

19   at the time of execution of this Agreement, including, but not limited to, any and

20   all claims relating to or arising from Plaintiffs' employment with Schneider.  The

21   Parties, and each of them, further acknowledge, understand and agree that this

22   representation and commitment is essential to each of the other Parties and that this

23   Agreement would not have been entered into were it not for this representation and

24   commitment.

25        33(d).  Older Workers' Benefit Protection Act.  This Agreement is intended

26   to satisfy the requirements of the Older Workers' Benefit Protection Act, 29 U.S.C.

27   section 626(f).  Plaintiffs, and each of them, are advised to consult with an attorney

28   before executing this Agreement.

22                    2:12-cv-02188-CAS-(DTBx)

(i)     Acknowledgments/Time to Consider.  Plaintiffs, and each of them, acknowledge and agree that (a) they have read and understands the terms of this Agreement; (b) they have been advised in writing to consult with an attorney before executing this Agreement; (c) they have obtained and considered such legal counsel as they deem necessary; (d) they have been given twenty-one (21) days to consider whether or not to enter into this Agreement (although Plaintiffs may elect not to use the full 21 day period by signing the Agreement at their option); and (e) by signing this Agreement, they specifically acknowledge that they knowingly and voluntarily waive all rights or claims arising under the Age Discrimination in Employment Act of 1967.

(ii)    Revocation/Effective Date.  Plaintiffs, and each of them, may revoke their acceptance of this Agreement within seven (7) calendar days after the date they sign it.  Such revocation must be in writing and received by counsel for Schneider (Christopher M. Ahearn or Douglas J. Farmer, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Steuart Tower, Suite 1300, One Market Plaza, San Francisco, California, 94105; phone: 415-442-4810 fax:  415-442-4870, e-mail: chris.ahearn@odnss.com and douglas.farmer@odnss.com), before 5:00 p.m. Pacific Time on the seventh day from the date of their execution of this Agreement in order to be effective.  If Plaintiffs, and/or each of them, do not so revoke acceptance within the seven (7) day period, Plaintiffs' acceptance of this Agreement shall become binding and enforceable on the eighth day (the "Effective Date").

(iii)   Preserved Rights of Plaintiffs.  This Agreement does not waive or release any rights or claims that Plaintiffs, or each of them, may have under the Age Discrimination in Employment Act that arise after the execution of this Agreement.  In addition, this Agreement does not prohibit Plaintiffs, and each of them, from challenging the validity of this Agreement's waiver and release of

SETTLEMENT AGREEMENT AND RELEASE

claims under the Age Discrimination in Employment Act of 1967, as amended.

(e)     No Other Claims.  Upon settling the Claims, the Parties, and each of them, agree that they do not now have knowledge of any other potential or actual dispute with any of the other Parties other than the claims set forth in the FAC, and other than Franklin Quezada's pending workers' compensation claim(s) against Schneider and/or Schneider's insurance carriers.  The Parties, and each of them, understand and acknowledge that they do not seek and shall not be entitled to any payments or benefits from any of the other Parties at this time other than those expressly resolved by way of this Agreement.

34.   **Publicity**

The Parties will not make affirmative efforts to publicize (including by way of an agent or other third party) the terms of this Agreement or the Memorandum of Understanding, including to the press or media, and including by any internet postings, except that Plaintiff's Counsel may post a general description of the nature of the case on their website, and a general description of the terms of settlement.  Such posting shall not refer by name to Schneider, any of its affiliates, the Mira Loma/Eastvale warehouses, or case identifying information such as a case number.  To the extent that any member of the press or media contacts a party or its attorney, such persons shall not provide any comment, except that any party to this agreement or its attorney may publicly represent that this matter has settled on terms acceptable to the Parties.

In addition, this provision shall not limit communications, filings, or other disclosures:

34(a).  As reasonably necessary to obtain Court approval and carry out the administration and/or terms of this Agreement, including the Claims Administrator's use of an internet posting to provide information about the settlement to Class Members;

34(b).  To communicate with Class Members, including in group

1  meetings (though this provision does not authorize Plaintiffs or their counsel to

2  communicate with Class Members through the press);

3         34(c).  As required by applicable law;

4         34(d) . With the other Party's prior written consent; and /or

5         34(e).  To spouses, successors, governmental entities, Release

6  Persons, and to those advisors and employees necessary to advise the Parties,

7  including accountants and legal professionals.

8         34(f).  In court filings that Plaintiffs' Counsel or their co-counsel file

9  in other cases, e.g., declarations setting forth qualifications to act as class counsel.

10      This provision (Paragraph 34) will expire 24 months after the Court enters

11  an order granting final approval of the settlement agreement, or after the final

12  resolution of the *Carrillo* matter, whichever is later.

13  **General Provisions**

14  35.    It being the mutual intention of the Parties that the Settlement be

15  expeditiously approved by the Court and that the dispute between the Plaintiffs and

16  the Class Members on the one hand, and the Defendant, on the other hand, be

17  finally resolved, the Parties agree to use their best efforts to effectuate the terms

18  and conditions of this Settlement Agreement and to cooperate in good faith to

19  secure Court approval, both preliminary and final.

20  36.    This Settlement Agreement shall be construed and interpreted under the laws

21  of the State of California.

22  37.    It is agreed that the Parties have had the benefit of legal counsel of such

23  Party's choosing and that the language of the Settlement Agreement has been

24  carefully reviewed by counsel for all such Parties.  Accordingly, in the event that

25  any ambiguity appears in any term, condition or provision of this Settlement

26  Agreement, such ambiguity is to be resolved in favor of carrying out the

27  underlying purpose of the Settlement Agreement, i.e., to achieve a final settlement

28  of the dispute, rather than on the basis of resolving such ambiguity in favor of or

against a Party or Parties claimed to have been responsible for the drafting of the Settlement Agreement or of the portion claimed to be ambiguous.

38.     Should any dispute arise as to the validity, effect or interpretation of any portion of this Settlement Agreement, such dispute may be resolved through application by any of the Parties to the Court in the Action.

39.     The Parties agree, covenant and represent that this Settlement Agreement is and shall be construed to constitute a compromise of, and full accord and satisfaction of, disputed claims.

40.     The Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Settlement Agreement, and that this Settlement Agreement has been executed with the consent and advice of counsel.  It is agreed for the purposes of this Settlement Agreement only that, because Class Members are so numerous, it is impossible or impractical for all such members to execute this Settlement Agreement.  Therefore, the Parties agree, covenant, and represent that this Settlement Agreement may be executed on behalf of Class Members who do not timely opt out, by the Plaintiffs and by Class Counsel, and that this Settlement Agreement shall have the same force and effect as if individually executed by all Class Members.

41.     This Settlement Agreement comprises the entire agreement of the Parties. There is no other agreement, written, oral, express or implied, between the Parties with respect to the subject matter hereof, except this Settlement Agreement.  The Parties acknowledge that no representations, statements or promises made by the other Parties, or by their respective agents or attorneys, have been relied upon in entering this Settlement Agreement.  The Parties explicitly recognize California Civil Code Section 1625 and California Code of Civil Procedure Section 1856 (a), which provide that a written agreement is to be construed according to its terms, and may not be varied or contradicted by extrinsic evidence, and agree that no such extrinsic oral or written representations shall modify, vary, or contradict the terms

1   of this Settlement Agreement.

2   42.    This Settlement Agreement may be modified or amended only if such
3   modification or amendment is agreed to in writing and signed by the duly
4   authorized representative of the Parties hereto, which writing shall expressly state
5   the intent of the Parties to modify this Settlement Agreement and be approved by
6   the Court.

7   43.    This Settlement Agreement shall be binding upon and shall inure to the
8   benefit of the respective heirs, assigns, executors, administrators, successors,
9   subsidiaries, divisions and affiliated corporations and partnerships, past and
10  present, and trustees, directors, officers, shareholders, partners, agents and
11  employees, past and present, of Plaintiffs, the Affiliates and Released Parties.

12  44.    This Settlement Agreement may be executed in counterparts, it being agreed
13  that, when submitted to the Court, signature pages containing the signatures of all
14  of Plaintiffs, Class Counsel, Defendant's Counsel, and authorized representatives
15  of Defendant shall be attached.  It is agreed that photocopies, electronic copies or
16  facsimile copies of the Settlement Agreement may be used with the same force and
17  effect as the originals or duplicate originals thereof.

18

19  **AGREED AND ACCEPTED ON BEHALF OF THEIR RESPECTIVE**
20  **CLIENTS:**

21

22                                              TRABER & VOORHEES

23

24  DATED: Nov. 11    , 2013      By:

25                                              LAUREN TEUKOLSKY
                                                Class Counsel
26

27                                              OGLETREE, DEAKINS, NASH,
                                                SMOAK & STEWART, P.C.
28

1

2

3  DATED:_____, 2013      By:_____

4                                          DOUGLAS J. FARMER
                                           Attorneys for Defendant Schneider
5                                          Logistics Transloading &
                                           Distribution, Inc.
6

7

8  **AGREED AND ACCEPTED:**

9

10              **PLAINTIFFS FOR THEMSELVES AND**

11         **ON BEHALF OF THE SETTLEMENT CLASS:**

12

13

14

15  DATED: 11/4/2013, 2013     By:_____

16                                 FRANKLIN QUEZADA
                                   Named Plaintiff & Class
17                                 Representative

18

19

20  DATED: 11/04/, 2013      By:_____

21                              VICTOR RAMIREZ
                                Named Plaintiff & Class
22                              Representative

23

24

25  DATED:_____, 2013      By:_____

26                                       ELIZABETH GUTIERREZ
                                         Named Plaintiff & Class
27                                       Representative

28

                              28              2:12-cv-02188-CAS-(DTBx)
                      SETTLEMENT AGREEMENT AND RELEASE

1
2
3  DATED:_____, 2013      By:_____
4                                        DOUGLAS J. FARMER
                                         Attorneys for Defendant Schneider
5                                        Logistics Transloading &
6                                        Distribution, Inc.
7
8  **AGREED AND ACCEPTED:**
9
10          **PLAINTIFFS FOR THEMSELVES AND**
11        **ON BEHALF OF THE SETTLEMENT CLASS:**
12
13
14
15 DATED:_____, 2013      By:_____
                                         FRANKLIN QUEZADA
16                                       Named Plaintiff & Class
17                                       Representative
18
19
20 DATED:_____, 2013      By:_____
                                         VICTOR RAMIREZ
21                                       Named Plaintiff & Class
22                                       Representative
23
24
25 DATED: NOV. 01_____, 2013        By: Elizabeth Gutierrez
                                         ELIZABETH GUTIERREZ
26                                       Named Plaintiff & Class
27                                       Representative
28

DATED: _November 3rd_, 2013       By: _[signature]_
                                  WALTER DOWNING
                                  Named Plaintiff & Class
                                  Representative


**DEFENDANT**

|  |  |
|---|---|
|  | SCHNEIDER LOGISTICS TRANSLOADING & DISTRIBUTION, INC. |
| DATED:_____, 2013 | By:_____ |

DATED: __11/11__, 2013       By: _____

DOUGLAS J. FARMER

Attorneys for Defendant Schneider
Logistics Transloading &
Distribution, Inc.

**AGREED AND ACCEPTED:**

**PLAINTIFFS FOR THEMSELVES AND
ON BEHALF OF THE SETTLEMENT CLASS:**

DATED: _____, 2013       By: _____

FRANKLIN QUEZADA
Named Plaintiff & Class
Representative

DATED: _____, 2013       By: _____

VICTOR RAMIREZ
Named Plaintiff & Class
Representative

DATED: _____, 2013       By: _____

ELIZABETH GUTIERREZ
Named Plaintiff & Class
Representative

DATED: _____, 2013      By: _____

                                        WALTER DOWNING
                                        Named Plaintiff & Class
                                        Representative


                                **DEFENDANT**


|  | SCHNEIDER LOGISTICS TRANSLOADING & DISTRIBUTION, INC. |
|---|---|
| DATED: _11_/_11_, 2013 | By: _William J. Morrison_ (signature) |

29                    2:12-cv-02188-CAS-(DTBx)
SETTLEMENT AGREEMENT AND RELEASE

ATTACHMENT 1
WORK HOURS REDUCTIONS – METHOD OF ROTATION

The following outlines the process by which SLTD associates will be selected for a reduction in work hours should such reductions become necessary, consistent with the terms of the Parties' settlement agreement.

A list of associates to be considered for rotation hours will be created. When a reduction in hours is necessary, the following general procedures and the previously mentioned list will be used:

1.  The list will identify the associate by name, department, building, shift and other information needed to determine an assignment of hours to associates available for work that day.

2.  Each associate on the rotation list will be ranked by a committee consisting of a member of Human Resources, upper management and a supervisor. The initial rankings will be provided to Plaintiffs' counsel for evaluation and feedback. SLTD's Assistant General Manager will administer the rotation process. The associate's primary, secondary, and tertiary job functions will be identified in the list of associates. For example, associate Jorge Negrete would be assigned a designation (e.g., from "primary" to "tertiary" with 1 being the primary) for each job for which he is trained. In this example, Jorge might be identified as "primary" or a (1) for Ship Clerk work, "secondary" for Putaway Driver, and "tertiary" for Double Stacker. If he is unable to perform a particular job or type of work, or is not skilled in or has not been trained for it, he would not receive a designation for that position.

3.  Associates would not be considered for rotation into a job for which they are not trained. If they are trained in a job, they would have the right to refuse to be considered for rotation into any job, but may have hours reduced  if they are not skilled to perform other job functions where there is work available. Cross training for jobs would be made available but would not be mandatory.

4.  When a reduction in hours becomes necessary for an associate, other job categories in the shift would be reviewed for available hours. Available hours would be assigned by going first to associates based on their position on the list and designation for the job with hours available. For example, if Ship Clerk hours are available and associate Lola Beltran is the first person on the list to be  as "primary" for Ship Clerk work, she would be offered those hours. If Lola is not available for work, or she accepts the hours but more hours are available than she can take on, the next person going down the list designated as "primary" for Ship Clerk work would be offered the work. If no persons designated as "primary"  are available, associates designated as "secondary" for the position, starting from the top of the list, would then be offered the work, and so on until the available Ship Clerk hours have been assigned.

5.  Once an associate has been assigned hours from the rotation list, their name would go to the bottom of the list. As other associates perform work and move to the bottom of the list, that associate would move toward the top of the list.

6.  Associates on the rotation list who turn down work for personal reasons, would go to the bottom of the list. Unavailability to take work for reasons authorized by SLTD policy or law, such as time off from work authorized by company policy, would not result in rotation to the bottom of the list.

# EXHIBIT A

---

### *Quezada, et al. v. Schneider Logistics and Transloading Distribution, Inc.*
Case No. CV 12-2188 CAS (DTBx)
The Honorable Christina A. Snyder

---

### NOTICE TO CLASS OF PROPOSED SETTLEMENT

To:     All hourly employees who currently work or worked for Schneider Logistics Transloading and Distribution, Inc. ("Schneider") at its Mira Loma (Eastvale) facility, and who have been subject to an alternative workweek schedule at any time from March 15, 2008 through _____ [the preliminary approval date] (in this Notice called "Class Members").

### READ THIS NOTICE --- YOU MAY BE ENTITLED TO MONEY

You may be entitled to money from a settlement of a class action lawsuit against Schneider. You are not being sued.  Schneider is being sued by four employees, Franklin Quezada, Elizabeth Gutierrez, Victor Ramirez, and Walter Downing, who are called "the Plaintiffs" in this Notice.  The parties have reached an agreement, called a "settlement."  The settlement says that Schneider will pay $4.7 million in exchange for the Plaintiffs ending the lawsuit.  **TO GET MONEY FROM THE SETTLEMENT YOU MUST COMPLETE AND SEND IN THE CLAIM FORM INCLUDED WITH THIS NOTICE BY_____, 2013.**

If you do not file a Claim Form by this date, you will lose your right to receive money. *Schneider may not retaliate against you for getting money from the settlement, and may not reward you for excluding yourself from the settlement.*

---

### WHY SHOULD YOU READ THIS NOTICE?

---

This Notice tells you about your rights.  By reading this notice, you will learn how to file a Claim Form to get money.  This Notice also tells you how to remove yourself from the settlement if you do not want to be a part of it.  If you do not want to be a part of the settlement, you will not get any money from this settlement but you will preserve your right to sue Schneider on your own if you want to.  Finally, this Notice tells you how you can tell the Court if you disagree with the settlement without losing your right to get money from it.

---

### WHAT IS THE LAWSUIT ABOUT?

---

On March 15, 2012, the Plaintiffs filed a lawsuit against Schneider in federal court in the Central District of California.  The Lawsuit alleges that Schneider held an invalid alternative workweek

Page **1** of 6

schedule ("AWS") election in June 2008, and improperly implemented the AWS by failing to provide employees with a regular schedule of four 10-hour workdays.  This resulted in employees not being paid proper overtime wages.  The Lawsuit also claims that Schneider failed to pay proper reporting time pay, did not provide employees with proper meal and rest breaks, improperly deducted 30 minutes for meal periods on days that employees worked shifts of more than 12 hours, failed to keep accurate time and pay records, failed to provide employees with accurate pay stubs, and failed to pay all wages due to employees upon termination or resignation.  The Plaintiffs brought the lawsuit on behalf of themselves, and also on behalf of other employees who worked in the Eastvale warehouses, and who were subject to the AWS ("Class Members").  The Court has certified this case as a class action lawsuit for purposes of settlement.  The Lawsuit sought monetary compensation, penalties, injunctive and declaratory relief, attorneys' fees and costs.

Schneider denies all of the allegations in the Lawsuit, and denies that it did anything wrong.  However, the parties have agreed to settle the Lawsuit to avoid further expense and the risks of litigation.

---

**WHAT DOES THE SETTLEMENT AGREEMENT SAY?**

---

**The agreement says that Schneider will pay $4,700,000 and Plaintiffs will end their lawsuit.** Out of that amount,

- Approximately $14,500 will be used to pay the Claims Administrator, who will review your claims, calculate your payment, and send you your check.
- $5,000 will be paid to the Labor Workforce Development Agency, the government agency responsible for making sure employers follow the law.
- The Court will decide how much to pay the Plaintiffs for their time and effort in bringing this lawsuit in addition to any other award they get from this settlement, but it will be no more than $10,000 each.
- The Court will decide how much to pay the Plaintiffs' attorneys for the costs of bringing this lawsuit, which are estimated to be about $48,000.
- The Court will also decide the amount of attorneys' fees to be awarded to the Plaintiffs' attorneys, who are asking for $1,560,000 (or 1/3 of the settlement amount).

**AN ESTIMATED $3,032,500 WILL BE DIVIDED BETWEEN CLASS MEMBERS WHO SEND IN THE CLAIM FORM INCLUDED WITH THIS NOTICE.**

Based on pay records, about 568 Class Members can participate in the settlement.

Before anyone can be paid, the Court must approve the settlement terms.  Once the Court gives its final approval, the settlement will resolve these claims for every Class Member who does not remove himself or herself from the settlement.  Class Members who do not remove themselves will lose their right sue Schneider separately for these claims, even if they do not return a Claim Form.

<hr>

**HOW DO I GET MONEY FROM THE SETTLEMENT?**

<hr>

To get money from this settlement, you must fill out and sign the Claim Form included with this Notice.  **YOU MUST SEND IN A COMPLETE, SIGNED CLAIM FORM NO LATER THAN _____, 2013 TO GET MONEY.**  The completed and signed Claim Form must be mailed to the Claims Administrator, postmarked no later than _____, 2013.  The mailing address of the Claims Administrator is:

> Quezada v. Schneider Claims Administrator
> RG/2 Claims Administration LLC
> PO Box 59479
> Philadelphia, PA 19102-9479

Additional information is also at **www.schneidersettlement.com**.

<hr>

**HOW MUCH MONEY WILL I GET?**

<hr>

Class Members who make claims will share approximately $3,032,500 based on the length of time each Class Member worked at Schneider.  Based on our preliminary calculations, you are entitled to receive approximately $_____.  This estimated amount may change depending on the number of Class Members who file claims.

<hr>

**WHAT ARE THE OTHER TERMS OF THE SETTLEMENT?**

<hr>

Schneider has also agreed to the following terms in the Settlement:

- **Termination of the Alternative Workweek Schedule**: The Court will enter an order ending the alternative workweek schedule as of February 1, 2014.  Class Members will then work a "normal" schedule of five 8-hour workdays, which will not be subject to the rules regulating alternative workweek schedules.

- **Changes to Employee Time Records**: Schneider will implement a new policy about how managers can make changes to employee time records. Under the new policy, only certain personnel may make changes; changes must be supported by proper documentation; employees have a right to access their time records on request; and employees can request access to video footage to help resolve disputes about the hours they worked.
- **Overtime Pay Waivers**: Schneider will stop using any forms for waiving overtime pay.
- **Fair System for Lack of Work Days**: Schneider will start using a new and objective system for selecting employees for reduced hours when there is not enough work for everyone to work a full 40-hour week.
- **Meal and Rest Break Policies**: Schneider will comply with its new written meal and rest break policies, including that employees should take breaks even when they are not announced over the loudspeaker.
- **Reporting Time Pay**: Under a new policy, if Schneider asks employees to volunteer to leave before performing half of their usual or scheduled days' work, employees will have to sign a new form explaining that if they agree to leave, they are giving up their right to receive reporting time pay under California law. If employees do not want to leave early, they cannot be required to unless Schneider pays reporting time pay.

---

### WHAT IF I DO NOT WANT TO BE PART OF THE SETTLEMENT?

---

If you do not want to participate in this settlement, you must tell the Claims Administrator in writing of your decision to "opt-out" of the settlement. **If you "opt-out," you will not get any money from the settlement, but you will not be bound by the terms of the settlement either.** This means that you will preserve your rights to sue Schneider for these claims on your own. If you do not opt-out of the settlement, you will be bound by its terms even if you do not return a Claim Form and even if you do not receive any money. This means you will not be able to sue Schneider for these claims on your own.

Any request to opt-out of the settlement must be sent to the Claims Administrator and postmarked no later than _____, 2013. The opt-out request should state: "I EXERCISE MY RIGHT TO OPT-OUT OF THE CLASS ACTION LAWSUIT KNOWN AS *QUEZADA V. SCHNEIDER LOGISTICS*, CASE NO. CV 12-2188. I UNDERSTAND THAT BY OPTING OUT I WILL NOT BE AWARDED ANY MONEY FROM THE CLASS ACTION SETTLEMENT OF THIS LAWSUIT, BUT THAT I AM PRESERVING ANY RIGHTS I WOULD OTHERWISE HAVE TO SUE SCHNEIDER FOR THE CLAIMS MADE IN THE LAWSUIT." Your opt-out request must also include your full name, your current address, the date, and your signature.

Send the opt-out request directly to the Claims Administrator at the following address:

Quezada v. Schneider Claims Administrator

RG/2 Claims Administration LLC
PO Box 59479
Philadelphia, PA 19102-9479

---

**WHAT IF I DON'T AGREE WITH THE SETTLEMENT?**

---

If you do not agree with the settlement, including the amount of attorneys' fees, you must send an objection to the Claims Administrator saying why you object to the settlement postmarked no later than _____, 2013.  If you do not "opt out" you may object and still get money if the Court approves the settlement. If you do not "opt-out" you may also, if you wish, appear at the Settlement Fairness Hearing set for _____, 2013 at_____ ___.m. in Courtroom 5 of the Central District Courthouse, 312 N. Spring St., Los Angeles, CA 90012, and discuss your objection with the Court and the parties.  You may also hire your own attorney, and that attorney can appear on your behalf at the Settlement Fairness Hearing.

To be valid, your objection must contain the following information: (1) your full name, current address, telephone number, and signature, (2) your objections to the settlement, (3) the reasons for your objections, (4) whether you plan to come to the Settlement Fairness Hearing, (5) if you plan to bring an attorney to the Settlement Fairness Hearing, the name of your attorney, (6) a list of any objections that you or your attorney have submitted to any class action settlement in any court in the United States within the last five years, or a statement that neither you nor your attorney have objected to any class action settlement in a court in the United States within the last five years. Your objection should be mailed to the Claims Administrator at the following address:

Quezada v. Schneider Claims Administrator
RG/2 Claims Administration LLC
PO Box 59479
Philadelphia, PA 19102-9479

IF YOU INTEND TO OBJECT TO THE SETTLEMENT, BUT ALSO WISH TO RECEIVE MONEY FROM THE SETTLEMENT, YOU STILL <u>MUST</u> FILE YOUR CLAIM FORM BY _____, 2013.  IF THE COURT APPROVES THE SETTLEMENT DESPITE ANY OBJECTIONS AND YOU HAVE NOT RETURNED YOUR CLAIM FORM, YOU WILL NOT RECEIVE ANY MONEY FROM THE SETTLEMENT.

| WHO ARE THE ATTORNEYS? | |
|---|---|
| **Class Counsel: Address, Phone and Fax** | **Class Counsel: Names of Attorneys** |
| LAW OFFICES OF TRABER & VOORHEES 128 North Fair Oaks Avenue | Theresa M. Traber Lauren Teukolsky |

| Pasadena, California 91103<br>Phone:    (626) 585-9611<br>Fax:        (626) 585-1400 | Marisa Hernández-Stern (Spanish-speaking) |

## WHO IS THE CLAIMS ADMINISTRATOR?

The Claims Administrator processes all claims, calculates each Class Members' settlement award, and processes Class Members' requests to be excluded from the settlement.  The Claims Administrator in this case is RG2 and can be reached at the following address:

> Quezada v. Schneider Claims Administrator
> RG/2 Claims Administration LLC
> PO Box 59479
> Philadelphia, PA 19102-9479
> ph: +1 215 979 1620
> fax: +1 215 979 1695

Contact the Claims Administrator for more information or to ask about the status of your claim form.  Additional information is also at **www.schneidersettlement.com**.

## OTHER IMPORTANT INFORMATION

There is a document called the "Settlement Agreement" that explains the entire agreement between the parties in detail.  You may request a copy of the Settlement Agreement from the Claims Administrator, or go to **www.schneidersettlement.com**.

**This Notice only summarizes the lawsuit, the settlement, and related matters.  For more information, you may inspect the Court files at the Office of the Clerk, 312 N. Spring Street, Room G-8, from 8:30 a.m. to 4:00 p.m., Monday through Friday.**

**PLEASE DO NOT CONTACT THE COURT FOR INFORMATION ABOUT THIS SETTLEMENT OR THE CLAIMS PROCESS. IF YOU HAVE QUESTIONS, YOU MAY CONTACT THE PLAINTIFFS' ATTORNEYS, FREE OF CHARGE.**

# EXHIBIT B

# CLAIM FORM

IF YOU WANT TO RECEIVE YOUR SHARE OF THIS CLASS ACTION SETTLEMENT, ***COMPLETE***, ***SIGN***, AND ***MAIL*** THIS FORM NO LATER THAN _____, 2014.

Mail to:          Quezada v. Schneider Claims Administrator
                  RG/2 Claims Administration LLC
                  PO Box 59479
                  Philadelphia, PA 19102-9479

***Claim forms postmarked later than _____ will not be accepted.***

---

*Quezada v. Schneider Logistics Transloading and Distribution, Inc.*, Case No. 12-2188

United States District Court, Central District of California

## A.  YOUR IDENTIFICATION INFORMATION

Is this your correct name and address?

> Name
> Address
> City, State, Zip

If not, write in your correct name and address here:

Please provide a telephone number so we can reach you:          ( __ __ __ ) __ __ __ -- __ __ __ __

The Social Security Number that we have for you is: _____

If this is *incorrect*, please enter your correct Social Security Number or Tax Identification Number here:

SSN or TIN: _____

## B.       THE AMOUNT OF TIME YOU WORKED AT SCHNEIDER

The amount of money you get from this settlement depends on how many weeks you worked at Schneider during the "Class Period," which is from March 15, 2008 to ____, 2013.  According to our records, your start date and end date (if applicable) at Schneider is as follows:

Start Date:          _____          End Date: _____

**Questions? Call 1-800-___-____ toll-free**

Please note that if you started working for Schneider *before* March 15, 2008, this time will not be taken into account for purposes of calculating your work weeks. Similarly, if you worked for Schneider *after* ___, this time will also not be taken into account. Only time worked during the Class Period will be counted for purposes of calculating your settlement amount.

We are going to **subtract** from your work weeks the amount of time you took for any leaves of absence (such as family leave or medical leave), as well as the amount of time you *accrued* (but not took) for vacation or flex time, per the Associate Resources Guide.

Our records show that, during the Class Period, you took ___ days for leaves of absence.

Our records show that, during the Class Period, you accrued ___ days for vacation and flex time.

Once we subtract this time, the total number of work weeks that you worked during the Class Period is _____.

If you believe that any of this information is incorrect, explain your disagreement in the box below, and include any supporting documentation when you mail back this Claim Form.

<br><br><br><br><br>

## C.      SUBMISSION TO COURT JURISDICTION AND AGREEMENT WITH SETTLEMENT

By signing this form, you agree to the following statement:

I have received the Notice of Class Action Settlement. I submit this Proof of Claim under the terms of the Proposed Settlement described in the Notice. I also submit to the jurisdiction of the United States District Court with respect to my claim as a class member and for purposes of enforcing the release of claims stated in the Settlement Agreement. The full and precise terms of the proposed settlement are contained in the Settlement Agreement filed with the Court. I further acknowledge that I am bound by the terms of any Court judgment that may be entered in this class action. I agree to provide additional information to support any of my claim(s) if required to do so.

## D.      QUESTIONS ABOUT THIS FORM

If you have any questions about this Claim Form or how to properly submit your claim, please contact:

> Quezada v. Schneider Claims Administrator
> RG/2 Claims Administration LLC
> PO Box 59479
> Philadelphia, PA 19102-9479

**Questions? Call 1-800-___-____ toll-free**

2

ph: +1 215 979 1620
fax: +1 215 979 1695

Additional information is at www.schneidersettlement.com.

## E.  DECLARATION UNDER PENALTY OF PERJURY

*If you do not sign below, you will not receive money from this settlement.*

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing information, and any additional information that I have submitted in connection with my claim, is true and correct.

Executed on _____ at _____, _____.
                     Date                          City                      State

_____
Signature of Claimant

Name (print): _____

END OF CLAIM FORM

**Questions? Call 1-800-___-____ toll-free**

3

EXHIBIT C

*Quezada et al. v. Schneider Logistics Transloading and Distribution, Inc.*
Case No. CV 12-2188, United States District Court, Central Dist. of California

## REMINDER NOTICE

On _____, 2013 we mailed you a Notice and Claim Form regarding the proposed class action settlement in *Quezada et al. v. Schneider Logistics*.

This is a reminder that if you want to receive your money share of the Settlement, please complete and mail your Claim Form to the address below.  The form must be postmarked by **_____, 2014**.

If you have any questions or would like a new Notice and Claim Form, please contact the Settlement Administrator using the phone number below.  You may also visit the website listed below:

**INSERT CONTACT INFO HERE**

Exhibit B

Quezada v. Schneider

Hours Broken Down by Task

| Task | Hours | Description |
|---|---|---|
| Case Management | 31 | All tasks related to case management, including drafting the Rule 26(f) report, attending Rule 26(f) conference, meeting and conferring with opposing counsel on case management issues (such as continuing dates), negotiating, drafting and filing stipulations related to case management, and reviewing Court orders related to case management. |
| Class Contact | 589 | All tasks related to maintaining contact with the class, including interviewing class members, sending updates to class members, meeting with class members, obtaining and reviewing documents from class members, drafting and entering into retainer agreements, maintaining class member contact information and files, and responding to phone calls from class members. |
| Complaint | 67 | All tasks related to drafting and filing of complaint and amended complaints, including legal research, PAGA exhaustion, meeting and conferring with opposing counsel, drafting a motion for leave to amend (which was not filed), and reviewing the answer to the complaint. |
| Discovery | 1602 | All discovery-related tasks, including drafting and responding to written discovery, drafting and entering into a protective order, meeting and conferring with opposing counsel, and taking and preparing for depositions. |
| Mediation | 144 | All tasks related to mediation on or before the date of signing the Memorandum of Understanding, including logistics, participating in the in-person mediation, post-mediation phone conferences with the mediator and opposing counsel, drafting the mediation brief, preparing for mediation, preparing a mediation presentation, and drafting memorandum of understanding including non-monetary settlement terms. |
| Motion Practice | 338 | All motion-related tasks, including meeting and conferring with opposing counsel prior to the filing of a motion, researching the legal authority related to the motion, and drafting and filing the motion. The four motions are: motion for leave to file a First Amended Complaint (drafted but not filed); motion for relief under Rule 23; motion for class certification (partially drafted but not filed); and an ex parte application related to putative class member discovery. |
| Paralegal | 156 | All paralegal tasks, including creating tables of contents and tables of authorities for motions, providing paralegal support on discovery and motion practice, translation of documents between English and Spanish. |
| Pre-Filing Investigatio | 47 | Investigation into the facts of the case that pre-dated the filing of the complaint in March 2012.  For various administrative reasons, much of the pre-investigation time has not been included here, but plaintiffs can provide the additional pre-investigation time if necessary. |
| Press | 10 | All press-related activity, including drafting press releases and speaking to members of the media regarding the case. |

Quezada v. Schneider

Hours Broken Down by Task

| | | |
|---|---|---|
| **Research** | 234 | Legal research on case issues that is unrelated to a specific motion. |
| **Settlement** | 298 | All tasks related to settlement that post-dated the signing of the Memorandum of Understanding, including drafting the settlement agreement, drafting the motion for preliminary approval of settlement and proposed order, reviewing policy changes from Schneider, meeting and conferring with opposing counsel regarding settlement issues, drafting class notice, the claim form and reminder postcard, appearing before the Court and updating the Court regarding settlement, providing direction to the claims administrator, and setting up the joint escrow settlement account. |
| **Strategy or Update** | 78 | Meetings and emails between attorneys and/or staff to discuss case strategy or update each other on developments in the case. Drafting case strategy memos and emails. |
| **Supervise Staff** | 12 | Attorney supervision of staff on projects such as calendaring of case-related dates, document review, and contacting the Court with questions. |
| **Time and Pay Analysis** | 35 | Tasks related to analysis of class member time and pay records. Some of this time is included in the "Mediation" category, above. |
| **TOTAL** | 3641 | |

Exhibit C

Case 2:13-cv-02188-CAS-DTB Document 97-30 Filed 02/10/14 Page 54 of 67 Page ID
#:3019
Case 8:09-cv-01090-VBF-RNB Document 460 Filed 07/01/11 Page 1 of 2 Page ID
#:13619

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  **SACV 09-1090-VBF(RNBx)**          Dated: **July 1, 2011**

Title:   Manuel Vasquez, et al. -v- Tony Rackaukas, et al.

---

PRESENT: HONORABLE VALERIE BAKER FAIRBANK, U.S. DISTRICT JUDGE

Joseph Remigio                        None Present
Courtroom Deputy                      Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:   ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                          None Present

**PROCEEDINGS (IN CHAMBERS):**        **RULING ON SUBMITTED MATTER:**
                                      **PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**
                                      **AND COSTS (DKT. 414)**


     After reading the papers filed and considering counsel's oral
arguments at the hearing on June 30, 2011, this court took the
Plaintiffs' Motion for Attorneys Fees and Costs (dkt. 414) under
submission.  After further consideration of the evidence and legal
authorities, the court GRANTS the Plaintiffs' Motion, but reduces the
fees and costs awarded as follows.  The Court hereby awards in favor of
the Plaintiffs and against the Defendants, jointly and severally, the
amount of $3,237,249.00 in attorneys' fees plus $24,412.24 in costs,
resulting in a total fees and cost award of $3,261,661.24.

     The court finds as follows:

     1.  Plaintiffs are prevailing parties under federal law and are
entitled to fees and costs under 42 U.S.C. Section 1988.

     2.  Plaintiffs are also the prevailing parties under California law
and are entitled to attorneys fees and costs pursuant to California Code
of Civil Procedure Section 1021.5.


MINUTES FORM 90                       Initials of Deputy Clerk    _jre_
CIVIL - GEN

-1-

Case 2:12-cv-02188-CAS-DTRB Document 97-3 Filed 02/10/14 Page 55 of 67 Page ID
#:3902
Case 8:09-cv-01090-VBF-RNB Document 460 Filed 07/01/11 Page 2 of 2 Page ID
#:3802

3. There are no special circumstances which make the award under count one (Section 1983) or count two (California law) unjust.

4. The court finds that the fees and costs sought have been shown to be reasonable and necessary by the ACLU/SC and MTO, with the exception of fees sought by the ACLU/SC for the law student interns' work. There is insufficient support for the billing rate of the interns and the reasonableness of their hours on tasks. On the other hand, there is sufficient evidence as to the lawyers' and paralegals' hourly rates and time spent. Accordingly, as to MTO, their lodestar is $929,880.00 in prejudgment attorneys' fees plus post judgment fees of $44,116.50, totaling $973,996.50; as to ACLU/SC, their lodestar is $1,677,575.00 in prejudgment attorneys' fees plus post judgment fees of $64,186.50, totaling $1,741,761.50.

5. Under California law, the Plaintiffs are also entitled to a multiplier of attorneys fees incurred before judgment, which was entered in this case on May 10, 2011. The Court considers (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). The Court finds that a 1.2 multiplier is appropriate in this case in light of the above factors. Applying this multiplier to fees incurred before judgment, but not after judgment, the total fee award is $3,237,249.00.

6. There are no special circumstances in this case that render award of fees unjust.

7. The total costs claimed are reasonable and necessary and are awarded in the total amount of $24,412.24 ($7,908.65 as to the ACLU and $16,503.59 as to MTO).

8. The court finds the award shall be awarded against the Defendants jointly and severally, or pursuant to the Defendants' stipulation. The court finds insufficient grounds to apportion the amounts at this time.

Exhibit D

1 | HECTOR O. VILLAGRA (BAR NO. 177586)
hvillagra@aclu-sc.org
2 | BELINDA ESCOBOSA HELZER (BAR NO. 214178)
bescobosahelzer@aclu-sc.org
3 | ACLU FOUNDATION OF SOUTHERN CALIFORNIA
2140 W. Chapman Ave., Suite 209
4 | Orange, California 92868
Telephone: (714) 450-3962
5 | Facsimile:  (714) 450-3969

6 | MARK D. ROSENBAUM (BAR NO. 59940)
mrosenbaum@aclu-sc.org
7 | PETER BIBRING (BAR NO. 223981)
pbibring@aclu-sc.org
8 | ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 W. Eighth Street
9 | Los Angeles, California 90017
Telephone: (213) 977-9500
10 | Facsimile:  (213) 977-5299

11 | ADDITIONAL COUNSEL LISTED ON NEXT PAGE

12 | Attorneys for Plaintiff-Petitioners

13 |

14 | **UNITED STATES DISTRICT COURT**

15 | **CENTRAL DISTRICT OF CALIFORNIA**

16 | MANUEL VASQUEZ, et al.,                    CASE NO. SACV 09-1090 VBF(RNBx)

17 |                    Plaintiff-Petitioners,   **DECLARATION OF JOSEPH J. YBARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

18 |     vs.

19 | TONY RACKAUCKAS, et al.,

20 |                    Defendants-               Hearing:  June 20, 2011
                   Respondents.               Time:      1:30 p.m.
21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

13962455.1

YBARRA DECL. ISO MOT. FOR ATTYS.'
FEES; NO. SACV-09-1090 VBF(RNBX)

JOSEPH J. YBARRA (State Bar No. 218130)
Joseph.Ybarra@mto.com
JACOB S. KREILKAMP (State Bar No. 248210)
Jacob.Kreilkamp@mto.com
LAURA D. SMOLOWE (State Bar No. 263012)
Laura.Smolowe@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

SARALA V. NAGALA (State Bar No. 258712)
Sarala.Nagala@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission, Twenty-Seventh Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Attorneys for Plaintiff-Petitioners

1    TO THE HONORABLE COURT AND ALL COUNSEL OF RECORD:

2         I, Joseph J. Ybarra, hereby declare:

3         1.    I am a partner in the law firm of Munger, Tolles & Olson LLP

4    ("MTO"), which, along with the American Civil Liberties Union Foundation of

5    Southern California ("ACLU/SC"), served as co-counsel for Plaintiffs in the above-

6    referenced matter.  I am a member of the California State Bar.  The facts set forth

7    herein are known to me personally and, if called as a witness, I could and would

8    testify competently thereto.

9    **I.    OVERVIEW OF BILLING PROCEDURES**

10        2.    MTO has a standard billing process that it follows.  Each timekeeper,

11   including attorneys and staff (paralegals, cases clerks, litigation interns and

12   automated litigation support personnel), records daily time logs.  Those logs reflect

13   the time worked on each matter for that day and a description of the work done.

14   Those records are then entered into the Firm's billing system, broken out by client

15   and, for each client, the relevant matter.  MTO follows this procedure for both

16   standard and *pro bono* engagements (such as this one) and did so in working on this

17   litigation.

18        3.    MTO's hourly rates generally increase on January 1 of each year.  The

19   last increase was effective January 1, 2011.

20   **II.    INFORMATION ABOUT THE MTO ATTORNEYS ON THE CASE**

21        4.    As stated above, I am a partner in the law firm of Munger, Tolles &

22   Olson LLP.  I started at the firm in November 2002 and was elected to the

23   partnership effective January 1, 2009.  I specialize in complex commercial

24   litigation.  Prior to starting at MTO, I served as a law clerk for the Honorable A.

25   Howard Matz (United States District Court for the Central District of California).  I

26   obtained my J.D. from USC Law School in 2001, where I was elected to the Order

27   of the Coif.  My billing rate in 2011 was $550 per hour.

28        5.    Jacob A. Kreilkamp joined MTO in 2005.  Prior to starting with the

13962455.1                          - 1 -          YBARRA DECL. ISO MOT. FOR ATTYS.'
                                                   FEES; NO. SACV-09-1090 VBF(RNBX)

firm, Mr. Kreilkamp served as a law clerk for the Honorable Kimba M. Wood (United States District Court for the Southern District of New York) and for the Honorable Raymond C. Fisher (United States Court of Appeals for the Ninth Circuit). Mr. Kreilkamp received his J.D. from New York University in 2003. In 2011, his billing rate was $505 per hour.

6.      Marina A. Torres joined MTO in 2008. Ms. Torres received her J.D. from Stanford University in 2008, where she was a member of the *Stanford Law Review*. In 2011, her billing rate was $385 per hour.

7.      Laura D. Smolowe joined MTO in 2009. Prior to starting with the firm, she served as a law clerk for the Honorable Dean D. Pregerson (United States District Court for the Central District of California) and for the Honorable Richard Paez (United States Court of Appeals for the Ninth Circuit). Ms. Smolowe received her J.D. from Yale University in 2006. In 2011, her billing rate was $460 per hour.

8.      Sarala V. Nagala joined MTO in 2009. Prior to starting with the firm, she served as a law clerk for the Honorable Susan P. Graber (United States Court of Appeals for the Ninth Circuit). Ms. Nagala received her J.D. from University of California, Berkeley Law School in 2008, where she was elected to the Order of the Coif. In 2011, her billing rate was $385 per hour.

9.      Additional information about each of the attorneys working on this case can be found at the Munger, Tolles & Olson LLP website (www.mto.com).

10.     In addition to the attorneys on the case, a number of MTO staff billed time on the matter, including paralegals, Automated Litigation Support ("ALS"), case clerks and litigation interns.   As set forth in more detail below, MTO is not claiming fees for the case clerk and litigation intern time incurred in litigating this matter.

11.     MTO's ALS support staff are responsible for creating, operating and managing electronic databases used for documents, depositions, deposition exhibits

YBARRA DECL. ISO MOT. FOR ATTYS.'
FEES; NO. SACV-09-1090 VBF(RNBX)

and trial exhibits.  The perform work similar to paralegal work, but have specialized
training to do work using electronic databases.   MTO typically bills the time of
ALS staff to clients, as do MTO's peer law firms.

12.    The names, positions, and billing rates for MTO support staff for
whom MTO is seeking fees are set forth below.

| Name | Title | 2011 Rate |
|------|-------|-----------|
| Sonia Arteaga | Paralegal (11 yrs. exp) | $200 |
| Raphael Sepulveda | Paralegal (20 yrs. exp.) | $210 |
| Faye Taito | ALS (24 yrs. exp.) | $250 |
| Patrick Justensen | ALS (21 yrs. exp.) | $250 |

## III.  THE TIME SPENT BY MTO IN THIS LITIGATION

13.    MTO does not charge fees to its *pro bono* clients, such as Plaintiffs in
this action.  However, the majority of MTO's clients are charged hourly rates, and
the rates set forth above represent the rates actually charged to MTO's paying
clients.  To stay competitive with comparable law firms, MTO frequently conducts
informal surveys of peer law firms in Southern California to determine prevailing
market rates.  In addition, MTO subscribes to fee-based services containing
information regarding hourly rates charged by attorneys in various markets, such as
Valeo Partners' Attorney Hourly Rates database.  Similarly, MTO reviews more
formal surveys of attorney billing rates, such as those published by the *National
Law Journal*.

14.    My understanding is that MTO's hourly rates, including the hourly
rates of the attorneys and other staff persons involved in this matter, are competitive
with other firms of like size and experience in the Los Angeles area, and indeed are
on the lower end of the market rate for such firms.  Moreover, in the matter of
*Lauderdale v. City of Long Beach*, No. 08-CV-979 ABC (JWJx) (C.D. Cal. Jan. 11,
2010), this Court found that similar hourly rates charged by MTO were reasonable.
The Order from that matter is attached hereto as Exhibit A.  The reasonableness of

MTO's fees is discussed at pages 10 and 11 of the Order.  *See also* Memorandum &
Order Re:  Motion for Exceptional Case finding and Award of Attorneys' Fees,
*Applied Materials, Inc. v. MultiMetrixs, LLC*, 2009 WL 1457979, No. C 06-7372
(N.D. Cal. May 26, 2009) (finding MTO's rates reasonable).

15.     The chart below sets forth the claimed time spent by MTO attorneys
and staff on this matter through the date judgment was entered (May 10, 2011)
organized by timekeeper.  The chart does not include hours incurred by MTO in
preparing this Motion for Attorneys' Fees and supporting papers, or the hours
incurred by MTO in responding to defendant Orange County District Attorneys'
Office's ("OCDA") recently-filed *Ex Parte* Application for a Stay Pending Appeal
(Docket No. 411).  The fees incurred with respect to that work will be included in a
supplemental declaration filed in connection with Plaintiffs' Reply brief on this
Motion.

| Name | Graduation Year | 2011 Rate (per hour) | Hours | Billable Value |
|---|---|---|---|---|
| Joseph J. Ybarra | 2001 | $550 | 275.4 | $151,470.00 |
| Jacob A. Kreilkamp | 2003 | $505 | 849.0 | $428,745.00 |
| Marina A. Torres | 2008 | $385 | 570.3 | $219,565.50 |
| Laura D. Smolowe | 2006 | $460 | 294.4 | $135,424.00 |
| Sarala V. Nagala | 2008 | $385 | 263.2 | $101,332.00 |
| Sonia Arteaga | Paralegal | $200 | 297.5 | $59,500.00 |
| Raphael Sepulveda | Paralegal | $210 | 192.3 | $40,383.00 |
| Faye Taito | ALS | $250 | 131.7 | $32,925.00 |
| Patrick Justensen | ALS | $250 | 15.7 | $3,925.00 |
| **TOTAL HOURS (claimed)** | **2,889.5** | | | |

| Name | Graduation Year | 2011 Rate (per hour) | Hours | Billable Value |
|---|---|---|---|---|
| **TOTAL FEES** **(claimed)** | **$1,173,269.50** | | | |

16.     Attached hereto as Exhibit B is a document prepared by our accounting department reflecting the time incurred by MTO timekeepers in litigating this action.  The first page contains three summary charts: (1) a chart of the total hours incurred by MTO on this matter and the fees associated with those hours, organized by timekeeper ("Actual"); (2) a chart of the total hours claimed on this Motion and the fees associated with those hours, organized by timekeeper ("Claimed"); and (c) a chart of the total hours incurred by MTO and deducted based on my billing judgment, organized by timekeeper ("Write Offs").  Exhibit B also includes a spreadsheet that contains the daily time entries for this matter for each MTO timekeeper.  Notably, where some or all of a time entry has been deducted based on my billing judgment, the column for "claimed hours" is less than that for "actual hours."  The column for "amount" reflects only the fees for the "claimed hours."  For example, where the "claimed hours" are 0.00, the "amount" column for that time entry is also 0.00.

17.     Importantly, the time set forth in paragraph 15 is not the entirety of the time that MTO spent litigating this action through entry of Judgment, as I have deducted numerous hours as part of my billing judgment.  In total, I have written down 1,204.8 hours incurred by MTO in litigating this matter.  The fees associated with these hours amount to $233,138.00 of billable value, using MTO's 2011 rates for the timekeepers who worked on this matter.

18.     The significant categories of time entries that I have written down and excluded from this Motion are as follows:

(a)     <u>Time Attending Trial And Other Hearings</u>:  I have excluded

from the chart set forth above a significant number of hours incurred by MTO attorneys and other timekeepers in attending trial, the pre-trial conference, and post-trial hearings.  In fact, the chart excludes all such time incurred by everyone other than Messrs. Ybarra and Kreilkamp and Ms. Arteaga--*i.e.*, Plaintiffs seek herein the time attending trial and related hearings for only two MTO attorneys and one MTO paralegal.  I have exercised my billing judgment to deduct all other time incurred by MTO timekeepers so as to avoid any claim that the fees sought herein are excessive or duplicative.

        (b)    <u>Administrative/Clerical Time</u>:  I have excluded from the chart set forth above a significant amount of administrative/clerical time incurred by MTO in managing the litigation, which involved a substantial quantity of documents, depositions and other discovery, as well as a large number of trial exhibits and demonstratives.  For example, I have excluded from the chart all time incurred by MTO's case clerks and litigation interns, who assisted MTO in managing the large volume of documents produced in the litigation, preparing for depositions, and preparing for trial.

        (c)    <u>Summer Associate Time</u>:  I have excluded from the chart set forth above all time incurred on this matter by an MTO summer associate in 2010. The summer associate performed legal research and drafted a memorandum regarding the legal standard applicable to procedural due process claims and the types of evidence relevant to such claims.

    19.    None of the hours for MTO support staff set forth in the chart in paragraph 15 represents time spent on purely clerical tasks such as filing documents with the court or scheduling.

    20.    In my opinion, the time spent by MTO attorneys and other timekeepers was reasonable and necessarily incurred given the nature of the case.[1]  Notably, the

---

[1] So as to avoid repetition, I am incorporating by reference the statements regarding the complexity of this litigation made in Plaintiffs' Motion for Attorneys' Fees and the other supporting declarations, which are filed concurrently herewith.

case involved a significant number of documents produced by both sides (more than 31,000 pages of documents in total), 24 depositions (18 fact witnesses and 6 expert witnesses), and 11 court days of trial.  Further, both sides filed Motions for Summary Judgment, multiple Motions *in Limine* and multiple post-trial briefs— each of which raised complicated issues of constitutional law.  Given the foregoing, this case was as complex and time-intensive as the cases that MTO typically litigates on behalf of paying clients in business litigation.  Nonetheless, the fees sought by Plaintiffs in litigating this matter are less than typically would be paid by a client in a commercial litigation matter involving similar tasks, principally because, with the exception of myself, MTO staffed the case with associates, who generally have lower billing rates that more senior lawyers.

## IV.   COSTS INCURRED BY MTO IN LITIGATING THIS ACTION

21.    MTO also incurred significant costs in litigating this matter.  MTO's typical practice, which it followed in this case, is that, when a cost is incurred, it is assigned to the particular matter for which it was incurred and then billed to the client on that matter.  This applies both to internal costs, such as copying done "in-house" at MTO, and third party costs paid by MTO, such as invoices from a retained expert witness or a third party vendor.  If it is a reimbursement (such as travel costs), the attorney provides the receipt to our accounting department, along with the client and matter for which the cost was incurred.  The attorney is then reimbursed, and the cost is assigned to the appropriate matter.

22.    MTO's policy is to bill copying at $.15 per page plus additional costs where additional services (such as binding) are required.  All third party vendors are billed at the rate charged by the vendor; there is no mark-up.  These are our standard cost policies as they relate to *pro bono* and non-*pro bono* clients.  Importantly, MTO does not charge clients for the costs of sending facsimiles, postage, long-distance phone calls, or computer-aided research.  Those costs are absorbed by the firm as overhead.

23.    Set forth below is a chart of some of the costs incurred by MTO in litigation this action.  These costs do not include those costs properly claimed in MTO's bill of costs submitted pursuant to Federal Rule of Civil Procedure 54 and Local Rule 54.  The cost summary reflecting these charges is attached hereto as Exhibit C.

| Type of Cost | Amount Claimed |
|---|---|
| Copying Costs (in-house) | $7,249.75 |
| Copying Costs (outside vendor) | $5,842.55 |
| Expert Witness Deposition Fees | $680.00 |
| Electronic Litigation Support | $2,731.29 |
| **TOTAL** | **$16,503.59** |

24.    In my opinion, the costs set forth above were reasonable and necessarily incurred given the nature of the case, for the following reasons:

(a)    Copying Costs:  These are the in-house copy costs incurred by MTO in this action and the payments made by MTO to outside vendors for copying.  These amounts do not include the costs related to the copying of trial exhibits, which is included in Plaintiffs' Bill of Costs.

(b)    Expert Witness Deposition Fees:  These fees relate to the payment for deposition time of Dr. Jeffrey Grogger, one of Defendants' expert witnesses.  MTO typically charges such costs to its clients.

(c)    Electronic Litigation Support:  The costs sought herein relate to the creation and operation of an electronic database of the documents produced in this case, which were voluminous (over 31,000 pages in total).  MTO typically charges such costs to its clients, and my understanding is that most law firms in the area typically charge such costs to their clients.

I declare, under penalty of perjury under the laws of the State of California and the United States of America, that the foregoing is true and correct, and that this declaration was executed on this 23rd day of May 2011, at Los Angeles, California.

*/s/ Joseph J. Ybarra*
Joseph J. Ybarra

YBARRA DECL. ISO MOT. FOR ATTYS.'
FEES; NO. SACV-09-1090 VBF(RNBX)