THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
REBECCA PETERSON-FISHER (SBN 255359)
MARISA HERNANDEZ-STERN (SBN 272477)
Traber & Voorhees
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com
rpf@tvlegal.com
msh@tvlegal.com

Attorneys for Plaintiffs Franklin Quezada, *et al.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| FRANKLIN QUEZADA, et al., | Case No. CV 12-2188 CAS (DTBx) |
| Plaintiffs, | |
| v. | **PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| SCHNEIDER LOGISTICS TRANSLOADING & DISTRIBUTION, INC., et al., | |
| Defendants. | Date:     May 12, 2014<br>Time:    10:00 am.<br>Judge:   Hon. Christina A. Snyder |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 12, 2014, at 10:00 a.m., or as soon thereafter as the matter may be heard by Judge Christina A. Snyder of the United States District Court of the Central District of California, 312 N. Spring Street,  Los Angeles, CA 90012, in Courtroom 5, plaintiffs Franklin Quezada, Elizabeth Gutierrez, Victor Ramirez, and Walter Downing, individually and on behalf of all others similarly situated, will and hereby do move the Court pursuant to Federal Rules of Civil Procedure 23 for an order: (1) giving final approval to the class action settlement; (2) certifying the settlement class and confirming the appointment of the class representatives and class counsel; (3) awarding reasonable attorneys' fees and costs to class counsel; (4) approving service awards to the named plaintiffs; and (5) confirming the appointment of the Claims Administrator and approving the payment of the reasonable costs of claims administration.

This motion is based on: the accompanying Memorandum of Points and Authorities, the Declaration of Lauren Teukolsky and exhibits, the Declaration of Michael J. Lee and exhibits, Plaintiffs' Unopposed Motion for Attorneys' Fees, Reasonable Costs and Service Awards to the Named Plaintiffs (Doc. #97), Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. #89) and the evidence submitted in support of that motion, the Court file in this action, and such other matters as the Court may consider.

Dated:  April 14, 2014                    Respectfully submitted,

                                          TRABER & VOORHEES

                              By:     /s/ Lauren Teukolsky
                                      Lauren Teukolsky
                                      Attorneys for Plaintiffs

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . 1

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    Summary of the Lawsuit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.    Motion Practice and Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

C.    The Parties Engaged in Extensive Mediation and Settlement Efforts. . . . . . . . 4

D.    Preliminary Approval. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

E.    Notice and Claims Procedure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

F.    Notice Pursuant to the Class Action Fairness Act of 2005. . . . . . . . . . . . . . 6

G.    Allocation of the Gross Settlement Funds. . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A.    Legal Standards Governing Final Approval of a Class Action Settlement. . . . 8

B.    The Court Should Grant Final Approval to the Settlement. . . . . . . . . . . . . . . 9

        1.    The Strength of Plaintiffs' Case, and the Risk of Continued
             Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        2.    The Amount Offered in Settlement. . . . . . . . . . . . . . . . . . . . . . . . 9

        3.    The Extent of Discovery Completed and the Stage of the
             Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        4.    The Settlement Resulted from Arm's-Length Negotiations. . . . . . . . 11

        5.    Class Counsel's Experience and View. . . . . . . . . . . . . . . . . . . . . . 11

        6.    Reaction of Class Members to the Proposed Settlement. . . . . . . . . . 12

C.    The Court Should Award the Requested Attorneys' Fees and Costs, and
       the Requested Service Awards to the Named Plaintiffs. . . . . . . . . . . . . . . . 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

D.      The Court Should Award the Reasonable Costs of Claims

        Administration.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adoma v. University of Phoenix,*
    913 F. Supp. 2d 964 (E.D. Cal. 2012)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Austrian and German Bank Holocaust Litigation,*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Barbosa v. Cargill Meat Solutions Corp.,*
    2013 U.S. Dist. LEXIS 93194 (E.D. Cal. July 1, 2013). . . . . . . . . . . . . . . . . 9

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Marisol A. ex rel. Forbes v. Giuliani,*
    185 F.R.D. 152 (S.D.N.Y. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Monterrubio v. Best Buy Stores, L.P.,*
    291 F.R.D. 443 (E.D. Cal. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Officers for Justice v. Civil Serv. Committee,*
    688 F.2d 615 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 12

*Stuart v. RadioShack Corp.,*
    2010 U.S. Dist. LEXIS 92067 (N.D. Cal. Aug. 9, 2010). . . . . . . . . . . . . . . . 9

*In re Tableware Antitrust Litigation,*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

*In re Visa Check/Mastermoney Antitrust Litigation,*
    297 F. Supp. 2d 503 (E.D.N.Y. 2003), aff'd 396 F.3d 96 (2d Cir. 2005).. . . . 10

## STATE CASES

*In re Microsoft I-V Cases,*
    135 Cal. App. 4th 706 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wershba v. Apple Computer, Inc.,*
    91 Cal. App. 4th 224 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

## STATE STATUTES

Cal. Lab. Code § 510, 1999 Amendment Notes § 2(g).. . . . . . . . . . . . . . . . . . . . . . 10

Cal. Lab. Code § 2699(e)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. Proc. 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

By this motion, plaintiffs seek final approval of a proposed class action settlement ("Settlement") with defendant Schneider Logistics Transloading and Distribution, Inc. ("Schneider"). This case involves alleged wage-and-hour violations at a warehouse facility that Schneider operates on Walmart's behalf in Eastvale, California. On December 3, 2013, the Court granted preliminary approval of the Settlement, which creates a common fund of $4.7 million and confers substantial non-monetary benefits on class members, including significant changes in Schneider's employment policies and procedures. The Court also provisionally certified the settlement class; appointed Traber & Voorhees as Class Counsel; appointed the named plaintiffs as class representatives; appointed RG2 as the Claims Administrator; and directed that notice be sent to the class.

On January 21, 2014, RG2 sent notice to the class, which consists of 602 class members. The response from class members has been overwhelming. A remarkable 86% of class members submitted claim forms, indicating widespread approval of the Settlement. Not a single class member has objected, or requested to be excluded. This response confirms that the settlement is fair, adequate and reasonable. Accordingly, plaintiffs respectfully request that the Court: (1) grant final approval of the settlement, (2) certify the settlement class, (3) appoint the named plaintiffs as class representatives, (4) appoint Traber & Voorhees as class counsel, (5) award the requested service awards to the named plaintiffs, (6) award the requested attorneys' fees and costs, and award the costs of claims administration. A proposed order is filed herewith.

//
//

## II.  FACTUAL BACKGROUND

### A.    Summary of the Lawsuit

In 2006, Schneider began operating a warehouse facility in Eastvale, CA on behalf of Walmart.  On March 15, 2012, after more than a year of investigation, plaintiffs filed a complaint against Schneider alleging a number of wage-and-hour violations.  Doc. #90 ¶44.  The First Amended Complaint ("FAC"), Doc. #29, which is the operative pleading, alleges that Schneider held an invalid election for an alternative workweek schedule ("AWS") in June 2008 because it failed to comply with the strict rules that govern AWS elections, and that Schneider made fraudulent misrepresentations to induce employees to vote for the AWS.  Schneider also allegedly failed to implement the AWS schedule properly by failing to provide employees with a regular schedule.  The FAC further alleges that Schneider failed to maintain proper records, failed to provide lawful breaks, unlawfully deducted (through an "auto-deduct" system) 30 minutes for meal breaks on shifts greater than 12 hours, and failed to pay proper reporting time pay.

Based on these facts, the FAC alleges fourteen California law claims for: (1) unpaid overtime; (2) breach of contract; (3) unlawful rest breaks; (4) unlawful meal breaks; (5) unpaid reporting time pay; (6) unpaid wages; (7) failure to maintain accurate records; (8) failure to provide accurate wage statements; (9) waiting time penalties; (10) paying secret wages; (11) fraudulent misrepresentation; (12) Private Attorneys General Act ("PAGA") penalties; (13) violation Bus. & Prof. Code § 17200, *et seq.;* and (14) declaratory relief.

### B.    Motion Practice and Discovery

In February 2013, after several months of discovery, plaintiffs filed a motion for relief under Rule 23 on the basis that Schneider had improperly obtained 106 declarations from class members.  Doc. #37.  Schneider opposed the motion.  Doc. #39.  On March 25, 2013, the Court granted plaintiffs' motion, and entered an order that limited Schneider's communication with putative class members about the

1    lawsuit, provided that the Court would disregard the 106 declarations, and

2    authorized a curative class notice.  Doc. #61.

3         Schneider then noticed the depositions of six putative class members, which

4    proceeded at an Ontario hotel in June 2013.  Doc. #90 ¶46.  Plaintiffs took four Rule

5    30(b)(6) depositions of Schneider's corporate representatives.  *Id*. ¶47.  Meanwhile,

6    Schneider deposed three named plaintiffs.  *Id*. ¶48. Schneider then told plaintiffs that

7    it wished to take 90 additional class member depositions. The parties' negotiations

8    about these 90 depositions were ongoing when the case settled, and plaintiffs'

9    counsel anticipated motion practice to resolve the issue.  *Id*. ¶49.

10        The parties exchanged considerable written discovery.  Plaintiffs served over

11   125 document requests.  *Id*. ¶50.  Schneider produced over 189,000 documents and

12   electronic files, including time and payroll records for all class members, employee

13   handbooks, meal period and overtime premium waiver forms signed by class

14   members, and AWS-related documents.  Plaintiffs' counsel spent hundreds of hours

15   reviewing these documents and meeting and conferring with Schneider's counsel

16   about emails that appeared to be missing and other discovery issues.  *Id*. ¶¶50-51.

17        For its part, Schneider propounded over 130 document requests to each of the

18   four named plaintiffs.  Plaintiffs produced 765 documents to Schneider.  *Id*. ¶52.

19   Schneider propounded 25 interrogatories to each of the named plaintiffs.  *Id*. ¶53.

20        Independent of formal discovery, plaintiffs conducted extensive investigation

21   of their claims.  Plaintiffs' counsel interviewed more than 40 class members, and

22   held more than a dozen class member meetings to develop the facts of this case.

23   Doc. #90 ¶54.  When the case settled, plaintiffs were preparing their motion for class

24   certification, which was due on September 23, 2013.  Doc. #20.

25

26   //

27   //

28

## C.    The Parties Engaged in Extensive Mediation and Settlement Efforts

The parties engaged in extensive, arm's-length mediation efforts with Steve Pearl, an experienced mediator, before settling on August 15, 2013.  Doc. #90 ¶55 & Exh. 31.  The parties attended a full-day mediation with Mr. Pearl on June 25, 2013. *Id.* ¶56.  Before the mediation, both parties retained experts to help them assess the case.  *Id*. ¶57.  Plaintiffs' expert built a database using the extensive time and pay records that Schneider provided, and calculated damages and penalties for each claim.  Plaintiffs' expert also analyzed the time records to determine, *inter alia*, the extent to which Schneider had altered them, whether employees worked regular schedules, and whether employees took 30-minute meal breaks.  *Id*.

The parties made substantial progress at mediation, but were unable to reach agreement.  *Id*.  The parties continued to work with Mr. Pearl in a series of telephonic conferences.  *Id*.  Mr. Pearl eventually made a mediator's proposal at $4.7 million, which both sides accepted.  *Id*. ¶59.  On August 15, 2013, the parties memorialized the essential settlement terms in a Memorandum of Understanding.  *Id*. The parties then spent more than 12 weeks drafting a detailed settlement agreement, which was fully executed on Nov. 11, 2013.  *Id*.

## D.    Preliminary Approval

On December 3, 2013, the Court granted preliminary approval to the Settlement.  Doc. #93.  The Court found that the Settlement was presumptively fair because it was "the product of informed and arm's-length negotiations, has no obvious deficiencies, does not grant preferential treatment to class representatives or segments of the class, and falls well within the range of possible approval."  *Id*. at 1 (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).  The Court found on a preliminary basis that the settlement class met all of the requirements of Rule 23, and granted provisional certification to the settlement class, which consists of: "All current and former hourly employees who have worked for Schneider at its Mira Loma/Eastvale facility during the Class Period, March 15,

2008 until Preliminary Approval [December 3, 2013], and who have been subject to an alternative workweek schedule at any time during the Class Period." *Id*. at 2-8.

The Court confirmed the appointment of named plaintiffs Franklin Quezada, Victor Ramirez, Elizabeth Gutierrez and Walter Downing as class representatives; Traber & Voorhees as Class Counsel; and RG2 as claims administrator. *Id*. at 8-9. The Court approved the proposed class notice, and authorized first-class mailing as a reasonable method of providing notice to the class. *Id*. at 8. The Court also found, on a preliminary basis, that the requested attorneys' fees of $1.56 million was reasonable, and that a service award of $10,000 to each of the four named plaintiffs was reasonable. *Id*. at 9.

**E.    Notice and Claims Procedure**

After preliminary approval, Schneider provided class member information to RG2, including contact information and dates of employment. Based on this information, RG2 identified 602 class members who were eligible to participate in the Settlement. Declaration of Michael J. Lee, Claims Administrator ("Lee Decl.") ¶3. RG2 mailed notice in both English and Spanish to the 602 class members on January 21, 2014. *Id*. ¶4, 6 & Exh. A (notice packet mailed to the class). The notice listed the total compensable work weeks and the estimated settlement amount for each class member. Lee Decl. Exh. A. RG2 made reasonable efforts to identify valid addresses for the 66 notice packets that were returned as undeliverable, and, ultimately, there were 16 class members whose addresses RG2 was unable to identify. Lee Decl. ¶7. On February 28, 2014, RG2 mailed a reminder postcard in both English and Spanish to the 199 class members who had not yet submitted claim forms. *Id*. ¶8.

RG2 also created a website that contained the relevant information regarding the Settlement, including the notice, claim form, settlement agreement, and the

1    preliminary approval order.  *Id*. ¶5.[1]  Given the high number of class members who

2    speak Spanish, RG2 translated several of these documents into Spanish.  *Id*.

3         Under the Settlement, class members had 60 days to submit claims, opt-out,

4    and/or file objections.  The Settlement also provided a 10-day grace period for late

5    claims to be accepted subject to counsel's approval.  Doc. #90-1 ¶24(a).

6    Approximately 86% of class members filed claims, with 508 class members

7    submitting claims within the 60-day period, and an additional 10 class members

8    submitting claims thereafter (all of which were approved by counsel).  Lee Decl. ¶10.

9    To date, not a single class member has requested to be excluded from or objected to

10   the Settlement.  *Id*. ¶9.

11        Both during and after the claims period, plaintiffs' counsel and RG2 have

12   responded to hundreds of phone inquiries from class members regarding the

13   Settlement.  Declaration of Lauren Teukolsky in Support of Final Approval

14   ("Teukolsky Decl.") ¶2; Lee Decl. ¶12.

15   **F.    Notice Pursuant to the Class Action Fairness Act of 2005**

16        On November 25, 2013, Schneider provided notice of the Settlement to the

17   attorneys general of the United States and California as required by the Class Action

18   Fairness Act of 2005.  Schneider has not received any questions or objections from

19   any federal or California attorneys general.  Teukolsky Decl. ¶3.

20   **G.    Allocation of the Gross Settlement Funds**

21        The settlement agreement creates a gross settlement fund of $4.7 million.

22   Class members who made valid and timely claims will share the net settlement fund

23   on a *pro rata* basis according to the number of weeks they worked at Schneider

24   during the covered period.  Doc. #90-1 Exh. 1 (Settlement Agreement) ¶25.  The

25   following deductions are contemplated in the Settlement, and plaintiffs request that

26

27

28        [1]The Court may view the website at www.schneidersettlement.com.

the Court order that these allocations be made from the settlement fund prior to the distribution of funds to class members:

**1.    Costs of Claims Administration:**  To date, RG2 has incurred $18,549.56 in fees and costs, and estimates that it will incur approximately $24,800 total by the end of the claims process.  This amount includes the cost of mailing the notice packets and reminder postcards, setting up the settlement website, translating numerous documents into Spanish, responding to class member inquiries, obtaining and analyzing the class member information provided by Schneider, communicating with the parties' counsel, calculating and distributing the funds due to class members, and calculating tax payments.  Lee Decl. ¶12.

2.    **Service Awards to Class Representatives:** By motion filed on February 10, 2014, consistent with the terms of the settlement agreement, plaintiffs requested that each of the four class representatives receive a $10,000 service award in recognition of the substantial time and effort spent on this case, and the invaluable assistance provided to Class Counsel.  Doc. #97 at 14-16; *see also* the declarations submitted by the class representatives (Doc. ##89-1 to 89-4).

3.    **Attorneys Fees and Costs:** By motion filed on February 10, 2014, consistent with the terms of the settlement agreement, Class Counsel requested that the Court award $1.56 million in attorneys' fees and $47,884.61 in costs.  Doc. #97. The requested fee award is one-third of the $4.7 million common fund created by the Settlement, and is almost equal to Class Counsel's lodestar, which was about $1.52 million at the time the fee motion was filed.  Doc. #97-1 ¶64.

4.    **PAGA:** Under the terms of the Settlement, the Labor Workforce Development Agency will be paid $5,000 for the state's share of penalties for claims under the Private Attorney General Act ("PAGA"), Cal. Labor Code § 2699, *et seq.* Doc. #90-1 Exh. 1 ¶27.

# III.  ARGUMENT

## A.    Legal Standards Governing Final Approval of a Class Action Settlement

To determine whether a proposed class action settlement should be approved under Fed. R. Civ. Proc. 23, the Court must determine whether the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citation omitted).  After granting preliminary approval and ordering notice to the class, the Court must conduct a final fairness hearing and balance a number of factors to determine whether the proposed settlement is fair, adequate and reasonable:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *Adoma v. Univ. of Phoenix*, 913 F. Supp. 2d 964, 974-75 (E.D. Cal. 2012); *see also In re Microsoft I-V Cases*, 135 Cal. App. 4th 706, 723 (2006) (under California law, a court must ensure the fairness of any class settlement by considering similar list of factors); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 245 (2001) (stating a settlement is presumed to be fair when it was reached through arm's-length bargaining, investigation and discovery are sufficient to inform counsel's and the court's views, counsel is experienced in similar litigation, and the percentage of objectors is small).  The list is not exhaustive and the factors may be applied differently in different circumstances. *Officers for Justice v. Civil Serv. Comm.*, 688 F. 2d 615, 625 (9th Cir. 1982).

The court must consider the settlement as a whole, rather than its component parts, in evaluating fairness and it "must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026. Ultimately, the court must reach "a reasoned judgment that the

1  agreement is not the product of fraud or overreaching by, or collusion between, the

2  negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

3  adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

4  **B.     The Court Should Grant Final Approval to the Settlement**

5       Several factors weigh heavily in favor of granting final approval to the

6  Settlement.

7       **1.     The Strength of Plaintiffs' Case, and the Risk of Continued**

8            **Litigation**

9       Although plaintiffs believe that their claims are strong, they faced some risk in

10  continuing litigation, particularly given that they had not yet filed a motion for class

11  certification.  *Barbosa v. Cargill Meat Solutions Corp.*, 2013 U.S. Dist. LEXIS

12  93194, *38-*39 (E.D. Cal. July 1, 2013) (class certification is a "significant . . .

13  hurdle[]" that can be avoided by an early settlement).  As set forth in detail in

14  plaintiffs' motion for preliminary approval, Schneider has vigorously contested both

15  liability and the propriety of class certification.  *See* Doc. #89 at 8-10 (setting forth

16  Schneider's positions on liability and class certification).  Accordingly, plaintiffs

17  faced some risk in continuing litigation, and this factor supports the Settlement.

18       **2.     The Amount Offered in Settlement**

19       The settlement amount, $4.7 million, also indicates that the Settlement is fair

20  and adequate.  According to plaintiffs' expert, assuming that plaintiffs were 100%

21  successful on *all* claims at trial, plaintiffs potentially could have recovered slightly

22  more than $5 million in damages, and approximately $3.9 million in penalties.  *Id*. at

23  7.  The settlement amount therefore represents about 94% of the anticipated

24  damages, and about 53% of the anticipated damages plus penalties.[2]  Courts have

25  approved settlement amounts that represent 30% of the estimated damages – and

26  _____

27       [2] Plaintiffs appropriately discounted the PAGA penalties because the Court has significant discretion to decide the amount of the penalties and whether to award

28  them at all.  *Stuart v. RadioShack Corp.*, 2010 U.S. Dist. LEXIS 92067, *9-10 (N.D. Cal. Aug. 9, 2010) (citing Cal. Lab. Code § 2699(e)(2)).

1    even lower – demonstrating that the settlement amount here is appropriate.  *E.g.*,

2    *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013) (finding

3    a recovery of approximately 30 percent of estimated damages to favor settlement).

4         Moreover, plaintiffs, if successful, would have recovered these amounts years

5    from now, after a trial and possible appeal.  The certainty of a monetary recovery

6    *now*, before additional fees and costs are incurred, is extremely beneficial to class

7    members.  *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510

8    (E.D.N.Y. 2003), *aff'd* 396 F.3d 96 (2d Cir. 2005) ("The potential for this complex

9    litigation to result in enormous expense, and to continue for a long time, was

10   great."); *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 163 (S.D.N.Y. 1999)

11   (noting that trial would last at least five months and require testimony from

12   numerous witnesses and experts); *In re Austrian and German Bank Holocaust Litig.*,

13   80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("Most class actions are inherently

14   complex and settlement avoids the costs, delays and multitude of other problems

15   associated with them.").

16        The Settlement is also reasonable because it contains numerous non-monetary

17   terms that substantially improve working conditions in the warehouses.  After the

18   termination of the AWS, class members will be paid overtime for all hours worked in

19   excess of 8 hours (as opposed to 10 hours), which is the favored public policy in

20   California.  Cal. Lab. Code § 510, 1999 Amendment Notes § 2(g) ("[T]he

21   Legislature affirms the importance of the eight-hour workday, declares that it should

22   be protected, and reaffirms the state's unwavering commitment to upholding the

23   eight-hour workday as a fundamental protection for working people.").  Schneider

24   has agreed to stop using forms on which employees purport to waive their right to

25   overtime premiums; to continue to abide by the lawful meal and rest break policies

26   implemented after this lawsuit was filed; to implement a new policy to ensure that all

27   changes to employee time records are authorized; to use a fair and transparent system

28   for reducing hours when there is little work in the warehouses; and to ensure that

employees do not unknowingly waive their right to reporting time pay.  It is doubtful that plaintiffs could have obtained much more in the way of injunctive relief had this case been litigated through to trial.  For these reasons, both the settlement amount and the Settlement's non-monetary terms support a finding that the Settlement is fair, adequate and reasonable.

### 3.    The Extent of Discovery Completed and the Stage of the Proceedings

As set forth in Section II.B, *supra*, plaintiffs performed substantial investigation into wage-and-hour violations at Schneider's Eastvale warehouse facility before filing this lawsuit.  Both parties engaged in extensive discovery and retained experts to help them analyze voluminous time and pay data for all class members.  Although the case settled before class certification, both parties had more than sufficient information to make informed decisions about settlement value. *Monterrubio*, 2013 U.S. Dist. LEXIS 68647, at *29 ("[A]pproval . . . is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases.").  This factor supports approval of the Settlement.

### 4.    The Settlement Resulted from Arm's-Length Negotiations

The Settlement was the result of lengthy and extensive private mediation efforts, which were overseen by an experienced mediator, and there is no evidence of collusion.  The settlement amount itself was proposed by the mediator and accepted by both parties. *See* Section II.C, *supra*.  Because the Settlement was the result of extensive arm's-length negotiations, which were conducted after significant discovery, it is presumptively fair. *Wershba*, 91 Cal. App. 4th at 245.

### 5.    Class Counsel's Experience and View

Class Counsel have significant experience in wage-and-hour class actions and other complex litigation.  Doc. #90 ¶¶3-43.  In Class Counsel's view, the Settlement is an excellent result, and will confer substantial monetary and non-monetary benefits on class members.  Teukolsky Decl. ¶4.  Class Counsel's judgment is

1  entitled to "great weight" given their familiarity with the facts of the case, and their

2  understanding of the risks involved in continuing litigation.  *Officers for Justice*, 688

3  F.2d at 625; *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528

4  (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who

5  are most closely acquainted with the facts of the underlying litigation.") (citation and

6  internal quotation marks omitted).

7  **6.      Reaction of Class Members to the Proposed Settlement**

8  Finally, the reaction of class members supports Class Counsel's view that the

9  Settlement is fair, adequate and reasonable.  Of the 602 class members who were

10  sent notice packets, 518 of them filed claims.  A response rate of 86% is remarkably

11  high, Teukolsky Decl. ¶5, and indicates overwhelming support for the Settlement.

12  No class members sought to exclude themselves from or objected to the Settlement.

13  For these reasons, there is ample basis for the Court to find that the Settlement

14  is fair, adequate and reasonable, and that final approval of the Settlement is

15  warranted.

16  **C.    The Court Should Award the Requested Attorneys' Fees and Costs, and**

17  **the Requested Service Awards to the Named Plaintiffs**

18  By motion filed on February 10, 2014, Class Counsel requested that the Court

19  award $1.56 million in attorneys' fees and $47,884.61 in costs.  Plaintiffs also

20  requested service awards in the amount of $10,000 be approved for each of the four

21  named plaintiffs.  Doc. #97.  No class members have objected to these requests, and

22  they are fully justified for the reasons set forth in that motion.  Plaintiffs have

23  submitted additional support for their requested rates in the Teukolsky Declaration

24  submitted herewith.  *See* Teukolsky Decl. ¶¶6-8 & Exhs. A-C.

25  **D.    The Court Should Award the Reasonable Costs of Claims Administration**

26  As of March 31, RG2 has incurred $18,549.56 in fees and costs, and

27  anticipates incurring total expenses in the amount of $24,800 to administer the

28  claims process in this case.  Lee Decl. ¶11.  Although this amount is higher than the

1  estimate of $14,500 that RG2 originally provided, this amount is nonetheless

2  reasonable because RG2 incurred a number of unexpected fees and costs after

3  preliminary approval, including, *inter alia*, an extremely high response rate and call

4  volume from class members; Spanish translation of more documents for the

5  settlement website than Class Counsel originally projected; and analyzing and

6  distilling the raw data provided by Schneider in eight different spreadsheets to

7  ensure that class member workweeks and distribution amounts are properly

8  calculated.  Lee Decl. ¶12.  In Class Counsel's view, RG2 has performed its job well

9  and responded promptly to counsel's inquiries.  Teukolsky Decl. ¶9.  For these

10  reasons, plaintiffs request that the Court confirm the appointment of RG2 as Claims

11  Administrator and approve the payment of $24,800 to RG2 for the reasonable costs

12  of claims administration.

13  ### IV.  CONCLUSION

14       The parties have negotiated an agreement that resolves all issues between the

15  class and Schneider.  The agreement disposes of the risks, costs and delay associated

16  with further litigation, while allowing payments to class members on the equitable

17  basis of weeks worked during the class period by each class member.  An

18  astonishing 86% of class members are participating in the Settlement, and no class

19  member has requested exclusion or objected.  In short, the Settlement is fair,

20  adequate and reasonable, and should be granted final approval by the Court.

22  Dated:  April 14, 2014                    Respectfully submitted,

23                                            TRABER & VOORHEES

24                              By:    /s/ Lauren Teukolsky
25                                     Lauren Teukolsky
                                       Attorneys for Plaintiffs