THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
REBECCA PETERSON-FISHER (SBN 255359)
MARISA HERNANDEZ-STERN (SBN 272477)
Traber & Voorhees
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com
rpf@tvlegal.com
msh@tvlegal.com

Attorneys for Plaintiffs Franklin Quezada, *et al.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| FRANKLIN QUEZADA, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>SCHNEIDER LOGISTICS TRANSLOADING & DISTRIBUTION, INC., et al.,<br><br>　　　　　Defendants. | Case No. CV 12-2188 CAS (DTBx)<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:　　　May 12, 2014<br>Time:　　　10:00 am.<br>Judge:　　　Hon. Christina A. Snyder |

## I.   INTRODUCTION

This matter is before the Court on plaintiffs' motion for final approval of class action settlement.  Named plaintiffs Franklin Quezada, Victor Ramirez, Elizabeth Gutierrez and Walter Downing ("plaintiffs") filed this wage-and-hour class action lawsuit on March 15, 2012 against defendant Schneider Logistics Transloading & Distribution, Inc. ("Schneider").  On December 3, 2013, the Court granted preliminary approval to a Settlement Agreement ("Settlement") reached between the parties.  On February 10, 2014, plaintiffs filed a motion for attorneys' fees, reasonable costs and service awards to the named plaintiffs.  Doc. #97.

On April 14, 2014, plaintiffs filed a motion pursuant to Rule 23 of the Federal Rules of Civil Procedure for an order: (1) giving final approval to the class action settlement; (2) certifying the settlement class and confirming the appointment of the class representatives and class counsel; (3) awarding reasonable attorneys' fees and costs to class counsel; (4) approving service awards to the named plaintiffs; and (5) confirming the appointment of the Claims Administrator and approving the payment of the reasonable costs of claims administration.  The Court has reviewed and considered the papers submitted in support of plaintiffs' motion for preliminary approval; plaintiffs' motion for attorneys' fees, reasonable costs and service awards to the named plaintiffs; and plaintiffs' motion for final approval.  For the reasons set forth in the remainder of this order, the Court HEREBY GRANTS the motion for final approval.

## II.   BACKGROUND

### A.   Summary of the Lawsuit

In 2006, defendant Schneider began operating a warehouse facility in Eastvale, CA (formerly Mira Loma) on behalf of Walmart.  Plaintiffs in this lawsuit are hourly workers employed by Schneider to work at the warehouse facility.  On March 15, 2012, after more than a year of investigation, plaintiffs filed a complaint

against Schneider alleging a number of wage-and-hour violations.  Doc. #90 ¶44.
The First Amended Complaint ("FAC"), Doc. #29, which is the operative pleading,
alleges that Schneider held an invalid election for an alternative workweek schedule
("AWS") in June 2008 because it failed to comply with the strict rules that govern
AWS elections, and that Schneider made fraudulent misrepresentations to induce
employees to vote for the AWS.  Schneider also allegedly failed to implement the
AWS schedule properly by failing to provide employees with a regular schedule.
The FAC further alleges that Schneider failed to maintain proper records, failed to
provide lawful breaks, unlawfully deducted (through an "auto-deduct" system) 30
minutes for meal breaks on shifts greater than 12 hours, and failed to pay proper
reporting time pay.

Based on these facts, the FAC alleges fourteen California law claims for: (1)
unpaid overtime; (2) breach of contract; (3) unlawful rest breaks; (4) unlawful meal
breaks; (5) unpaid reporting time pay; (6) unpaid wages; (7) failure to maintain
accurate records; (8) failure to provide accurate wage statements; (9) waiting time
penalties; (10) paying secret wages; (11) fraudulent misrepresentation; (12) Private
Attorneys General Act ("PAGA") penalties; (13) violation Bus. & Prof. Code §
17200, *et seq.;* and (14) declaratory relief.

**B.    Motion Practice and Discovery**

In February 2013, after several months of discovery, plaintiffs filed a motion
for relief under Rule 23 on the basis that Schneider had improperly obtained 106
declarations from class members.  Doc. #37.  Schneider opposed the motion.  Doc.
#39.  On March 25, 2013, the Court granted plaintiffs' motion, and entered an order
that limited Schneider's communication with putative class members about the
lawsuit, provided that the Court would disregard the 106 declarations, and
authorized a curative class notice.  Doc. #61.

Before the case settled, Schneider took the depositions of six putative class members. Doc. #90 ¶46. Plaintiffs took four Rule 30(b)(6) depositions of Schneider's corporate representatives. *Id*. ¶47. Meanwhile, Schneider deposed three named plaintiffs. *Id*. ¶48. Schneider then told plaintiffs that it wished to take 90 additional class member depositions. The parties' negotiations about these 90 depositions were ongoing when the case settled. *Id*. ¶49.

The parties exchanged considerable written discovery. Plaintiffs served over 125 document requests. *Id*. ¶50. Schneider produced over 189,000 documents and electronic files, including time and payroll records for all class members, employee handbooks, meal period and overtime premium waiver forms signed by class members, and AWS-related documents. Plaintiffs' counsel spent hundreds of hours reviewing these documents and meeting and conferring with Schneider's counsel about emails that appeared to be missing and other discovery issues. *Id*. ¶¶50-51.

For its part, Schneider propounded over 130 document requests to each of the four named plaintiffs. Plaintiffs produced 765 documents to Schneider. *Id*. ¶52. Schneider propounded 25 interrogatories to each of the named plaintiffs. *Id*. ¶53.

Independent of formal discovery, plaintiffs conducted extensive investigation of their claims. Plaintiffs' counsel interviewed more than 40 class members, and held more than a dozen class member meetings to develop the facts of this case. Doc. #90 ¶54. When the case settled, plaintiffs were preparing their motion for class certification, which was due on September 23, 2013. Doc. #20.

**C.    The Parties Engaged in Extensive Mediation and Settlement Efforts**

The parties engaged in extensive mediation efforts before the case settled on August 15, 2013. Doc. #90 ¶55 & Exh. 31. The parties attended a full-day mediation on June 25, 2013. *Id*. ¶56. Before the mediation, both parties retained experts to help them assess the case. *Id*. ¶57. Plaintiffs' expert built a database using the extensive time and pay records that Schneider provided, and calculated

damages and penalties for each claim.  Plaintiffs' expert also analyzed the time records to determine, *inter alia*, the extent to which Schneider had altered them, whether employees worked regular schedules, and whether employees took 30-minute meal breaks.  *Id*.

The parties were unable to reach agreement at the first day of mediation.  *Id*. They continued to work with the mediator in a series of telephonic conferences.  *Id*. The mediator eventually made a mediator's proposal at $4.7 million, which both sides accepted.  *Id*. ¶59.  On August 15, 2013, the parties memorialized the essential settlement terms in a Memorandum of Understanding.  *Id*.  The parties then spent more than 12 weeks drafting a detailed settlement agreement, which was fully executed on Nov. 11, 2013.  *Id*.

**D.     A Summary of the Settlement**

Schneider agreed to pay $4.7 million to settle plaintiffs' claims, which includes payments to class members, payment to the Labor Workforce Development Agency ("LWDA") for PAGA penalties, service awards to the named plaintiffs, attorneys' fees and costs, and the costs of claims administration.  Settlement ¶17.[1] Schneider will pay the employer's share of payroll taxes.  *Id*. ¶21.

Eligible claimants include all current and former hourly employees who have worked for Schneider at its Eastvale facility from March 15, 2008 through the date of preliminary approval, and who were subject to an AWS at any time during the covered period.  *Id*. ¶12, 16.  According to the Claims Administrator, RG2, there are approximately 602 eligible class members.  Declaration of Michael J. Lee, Claims Administrator ("Lee Decl.") ¶3.  They will share the net settlement fund on a *pro rata* basis according to the number of weeks they worked at Schneider during the covered period.  Settlement ¶25.

---

[1]The Settlement is Exhibit 1 to Doc. #90-1.

1    The settlement fund is non-reversionary. *Id*. ¶17.  The amounts of any

2    uncashed settlement checks after ninety days will be paid *cy pres* to the Inland

3    Empire United Way.  *Id*. ¶26.  The LWDA will be paid $5,000 for PAGA penalties.

4    *Id*. ¶27.  The Settlement provided that, prior to seeking final approval, plaintiffs'

5    counsel would file a motion seeking one-third of the settlement fund, or $1.56

6    million, in attorneys' fees, and reasonable costs.  In addition, under the Settlement,

7    plaintiffs would seek a $10,000 service award for each of the named plaintiffs to

8    compensate them for the time and effort spent on this case.  *Id*. ¶¶28-29.  (The

9    motion for fees, costs and service awards was filed on February 10, 2014.  Doc. #97.)

10       In addition to monetary compensation, the Settlement includes several non-

11   monetary terms to address certain alleged unlawful policies and practices in the

12   warehouses.  First, the parties have agreed to the entry of an injunction to terminate

13   the AWS, effective no later than February 1, 2014.  Employees will then revert to a

14   "normal" schedule of five 8-hour workdays per week.  Settlement ¶31(a).  Second,

15   Schneider will implement a new policy to ensure that all time records edits are

16   authorized by employees.  *Id*. ¶31(c). Schneider will self-audit and provide training

17   to ensure compliance, and will also provide plaintiffs' counsel with a periodic report

18   showing all changes made to employee time records.  *Id*.

19       Third, to address allegations that Schneider improperly asked employees to

20   sign waivers of their right to overtime pay, Schneider has agreed that it will not use

21   any such waivers in the future.  *Id*. ¶31(d).  Fourth, to address concerns that

22   managers exercise favoritism in deciding who will receive work when there is low

23   volume, Schneider will begin using a mechanism by which its hourly employees will

24   be selected for a reduction in hours on a rotating basis, using pre-determined and

25   objective criteria.  *Id*. ¶31(e) & Attachment 1.

26       Fifth, during the lawsuit, Schneider revised its meal and rest period policies to

27   comply with the law.  Doc. #90  ¶63.  The Settlement memorializes Schneider's

28

1  agreement to continue complying with its new policies.  Settlement ¶31(f).   Sixth,

2  Schneider will revise its reporting time policies so that employees are informed that

3  if they "volunteer" to leave early before performing half of their usual or scheduled

4  day's work, they will not receive reporting time pay, and that they may refuse to

5  leave early unless Schneider pays them reporting time pay.  *Id.* ¶31(g).

6  **E.      Preliminary Approval**

7          On December 3, 2013, the Court granted preliminary approval to the

8  Settlement.  Doc. #93.  The Court found that the Settlement was presumptively fair

9  because it was "the product of informed and arm's-length negotiations, has no

10 obvious deficiencies, does not grant preferential treatment to class representatives or

11 segments of the class, and falls well within the range of possible approval."  *Id.* at 1

12 (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal.

13 2007)).  The Court found on a preliminary basis that the settlement class met all of

14 the requirements of Rule 23, and granted provisional certification to the settlement

15 class, which consists of: "All current and former hourly employees who have worked

16 for Schneider at its Mira Loma/Eastvale facility during the Class Period, March 15,

17 2008 until Preliminary Approval [December 3, 2013], and who have been subject to

18 an alternative workweek schedule at any time during the Class Period."  *Id.* at 2-8.

19         The Court confirmed the appointment of named plaintiffs Franklin Quezada,

20 Victor Ramirez, Elizabeth Gutierrez and Walter Downing as class representatives;

21 Traber & Voorhees as Class Counsel; and RG2 as claims administrator.  *Id.* at 8-9.

22 The Court approved the proposed class notice, and authorized first-class mailing as a

23 reasonable method of providing notice to the class.  *Id.* at 8.  The Court also found,

24 on a preliminary basis, that the requested attorneys' fees of $1.56 million was

25 reasonable, and that a service award of $10,000 to each of the four named plaintiffs

26 was reasonable.  *Id.* at 9.

27

28

**F.     Notice and Claims Procedure**

After preliminary approval, Schneider provided class member information to RG2, including contact information and dates of employment.  Based on this information, RG2 identified 602 class members who were eligible to participate in the Settlement.  Lee Decl. ¶3.  RG2 mailed notice in both English and Spanish to the 602 class members on January 21, 2014.  *Id*. ¶4, 6 & Exh. A (notice packet mailed to the class).  The notice listed the total compensable work weeks and the estimated settlement amount for each class member.  Lee Decl. Exh. A.  RG2 made reasonable efforts to identify valid addresses for the 66 notice packets that were returned as undeliverable, and, ultimately, there were 16 class members whose addresses RG2 was unable to identify.  Lee Decl.  ¶7.  On February 28, 2014, RG2 mailed a reminder postcard in both English and Spanish to the 199 class members who had not yet submitted claim forms.  *Id*. ¶8.

RG2 also created a website that contained the relevant information regarding the Settlement, including the notice, claim form, settlement agreement, and the preliminary approval order.  *Id*. ¶5.  Given the high number of class members who speak Spanish, RG2 translated several of these documents into Spanish.  *Id.*

Under the Settlement, class members had 60 days to submit claims, opt-out, and/or file objections.  The Settlement also provided a 10-day grace period for late claims to be accepted subject to counsel's approval.  Doc. #90-1 ¶24(a).  Approximately 86% of class members filed claims, with 508 class members submitting claims within the 60-day period, and an additional 10 class members submitting claims thereafter (all of which were approved by counsel).  Lee Decl. ¶10.  To date, not a single class member has requested to be excluded from or objected to the settlement.  *Id*. ¶9.

//

//

**G.     Notice Pursuant to the Class Action Fairness Act of 2005**

On November 25, 2013, Schneider provided notice of the Settlement to the attorneys general of the United States and California as required by the Class Action Fairness Act of 2005.  Schneider has not received any communications about the Settlement from any federal or California attorneys general.  Teukolsky Decl. in Support of Final Approval ¶3.

**III.     LEGAL STANDARD**

To determine whether a proposed class action settlement should be approved under Fed. R. Civ. Proc. 23, the Court must determine whether the settlement is "fundamentally fair, adequate, and reasonable."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citation omitted).  After granting preliminary approval and ordering notice to the class, the Court must then conduct a final fairness hearing and balance a number of factors to determine whether the proposed settlement is fair, adequate and reasonable:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *Adoma v. Univ. of Phoenix*, 913 F. Supp. 2d 964, 974-75 (E.D. Cal. 2012); *see also In re Microsoft I-V Cases*, 135 Cal. App. 4th 706, 723 (2006) (under California law, a court must ensure the fairness of any class settlement by considering similar list of factors); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 245 (2001) (stating a settlement is presumed to be fair when it was reached through arm's-length bargaining, investigation and discovery are sufficient to inform counsel's and the court's views, counsel is experienced in similar

litigation, and the percentage of objectors is small).  The list is not exhaustive and the factors may be applied differently in different circumstances. *Officers for Justice v. Civil Serv. Comm.*, 688 F. 2d 615, 625 (9th Cir. 1982).

The court must consider the settlement as a whole, rather than its component parts, in evaluating fairness and it "must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026. Ultimately, the court must reach "a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

## IV.   ANALYSIS

### A.   Final Approval of the Settlement is Warranted

The Court finds that several factors weigh heavily in favor of granting final approval to the Settlement.

#### 1.   The Strength of Plaintiffs' Case, and the Risk of Continued Litigation

Although plaintiffs believe that their claims are strong, they properly recognized that they faced some risk in continuing litigation, including the possibility that the Court would not certify some or all of their claims for class treatment.  *Barbosa v. Cargill Meat Solutions Corp.*, 2013 U.S. Dist. LEXIS 93194, *38-*39 (E.D. Cal. July 1, 2013) (class certification is a "significant . . . hurdle[]" that can be avoided by an early settlement).  Schneider has vigorously contested both liability and the propriety of class certification. *See* Doc. #89 at 8-10 (setting forth Schneider's positions on liability and class certification).  Accordingly, the Court finds that plaintiffs faced some risk in continuing litigation, and that this factor supports the Settlement.

## 2.     The Amount Offered in Settlement

The settlement amount, $4.7 million, also indicates that the Settlement is fair and adequate.  According to plaintiffs' expert, assuming that plaintiffs were 100% successful on *all* claims at trial, plaintiffs potentially could have recovered slightly more than $5 million in damages, and approximately $3.9 million in penalties.  *Id*. at 7.  The settlement amount therefore represents about 94% of the anticipated damages, and about 53% of the anticipated damages plus penalties.[2]  Courts have approved settlement amounts that represent 30% of the estimated damages – and even lower – demonstrating that the settlement amount here is appropriate.  *E.g.*, *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013) (finding a recovery of approximately 30 percent of estimated damages to favor settlement).

Moreover, plaintiffs, if successful, would have recovered these amounts years from now, after a trial and possible appeal.  The certainty of a monetary recovery *now*, before additional fees and costs are incurred, is very beneficial to class members.  *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003), *aff'd* 396 F.3d 96 (2d Cir. 2005) ("The potential for this complex litigation to result in enormous expense, and to continue for a long time, was great."); *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 163 (S.D.N.Y. 1999) (noting that trial would last at least five months and require testimony from numerous witnesses and experts); *In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp. 2d 164, 174 (S.D.N.Y. 2000) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.").

---

[2] Plaintiffs discounted the PAGA penalties because the Court has significant discretion to decide the amount of the penalties and whether to award them at all. *Stuart v. RadioShack Corp.*, 2010 U.S. Dist. LEXIS 92067, *9-10 (N.D. Cal. Aug. 9, 2010) (citing Cal. Lab. Code § 2699(e)(2)).  The Court finds this approach reasonable.

1    The Court also finds that the Settlement is reasonable because it contains
2    numerous non-monetary terms that substantially improve working conditions in the
3    warehouses.  After the termination of the AWS, class members will be paid overtime
4    for all hours worked in excess of 8 hours (as opposed to 10 hours), which is the
5    favored public policy in California.  Cal. Lab. Code § 510, 1999 Amendment Notes §
6    2(g) ("[T]he Legislature affirms the importance of the eight-hour workday, declares
7    that it should be protected, and reaffirms the state's unwavering commitment to
8    upholding the eight-hour workday as a fundamental protection for working
9    people.").  Schneider has agreed to stop using forms on which employees purport to
10   waive their right to overtime premiums; to continue to abide by the lawful meal and
11   rest break policies implemented after this lawsuit was filed; to implement a new
12   policy to ensure that all changes to employee time records are authorized; to use a
13   fair and transparent system for reducing hours when there is little work in the
14   warehouses; and to ensure that employees do not unknowingly waive their right to
15   reporting time pay.  It is doubtful that plaintiffs could have obtained much more in
16   the way of injunctive relief had this case been litigated through to trial.  For these
17   reasons, both the settlement amount and the Settlement's non-monetary terms
18   support a finding that the Settlement is fair, adequate and reasonable.

19        **3.    The Extent of Discovery Completed and the Stage of the**
20             **Proceedings**

21        As set forth in Section II.B, *supra*, plaintiffs performed substantial
22   investigation into wage-and-hour violations at Schneider's Eastvale warehouse
23   facility before filing this lawsuit.  Both parties engaged in extensive discovery and
24   retained experts to help them analyze voluminous time and pay data for all class
25   members.  Although the case settled before class certification, both parties had more
26   than sufficient information to make informed decisions about settlement value.
27   *Monterrubio*, 2013 U.S. Dist. LEXIS 68647, at *29 ("[A]pproval . . . is proper as

28

long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases."). This factor supports approval of the Settlement.

### 4. The Settlement Resulted from Arm's-Length Negotiations

The settlement was the result of lengthy and extensive private mediation efforts, which were overseen by an experienced mediator, and the Court finds that there is no evidence of collusion. The settlement amount itself was proposed by the mediator and accepted by both parties. *See* Section II.C, *supra*. Because the settlement was the result of extensive arm's-length negotiations, which were conducted after significant discovery, it is presumptively fair. *Wershba*, 91 Cal. App. 4th at 245.

### 5. Class Counsel's Experience and View

Class Counsel, attorneys at the law firm Traber & Voorhees, have significant experience in wage-and-hour class actions and other complex litigation. Doc. #90 ¶¶3-43. They have expressed the view that the Settlement is an excellent result, and will confer substantial monetary and non-monetary benefits on class members. Teukolsky Decl. in Support of Final Approval ¶4. Class Counsel's judgment is entitled to "great weight" given their familiarity with the facts of the case, and their understanding of the risks involved in continuing litigation. *Officers for Justice*, 688 F.2d at 625; *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (citation and internal quotation marks omitted).

### 6. Reaction of Class Members to the Proposed Settlement

Finally, the reaction of class members supports Class Counsel's view that the settlement is fair, adequate and reasonable. Of the 602 class members who were sent notice packets, 518 of them filed claims. A response rate of 86% is remarkably high, Teukolsky Decl. in Support of Final Approval ¶5, and indicates overwhelming

support for the settlement.  No class members sought to exclude themselves from or objected to the settlement.

For these reasons, the Court finds that the Settlement is fair, adequate and reasonable, and that final approval of the Settlement is warranted.

**B.     The Settlement Class Should be Certified**

The Court has already issued a detailed order concluding that the proposed settlement class meets all of the requirements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.  Doc. #93 at 3-8.  For the reasons set forth in that order, the Court finds that the following class is properly certified for settlement purposes only: "All current and former hourly employees who have worked for Schneider at its Mira Loma/Eastvale facility during the Class Period, March 15, 2008 until Preliminary Approval, and who have been subject to an alternative workweek schedule at any time during the Class Period."  The date of Preliminary Approval is December 3, 2013.

The Court hereby confirms the appointment of Traber & Voorhees as Class Counsel, and the appointment of the named plaintiffs Quezada, Ramirez, Gutierrez and Downing as class representatives.

**C.     Plaintiffs' Request for Attorneys' Fees is Approved**

Class Counsel seeks attorneys' fees in the amount of $1.56 million, which is one-third of the $4.7 million gross settlement fund.  The Court finds this request to be reasonable and HEREBY GRANTS the motion for attorneys' fees filed on February 10, 2014.

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Because this case arises under California law and the Court is exercising its diversity jurisdiction to hear plaintiffs' claims, the Court applies California law to calculate attorneys' fees. *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

1    Under California law, courts may use the lodestar or percentage-of-the-fund method

2    to calculate fees.  *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557-558 (2009).

3           Where a court uses the percentage-of-the-fund analysis, it may also apply a

4    lodestar crosscheck, which "measures the lawyers' investment of time in the

5    litigation, [and] provides a check on the reasonableness of the percentage award."

6    *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *Barbosa*, 2013

7    U.S. Dist. LEXIS 93194, at *46-*47 (endorsing percentage-of-the-fund approach

8    with a lodestar crosscheck and citing numerous cases employing this approach).

9    "The ultimate goal under either method of determining fees is to reasonably

10   compensate counsel for their efforts in creating the common fund."  *In re Omnivision*

11   *Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007); *Florida v. Dunne*, 915 F.2d

12   542, 545 (9th Cir. 1990) (holding that the ultimate inquiry is whether fees are

13   "reasonable under the circumstances").

14          In the Ninth Circuit, the "benchmark" for a common fund fee award is 25% of

15   the settlement fund.  *Vizcaino*, 290 F.3d at 1047.  However, in California, "[district]

16   courts usually award attorneys' fees in the 30-40% range in wage-and-hour class

17   actions that result in recovery of a common fun[d] under $10 million."  *Cicero v.*

18   *DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920, *17 (C.D. Cal. July 27, 2010) (citing

19   three cases awarding fees in this range after surveying other California fee awards in

20   wage-and-hour class actions); *see also Vasquez v. Coast Valley Roofing, Inc.*, 266

21   F.R.D. 482, 492 (E.D. Cal. 2010) (citing five wage-and-hour class actions in which

22   courts awarded fees ranging from 30 to 33%); *Craft v. County of San Bernardino*,

23   624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (holding that attorneys' fees for cases

24   settling below $10 million often exceed the 25% benchmark); *Franco v. Ruiz Food*

25   *Prods.*, 2012 U.S. Dist. LEXIS 169057, *44 (E.D. Cal. Nov. 27, 2012) ("[I]n most

26   common fund cases, the award exceeds the benchmark percentage.") (citation and

27   internal quotation marks omitted).

28

In assessing whether the requested fees are fair and reasonable, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden by the plaintiff; and (6) the awards made in similar cases. *Franco*, 2012 U.S. Dist. LEXIS 169057, at *44 (citing *Vizcaino*, 290 F.3d at 1047).

### 1.   The Requested Fee Award Is Fair and Reasonable

The Court finds that application of the six *Vizcaino* factors justifies the requested fee award of one-third of the common fund.

### a.   Class Counsel Achieved Excellent Results

First, Class Counsel achieved an excellent result in this case, a fact confirmed by the overwhelming participation of class members in the settlement. "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Ominivision Techs*, 559 F. Supp. 2d at 1046. The projected damages in this case were approximately $5 million. Class Counsel persuaded Schneider to pay close to full value of the projected damages (not including interest or penalties) prior to a motion for class certification. *See* Doc. #90 ¶¶57, 64, 72-73. This award will result in the payment of thousands of dollars in cash awards to class members. Given that class members earn on average between $15-16 per hour, *id.* ¶77, this is a significant financial benefit. Class Counsel's ability to achieve this result early in the case demonstrates that the legal strategy pursued in this case was appropriate and beneficial to the class. Class Counsel's vigorous pursuit of plaintiffs' claims also yielded substantial non-monetary relief for class members, set forth above in Section IV.A.2.

In sum, both the substantial monetary and non-monetary relief that Class Counsel achieved on plaintiffs' behalf supports the requested fee award.

**b.     Class Counsel Litigated the Case on a Contingency Basis and Faced Considerable Risk**

The second and fifth *Vizcaino* factors, the risk of litigation and the contingent nature of the fee, also favor the requested fee award.  Although Class Counsel believed that plaintiffs' claims were strong, there was some risk the Court would not certify all of the claims, or that plaintiffs would lose at summary judgment or trial.  Indeed, Schneider contested both liability and the propriety of class certification. *See* Doc. #89 at 8-10 (setting forth Schneider's positions on liability and class certification).

In addition, Class Counsel litigated the case on a contingency fee basis, Doc. 97-1 ¶61, which "necessarily presented considerable risk."  *Franco*, 2012 U.S. Dist. LEXIS 169057, at *47 (citation omitted).  As of February 10, 2014, when Class Counsel filed their fee motion, Class Counsel had spent a total of 3,641 hours performing work to advance plaintiffs' claims.   Doc. 97-1 ¶64.  This includes hundreds of hours of analyzing documents, communicating with class members, engaging in motion practice, and researching plaintiffs' claims. *Id*. ¶66 & Exh. B. Class Counsel performed this work without any guarantee of payment.  Moreover, Class Counsel risked losing roughly $48,000 in costs incurred to date, a number that would have increased substantially by the time of trial.

"Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award." *In re Heritage Bond Litig*., 2005 U.S. Dist. LEXIS 13555, *68 (C.D. Cal. June 10,2005).  Here, Class Counsel's pursuit of plaintiffs' case on a contingency fee basis, with the accompanying risk of foregoing any compensation in the event of a judgment in favor of Schneider, supports an award of one-third of the common fund in attorneys' fees.

       **c.**      **The Skill and Quality of the Work Performed by Class
Counsel  Merits the Requested Fee Award**

The third and fourth *Vizcaino* factors examine the experience and ability of
class counsel, and the quality of class counsel's work.  Here, Class Counsel has
extensive experience in wage-and-hour class actions, as well as other types of
complex civil litigation.   Doc. 97-1 ¶¶3-46 (setting forth the experience of Class
Counsel).   The partners at Traber & Voorhees have a combined 70 years of litigation
experience between them, and have consistently been recognized in the Los Angeles
legal community for their outstanding work and their dedication to work in the
public interest.  *Id.*  Furthermore, several of the attorneys, paralegals and law clerks
at Traber & Voorhees are bilingual, an indispensable skill in this case given the high
number of Spanish-speaking class members.  *Id.* ¶46.  Defense counsel in this case
were also highly skilled, and Schneider is a sophisticated company that presumably
used extensive resources to defend itself against the claims in this case.  *Cf. In re
Equity Funding Corp. Sec. Litigation*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977)
("[P]laintiffs' attorneys in this class action have been up against established and
skillful defense lawyers, and should be compensated accordingly.").

Class Counsel performed high quality work in this case, efficiently and
effectively pursuing the litigation.  For example, this case settled after Class Counsel
took just four depositions of Schneider's corporate representatives.  Doc. 97-1 ¶51;
*In re Equity Funding Corp. Sec. Litigation*, 438 F. Supp. at 1337 (holding that courts
should "reward[] the use of efficient methods to expedite the case").  Moreover,
Class Counsel effectively pursued discovery and investigation of the facts in the
case.  Class Counsel engaged in aggressive discovery efforts, which yielded
hundreds of emails and other electronically stored information that was helpful to
plaintiffs.  Doc. 97-1 ¶49.  To prepare for the mediation, Class Counsel retained an
expert who culled through thousands of class member time and pay records to
construct an accurate calculation of the damages suffered by the class.  *Id.* ¶58.  This

1  preparation was crucial to the excellent settlement results achieved, and further

2  demonstrates that the requested fees are appropriate. *Barbosa*, 2013 U.S. Dist.

3  LEXIS 93194, at *50 (recognizing counsel's active pursuit of the litigation and the

4  extensive discovery conducted in awarding one-third of the settlement fund in fees).

5          **d.**        **An Award of One-Third of the Common Fund to Compensate**

6                        **Class Counsel is Reasonable in Comparison to Awards in**

7                        **Similar Cases**

8        The sixth and final *Vizcaino* factor – comparable awards in similar cases – also

9  supports Class Counsel's request for one-third of the common fund.  Numerous

10  district courts have awarded class counsel one-third of the common fund in wage-

11  and-hour class actions similar to this one.  *E.g.*, *Barbosa*, 2013 U.S. Dist. LEXIS

12  93194 at *48 (awarding one-third of the settlement fund to class counsel 1.5 years

13  after case was filed and before class certification where the majority of class

14  members were Spanish-speaking); *Singer v. Becton Dicksinson & Co.*, 2010 U.S.

15  Dist. LEXIS 53416 (S.D. Cal June 1, 2010) (awarding one-third of the settlement

16  fund in wage-and-hour class action where plaintiffs' counsel took on the case on a

17  contingency basis and settlement negotiations were hard fought); *Romero v.*

18  *Producers Dairy Foods*, Inc., 2007 U.S. Dist. LEXIS 86270 (E.D. Cal. Nov. 14,

19  2007) (awarding one-third of the settlement fund where plaintiffs' counsel's small

20  firm devoted extensive resources to litigating the wage-and-hour class action).

21        For all of the foregoing reasons, the Court finds the requested fee award to be

22  fair and reasonable.

23        **2.**      **The Lodestar Cross-Check Validates the Reasonableness of the**

24                  **Proposed $1.56 Million Fee Award**

25        A court may use the lodestar method to crosscheck the reasonableness of a

26  percentage-of-the-fund fee award.  *Vizcaino*, 290 F.3d at 1050.  The lodestar is

27  calculated using "the number of hours reasonably expended on the litigation

28  multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433

---

(1983).  Moreover, a court may presume that the lodestar "provides an accurate measure of reasonable attorney's fees." *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994).

### a.      The Number of Hours Reasonably Expended

Class Counsel in this case kept extensive and contemporaneous time records. Doc. 97-1 ¶¶61-62.  These records show that, prior to the filing of the fee motion on February 10, 2014, Class Counsel spent a total of 3,641 hours litigating this case. Multiplying these hours by Class Counsel's 2013 rates yields a lodestar of $1,523,005, *id*. ¶64, which is extremely close to the requested fees of $1.56 million. A breakdown of the total hours by biller is as follows:

| Biller | Hours | 2013 Rate | Total |
|---|---|---|---|
| Barbosa | 198 | $225 | $44,550 |
| Hernandez-Stern | 1099 | $350 | $384,650 |
| Hidalgo | 119 | $225 | $26,775 |
| Hushagen | 48 | $225 | $10,800 |
| Owens | 93 | $210 | $19,530 |
| Peterson-Fisher | 431 | $460 | $198,260 |
| Sealey | 133 | $210 | $27,930 |
| Slaughter | 63 | $210 | $13,230 |
| Teukolsky | 951 | $600 | $570,600 |
| Traber | 141 | $795 | $112,095 |
| Valenzuela | 216 | $210 | $45,360 |
| Voorhees | 70 | $735 | $51,450 |
| Weinstein | 79 | $225 | $17,775 |
| Total | 3,641 | | $1,523,005 |

Doc. 97-1 ¶64.

Significantly, the $1.52 million lodestar amount does *not* include substantial work that Class Counsel has recently performed, including the preparation of the fee motion, drafting the Motion for Final Approval of Settlement, overseeing the

distribution of settlement funds, monitoring Schneider's compliance with the non-monetary terms of the Settlement, and responding to future phone calls from class members.  By the time this case is finally resolved, the lodestar will likely exceed the requested fee amount of $1.56 million.

Class Counsel has also provided the Court with a detailed breakdown of the 3,641 hours by task.  Doc. 97-2 Exh. B.  This breakdown shows, for example, that Class Counsel spent 1,602 hours on discovery-related tasks; 589 hours on tasks related to maintaining contact with class members; 338 hours on tasks relating to motion practice; 298 hours (to date) on tasks related to drafting and implementing the settlement agreement; and 144 hours on mediation-related activities.  *Id.*

The Court finds the 3,641 hours expended on the litigation to be reasonable in light of the complex legal issues involved, the hard-fought nature of the case, the amount of discovery conducted, the high number of class members who speak Spanish (requiring extensive translation time), and the volume of class member time and pay records that needed to be analyzed before the mediation.

### b.    Class Counsel's Hourly Rates are Reasonable

The Court finds that the rates requested by Class Counsel are reasonable and consistent with those charged by attorneys with similar qualifications, skill and reputation in the Los Angeles legal community.  The requested rates are as follows:

| Biller | Year of Graduation | 2013 Rate |
|---|---|---|
| Barbosa | Law Clerk | $225 |
| Hernandez-Stern | 2010 | $350 |
| Hidalgo | Law Clerk | $225 |
| Hushagen | Law Clerk | $225 |
| Owens | Paralegal | $210 |
| Peterson-Fisher | 2007 | $460 |
| Sealey | Paralegal | $210 |
| Slaughter | Paralegal | $210 |

| Teukolsky | 2000 | $600 |
| Traber | 1984 | $795 |
| Valenzuela | Paralegal | $210 |
| Voorhees | 1988 | $735 |
| Weinstein | Law Clerk | $225 |

Class Counsel has submitted evidence showing that courts have regularly approved the rates that they have sought in other cases.  Doc. 97-1 ¶72.  Class Counsel has also submitted evidence that their hourly rates are consistent with those of other attorneys in the Los Angeles legal community with similar skill, experience and reputation as Class Counsel.  *Id*. ¶¶68-71 & Exhs. C & D; Teukolsky Decl. in Support of Final Approval ¶¶6-8 & Exhs. A-C.  In short, the Court finds that the reasonableness of the fee award requested by Class Counsel is supported by a lodestar crosscheck.

**D.     The Costs That Class Counsel Seek for Reimbursement are Reasonable**

Class Counsel seeks reimbursement of $47,884.61 in costs.  Doc. #97-1 ¶74. The costs for which Class Counsel seeks reimbursement include expenses for photocopies, legal research, postage, court filing fees, mediation fees, deposition transcripts, retaining an expert to calculate damages for purposes of the mediation, and travel related to the litigation. *Id*.  The most significant costs are as follows:

| Nature of Cost | Amount |
| --- | --- |
| Expert fees to prepare for mediation | $14,712 |
| Deposition transcripts | $12,888.81 |
| Mediation fees | $8,157 |
| Copies (e.g., for discovery and motions) | $4,616 |
| Travel (e.g., mileage reimbursement for trips to attend depositions and meetings with class members) | $1,949.87 |

*Id*.

Attorneys who succeed in creating a common fund may seek reimbursement of reasonable and necessary costs from the fund.  *See In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).  The Court finds that the requested costs are reasonable given the nature and extent of this class action litigation.  Each of the above categories represents an integral component in Class Counsel's successful litigation strategy, and courts routinely find that reimbursement for such costs is reasonable and permitted.  *See Barbosa*,  2013 U.S. Dist. LEXIS 93194, at *64 (finding that costs associated with "travel, mediation fees, photocopying, private investigator to locate missing Class Members, and delivery and mail charges" were routine costs that should be reimbursed); *Garcia v. Gordon Trucking, Inc.*, 2012 U.S. Dist. LEXIS 160052, *30-31 (E.D. Cal. Oct. 29, 2012) (same); *United States v. City of Twin Falls, Idaho*, 806 F.2d 862, 864 (9th Cir. 1986) (awarding costs sought for the retention of expert testimony that is "crucial or indispensable" to the litigation at hand); *Sure Safe Indus. Inc. v. C & R Pier Mfg.*, 152 F.R.D. 625, 626 (S.D. Cal. 1993) (costs for computerized legal research are reasonable); *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d at 1178 (awarding costs paid for the retention of a mediator).

For these reasons, the Court finds that Class Counsel's request to be reimbursed $47,884.61 in costs is reasonable and HEREBY GRANTS the motion for costs filed on February 10, 2014.

**E.    The Proposed $10,000 Service Award to Each of the Named Plaintiffs is Reasonable**

It is within a district court's discretion to grant service awards to named plaintiffs in class action litigation.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).  Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize

1 | their willingness to pact as a private attorney general." *Rodriguez v. West Publishing*
2 | *Corp.*, 563 F.3d 948, 959 (9th Cir. 2009).

3 | In assessing the propriety of a service award, a court may consider "the actions
4 | the plaintiff has taken to protect the interests of the class, the degree to which the
5 | class has benefited from those actions, . . . the amount of time and effort the plaintiff
6 | expended in pursuing the litigation and reasonabl[e] fear [of] workplace retaliation."
7 | *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003)  (quoting *Cook v. Niedert*, 142
8 | F.3d 1004, 1016 (7th Cir. 1998)).

9 | Here, plaintiffs request service awards of $10,000 each to named plaintiffs
10 | Downing, Gutierrez, Quezada, and Ramirez.  The Court finds that this request is
11 | reasonable given the substantial contributions that the named plaintiffs have made to
12 | this case.

13 | First, plaintiffs Gutierrez, Quezada, and Ramirez were employed by Schneider
14 | throughout the litigation of this case and had a reasonable fear of workplace
15 | retaliation as a result of their involvement.  Each of these plaintiffs has suffered
16 | significant anxiety and stress as a result of serving as a named plaintiff while
17 | employed by Schneider, and each has been ostracized by co-workers who fear being
18 | associated with this litigation.  Quezada Decl. (Doc. #89-4) ¶14; Gutierrez Decl.
19 | (Doc. #89-2) ¶13; Ramirez Decl. (Doc. #89-3) ¶14.  Despite the risk of possible
20 | retaliation in the workplace, plaintiffs remained supportive and invested in the
21 | litigation.

22 | Second, all four plaintiffs contributed substantial time and effort in responding
23 | to Schneider's extensive discovery.  Ramirez Decl. ¶¶15-16; Quezada Decl. ¶¶15-16;
24 | Gutierrez Decl. ¶14; Downing Decl. ¶¶13-14.

25 | Third, the named plaintiffs have been integral to the investigation of the
26 | claims in this case.  Gutierrez Decl. ¶ 10; Quezada Decl. ¶15; Ramirez Decl. ¶¶12,
27 | 15; Downing Decl. ¶13.  The named plaintiffs have also remained in regular contact
28 | with Class Counsel, providing updates on current working conditions and

1  encouraging current and former employees of the company to contact Class Counsel
2  regarding this lawsuit.

3       Finally, other courts have found that service awards of $10,000 to named
4  plaintiffs are reasonable.  *See Espinoza v. Domino's Pizza*, LLC, 2012 U.S. Dist.
5  LEXIS 160641, *10 (C.D. Cal. Nov. 7, 2012) ($10,000 service awards were
6  reasonable); *Ingalls v. Hallmark Retail*, Inc., 2009 U.S. Dist. LEXIS 131078, *6
7  (C.D. Cal. Oct. 16, 2009) (same); *Birch v. Office Depot, Inc.*, 2007 U.S. Dist. LEXIS
8  102747, 7 (S.D. Cal. Sept. 28, 2007) (granting service awards of $15,000 and
9  $10,000 to named plaintiffs).  Here, the total requested service awards – $40,000 –
10  represent less than 1% of the total settlement amount of $4.7 million.  For these
11  reasons, the Court finds that a service award of  $10,000 to each named plaintiff is
12  reasonable in light of the considerable risks that the named plaintiffs have
13  undertaken in this litigation, time spent responding to Schneider's discovery requests
14  and preparing for deposition, and in aiding in the investigation and litigation of class
15  claims.  The Court HEREBY GRANTS plaintiffs' motion for service awards filed on
16  February 10, 2014.

17  **F.    Claims Administration**

18       As of March 31, RG2 has incurred $18,549.56 in fees and costs, and
19  anticipates incurring total expenses in the amount of $24,800 to administer the
20  claims process in this case.  Lee Decl. ¶11.  Although this amount is higher than the
21  estimate of $14,500 that RG2 originally provided, the Court finds that this amount is
22  nonetheless reasonable.  RG2 incurred a number of unexpected fees and costs after
23  preliminary approval, including, *inter alia*, an extremely high response rate and call
24  volume from class members; Spanish translation of more documents for the
25  settlement website than Class Counsel originally projected; and analyzing and
26  distilling the raw data provided by Schneider in eight different spreadsheets to
27  ensure that class member workweeks and distribution amounts are properly
28  calculated.  Lee Decl. ¶12.  According to Class Counsel, RG2 has performed its job

well and responded promptly to counsel's inquiries.  Teukolsky Decl. in Support of Final Approval ¶9.  For these reasons, the Court confirms the appointment of RG2 as Claims Administrator and approves the payment of $24,800 to RG2 for the reasonable costs of claims administration.

**IV.  CONCLUSION**

For all of the foregoing reasons, the Court GRANTS plaintiffs' motion for final approval, and ORDERS that the Settlement Agreement be effectuated according to its terms.


IT IS SO ORDERED.


DATED: May ___, 2014




_____

The Hon. Christina A. Snyder
U.S. District Court Judge